# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

_____

№ 14-CV-7424 (JFB)
_____

JASON BREZLER,

Plaintiff,

VERSUS

LIEUTENANT GENERAL RICHARD MILLS, UNITED STATES MARINE CORPS, AND UNITED STATES DEPARTMENT OF THE NAVY,

Defendants.

_____

**MEMORANDUM AND ORDER**
February 18, 2015
_____

JOSEPH F. BIANCO, District Judge:

This lawsuit arises from a military disciplinary proceeding that recommended Major Jason Brezler's dismissal from the United States Marine Corps. Major Brezler ("plaintiff") brings this action against Lieutenant General Richard Mills, the United States Marine Corps, and the United States Department of the Navy (collectively, "the government" or "defendants"), challenging the disciplinary proceeding under the Administrative Procedure Act ("APA"), the Due Process clause, and the military regulations for conducting disciplinary proceedings.

Major Brezler has served in the Marine Corps for fourteen years, and has deployed overseas four times. He is currently a major in the United States Marine Corps Reserve, assigned since 2010 to duties at the Marine Reserve facility in Garden City, Long Island, where he is presently enrolled in the Marine Corps Command and Staff College.

According to the complaint, this lawsuit traces back to the summer of 2012, when plaintiff warned Marines deployed in Afghanistan about a dangerous individual. On August 10, 2012—two weeks after that warning—three Marines were murdered in the Forward Operating Base Delhi gymnasium in Afghanistan. Plaintiff asserts that senior Marine Corps officials have engaged in a "concerted two-year long effort . . . to cover-up the severe lapses and other highly damaging misconduct that led to those murders" and that the current disciplinary proceedings are in furtherance of that "cover-up." (Pl. Mem. at 1-2.) Plaintiff further alleges that his disciplinary hearing was procedurally and substantively defective because, among other things, the Marine Corps failed to provide a timely,

verbatim transcript that would allow for prompt review of the hearing record.

Defendants counter that, on July 25, 2012, plaintiff transmitted classified data via an unsecure, commercial e-mail account, which led the Naval Criminal Investigative Service to investigate plaintiff's handling of classified documents. According to the government, that investigation "revealed that Major Brezler had stored more than 100 official documents, including classified documents, on his personal laptop and/or external storage device." (Def. Mem. at 1.) Following that investigation, Major Brezler was referred to a Board of Inquiry for additional factfinding regarding his potential violation of regulations governing the handling of classified information. The Board of Inquiry conducted a hearing and recommended an honorable separation, but additional levels of administrative review of that recommendation are pending.

The present motion seeks a preliminary injunction prohibiting the Marine Corps from either acting upon the separation recommendation or proceeding any further in the disciplinary process. In the alternative, plaintiff seeks an injunction compelling the Navy to provide an accurate transcript of the initial disciplinary hearing.

For the reasons discussed below, the Court denies plaintiff's motion. In particular, it is well settled that an agency action must be final before judicial review of that decision is available under the APA. In the instant case, the record clearly demonstrates that the decision to separate plaintiff from the Marine Corps is not final; rather, it is a Board of Inquiry recommendation. As a result, plaintiff has additional layers of process available to him within the Department of Defense before any prospective order becomes final – namely, (1) the record and recommendation are currently under review by the Staff Judge Advocate to the Commandant of the Marine Corps; (2) following that review, the recommendation will be reviewed by the Deputy Commandant, Manpower and Reserve Affairs; and (3) after that review, the record will be sent to the Secretary of the Navy for a final determination. Although plaintiff argues that the finality requirement is met because the Board of Inquiry has made factual findings, the Court is not persuaded by that argument. Importantly, the regulatory procedures currently available to plaintiff still allow for remand of the case for further factfinding, including a new hearing, if warranted. Therefore, there is nothing final about the Board of Inquiry findings. In any event, the final, reviewable, agency action in this case will be the separation determination by the Assistant Secretary (if such a determination is ever made), and not the preliminary factual findings.

The Court recognizes that Major Brezler has raised serious allegations about the circumstances surrounding the murders of three United States Marines in Afghanistan, and that Major Brezler's career in the Marine Corps is being jeopardized by a disciplinary proceeding that he asserts was flawed. However, the Court's jurisdiction is limited by the finality requirement of the APA, and the Court cannot immediately review the merits of plaintiff's challenges to the disciplinary proceedings simply because important interests are at stake and due process challenges are being raised. Instead, the Court must properly adhere to the jurisdictional boundaries imposed by Congress and await a final action from the military that is reviewable under the APA. Accordingly, given the current absence of a final agency action, this Court lacks jurisdiction at this juncture to review

plaintiff's claim under the APA, and no basis for an injunction exists at this time.

Finally, the Court notes that plaintiff's counsel suggested at oral argument that Major Brezler is also asserting a First Amendment retaliation claim – namely, that Major Brezler was only referred to the Board of Inquiry because senior Marine Corps officials were unhappy with news coverage suggesting that Major Brezler had spoken to Congressman Peter King about the three murdered Marines in Afghanistan. However, no First Amendment claim appears in the complaint. Thus, Major Brezler must amend the complaint if he wishes to assert a separate cause of action for First Amendment retaliation that is independent of the APA. If such a claim were asserted, it would not be subject to the finality requirement of the APA. Nevertheless, this Court would still have to analyze whether the exhaustion doctrine should apply to that claim, as a matter of judicial discretion, if the Marine Corps is currently reviewing the facts surrounding that claim. Under certain circumstances, courts (including the Second Circuit) have allowed First Amendment claims to proceed against the military without requiring exhaustion. *See, e.g., Able v. United States*, 88 F.3d 1280 (2d Cir. 1996). Regardless, the Court's evaluation of those issues must await a formal amendment to the complaint to add a First Amendment retaliation claim.

## I. BACKGROUND

### A. Regulatory Framework

Because this lawsuit challenges the manner in which the Marine Corps is conducting Major Brezler's disciplinary proceeding, a discussion of the relevant administrative framework is necessary.

Applicable here are three sections of the United States Code, Title Ten, governing the involuntary separation of officers from the armed forces: 10 U.S.C. § 1181, § 1182 and § 14903. Together, Sections 1182 and 14903 provide that the "military department concerned" (here, the Marine Corps) must convene a "board of inquiry" to receive evidence in the case of any officer who has been required to show cause why he should not be separated. Section 14903 requires the board of inquiry to make a recommendation to the Secretary of the Navy, who reviews the recommendation and decides whether to remove the officer or close the case.

However, Section 1181 confers on the Navy the authority to establish its own specific procedures for implementing the board of inquiry process. The primary Navy regulations that govern separation proceedings are Secretary of the Navy Instruction 1920.6C, entitled "Administrative Separation of Officers," and Marine Corps Order P5800.16A, entitled "Marine Corps Manual for Legal Administration."

Under these Navy regulations, separation proceedings for Marines occur in the following manner.[1] First, the Show Cause Authority notifies the officer that he must appear before a Board of Inquiry. The Board of Inquiry conducts a live hearing and receives testimony from witnesses. Based upon the record developed at the hearing, the Board of Inquiry makes a recommendation as to whether the officer should be retained or separated. The Show Cause Authority reviews the record, and

---

[1] These procedures are well summarized in the Government's memorandum, as well as in the Declaration of Lieutenant Matthew Dursa, an attorney in the Judge Advocate Generals Corps. (*See* Def. Mem. at 2; Michael Dursa Affidavit, ECF No. 12-1.)

3

decides whether to endorse the recommendation. If the recommendation is endorsed, it is reviewed by the Staff Judge Advocate to the Commandant of the Marine Corps. The Staff Judge Advocate makes a recommendation to the Secretary of the Navy, who reviews the record and makes a final determination. The Secretary may either order the officer's separation or close the case.

B. Factual History

The following facts are taken from the complaint and from plaintiff's submissions in support of the present motion. The government has not submitted materials to contradict all of plaintiff's factual allegations, but instead has taken the position that "Major Brezler's Motion is filled with unsupported allegations and arguments that are entirely irrelevant to the claims at issue and the relief sought. Stripped of the Motion's conclusory conspiracy theories and innuendo, however, the relevant facts in this action are largely not in dispute." (Def. Mem. at 1.) The Court has reviewed the parties' submissions, and the following is a summary of the facts submitted by the plaintiff that are not disputed by the government.[2]

Plaintiff is a reservist in the United States Marine Corps, assigned to the Marine Reserve facility in Garden City, Long Island. (Declaration of Jason Brezler, ECF No. 6-6 ("Brezler Decl."), at ¶ 2.) In July 2012, while plaintiff was in Oklahoma, plaintiff received an email from a fellow Marine deployed in Afghanistan. (Brezler Decl. at ¶¶ 11-14.) Plaintiff responded to that email, and attached a classified document. (*Id.*) The email was sent over unsecured channels from plaintiff's private email address. (*Id.*) Following the transmission, the Naval Criminal Investigative Service investigated plaintiff's handling of classified information. (*Id.* at ¶ 20.) Plaintiff avers that the NCIS did not recommend any disciplinary action. (*Id.* at ¶ 20.) The Navy convened a Board of Inquiry ("BOI") for further fact-finding as to whether plaintiff had violated military regulations governing classified material. (*Id.* at ¶ 30-34.) After a hearing, the BOI recommended "that the respondent be separated from the Naval Service with an Honorable characterization of discharge." (Board of Inquiry Report, ECF No. 6-1.) That recommendation is subject to further administrative review, which has not yet occurred.[3] As a result, the recommendation is still pending, and has not been adopted. Plaintiff claims that review of the BOI proceeding is meaningless, because the transcript of the hearing contains 1,548 missing portions marked "inaudible." (Brezler Decl. at ¶ 55.)

On December 22, 2014, plaintiff commenced this action and sought a temporary restraining order prohibiting defendants from acting upon the BOI's recommendation. (*See* Proposed Order, Docket Entry 9.) On that same day, the Court held a hearing and denied plaintiff's request for a temporary restraining order, but ordered defendants to respond to the request for a preliminary injunction.

The crux of plaintiff's claim is that he believes the disciplinary proceedings were

---

[2] The undisputed facts establish that the Court lacks jurisdiction to issue the requested injunction at this time because the finality requirement of the APA has not been met; as a result, the Court concludes that there is no need for an evidentiary hearing.

[3] The Show Cause Authority has endorsed the BOI recommendation. The matter is currently pending review before the Staff Judge Advocate to the Commandant of the Marine Corps. (*See* Dursa Affidavit, ECF No. 12-1, ¶ 12-13.)

4

convened in order to "silence and discredit" him. (*Id.* at ¶ 23.) Specifically, plaintiff claims that the email transmission at issue in the disciplinary proceedings was a warning to other Marines regarding a dangerous individual who had entered onto Forward Operating Base Delhi ("FOB Delhi"), a United States military base in the Helmand Province of Afghanistan. (*Id.* at ¶¶ 13-17.) In August 2012, three Marines were killed on the gymnasium of the base, and plaintiff claims that these deaths occurred because the Marine Corps failed to heed his warnings. (*Id.* at ¶¶ 13-21.) Plaintiff asserts that the Marine Corps has failed to investigate his superiors for their failure to respond to warnings about the threat to the base, and instead has targeted him for dismissal in order to keep information from coming to light. (*Id.* at ¶¶ 17-21.) Finally, plaintiff claims that the BOI proceeding was motivated by pressure on the Marine Corps from both congressional inquiries into the deaths on the base and media coverage of the incident. (*Id.* at ¶¶ 19, 21, 30.)

In opposition to the motion, the government has not responded to all of the details of these claims, arguing that these allegations are irrelevant because plaintiff's motion fails on procedural grounds. Additionally, the government asserts that the BOI has responded to plaintiff's challenge to the transcript, and a court reporter has reviewed the audio of the hearing and produced a new transcript containing approximately 284 notations of "inaudible." (Def. Mem. at 7.)

At oral argument, plaintiff contested the government's representation that the new transcript is adequate. In response, the government noted that the Navy has disclosed the underlying audio recordings to plaintiff, and that if plaintiff nonetheless finds the transcript to be inadequate, he may raise this issue administratively. Furthermore, the Staff Judge Advocate to the Commandant of the Marine Corps has the discretion to remand the case for further fact-finding.

This matter is fully submitted, and the Court has thoroughly considered the submissions of the parties.

## II. STANDARD OF REVIEW

In order to prevail on a motion for a preliminary injunction, a party must establish: "(1) irreparable harm in the absence of the injunction and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor." *MyWebGrocer, LLC v. Hometown Info., Inc.*, 375 F.3d 190, 192 (2d Cir. 2004) (quoting *Merkos L'Inyonei Chinuch, Inc. v. Otsar Sifrei Lubavitch, Inc.*, 312 F.3d 94, 96 (2d Cir. 2002)). "To establish irreparable harm, plaintiffs must demonstrate an injury that is neither remote nor speculative, but actual and imminent." *Tucker Anthony Realty Corp. v. Schlesinger*, 888 F.2d 969, 975 (2d Cir. 1989) (internal quotation marks omitted).

## III. DISCUSSION

The Court first considers the second prong of the preliminary injunction standard—that is, whether plaintiff is likely to be successful on the merits, or whether this case presents sufficiently serious questions going to the merits to make them a fair ground for litigation. Plaintiff has asserted claims under the APA, the Due Process clause, and Instruction 1920.6C of the Board of Inquiry procedures. (Complaint, ¶ 5.) The Court considers these

claims in turn. As discussed below, the Court concludes that the second prong is not met because (1) the Court lacks jurisdiction over the APA claim at this juncture given the absence of the requisite final agency action; and (2) any attempt to bring a due process claim independent of the APA cannot proceed at this stage because it is unexhausted and unripe. Thus, there is no basis for an injunction at this stage of the litigation.[4]

1. Administrative Procedure Act

Plaintiff challenges the BOI's recommendation under the Administrative Procedure Act, 5 U.S.C. § 551, *et seq*. ("APA"). The APA provides that a reviewing court shall "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law . . . ." *See* 5 U.S.C. § 706(2)(B).

The government contends that plaintiff is procedurally barred from seeking review under the APA because plaintiff has not exhausted his administrative remedies. The government chiefly relies upon *Guitard v. United States Sec'y of Navy*, 967 F.2d 737 (2d Cir. 1992). In that case, the Second Circuit reversed a preliminary injunction barring the Navy from discharging a member of the Naval Reserve, on the grounds that the plaintiff had failed to exhaust his administrative remedies. As the Second Circuit explained, "[u]nder the exhaustion rule, a party may not seek federal judicial review of an adverse administrative determination until the party has first sought *all possible relief* within the agency itself." *Id*. at 740 (emphasis added) (citing *Myers v.*

---

[4] Given the plaintiff's present inability to satisfy the second prong of the preliminary injunction, the Court need not address the irreparable harm issue.

*Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 50-51 (1938); *Schlesinger v. Councilman*, 420 U.S. 738, 756 (1975)). *Guitard* emphasized that "[t]he imperatives concerning military discipline require the strict application of the exhaustion doctrine in discharge cases." *Id*. *See also Michaelson v. Herren*, 242 F.2d 693, 696 (2d Cir. 1957) (holding that district court "could not properly assume to exercise [] jurisdiction until the plaintiff had exhausted the review processes which the statute provided for the military establishment.").

Plaintiff argues that the ruling in *Guitard* has since been abrogated by the Supreme Court's ruling in *Darby v. Cisneros*, 509 U.S. 137 (1993), which was decided a year later. In *Darby*, the plaintiff sought to challenge an order issued from an Administrative Law Judge in the Department of Housing and Urban Development. *Id*. at 139-40. The Fourth Circuit had held that plaintiff's claims were barred under the exhaustion rule, and the Supreme Court reversed. *Id*. at 142. In so ruling, the Supreme Court limited the exhaustion rule, holding that, where agency action has become final, courts can impose an exhaustion rule only when expressly required by statute. *Id*. at 151. (Where the APA applies, "an appeal to 'superior agency authority' is a prerequisite to judicial review *only* when expressly required by statute or when an agency rule requires appeal before review and the administrative action is made inoperative pending that review.") (emphasis in original). In other words, once an agency action becomes final, a plaintiff need not seek further review within the agency before seeking judicial review, unless a specific statute requires otherwise. In the present case, there is no question that exhaustion is not required by statute.

It is uncertain whether there is an exception to the *Darby* rule for military discipline cases, to avoid undue judicial interference with the armed forces. As plaintiff points out, many courts have declined to recognize a military exception to *Darby*. *See Crane v. Sec'y of the Army*, 92 F. Supp. 2d 155, 161-62 (W.D.N.Y. 2000) ("Almost without exception, federal courts throughout the country have also declined to create a military exception to the Court's decision in Darby.") (collecting cases).

The Court need not resolve the tension between *Guitard* and *Darby* at this juncture, because the rule of *Darby* is only implicated where a plaintiff seeks review of a final agency action. *Darby* itself makes this clear, because the Court's evaluation of the exhaustion requirement was premised on Section 10(c) of the APA, which provides that judicial review is available for "final agency action." *Darby*, 509 U.S. at 142 (quoting 5 U.S.C. § 704). In fact, the *Darby* Court, quoting prior precedent, clearly explained the distinction:

> We have recognized that the judicial doctrine of exhaustion of administrative remedies is conceptually distinct from the doctrine of finality: "[T]he finality requirement is concerned with whether the initial decisionmaker has arrived at a definitive position on the issue that inflicts an actual, concrete injury; the exhaustion requirement generally refers to administrative and judicial procedures by which an injured party may seek review of an adverse decision and obtain a remedy if the decision is found to be unlawful or otherwise inappropriate."

*Darby*, 509 U.S. at 144 (quoting *Williamson Cnty. Regional Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 193 (1985)); *see also Top Choice Distribs., Inc. v. United States Postal Serv.*, 138 F.3d 463, 466 (2d Cir. 1998) ("Finality is an explicit requirement of the APA, while exhaustion is a judge-made creation . . . .").

Thus, even though *Darby* does not require exhaustion under the APA, it is well established that "the APA explicitly requires that an agency action be final before a claim is ripe for review." *See Air Espana v. Brien*, 165 F.3d 148, 152 (2d Cir. 1999) (citing *Top Choice Distribs., Inc. v. United States Postal Serv.*, 138 F.3d 463, 466 (2d Cir. 1998)). The purpose of the finality requirement is to accord the agency "an opportunity to apply its expertise and correct its mistakes," as well as to avoid disrupting the agency's processes and to relieve the courts from piecemeal (and possibly unnecessary) review. *Id.* (quoting *DRG Funding Corp. v. Secretary of Hous. and Urban Dev.*, 76 F.3d 1212, 1214 (D.C. Cir. 1996)). The Second Circuit has defined the finality requirement as follows:

> [T]wo conditions must be satisfied for agency action to be final: First, the action must mark the consummation of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which rights or obligations have been determined or from which legal consequences will flow.

*Sharkey v. Quarantillo*, 541 F.3d 75, 88 (2d Cir. 2008) (quoting *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997)).

In the instant case, there can be no question that the BOI's recommendation is not a final agency action. The BOI report is only a recommendation, and it is subject to several layers of review before it may potentially be adopted. Specifically, the recommendation from the BOI (which has been endorsed by the Show Cause Authority) must be reviewed by the Staff Judge Advocate to the Commandant of the Marine Corps, after which the Deputy Commandant will review the case. After those two rounds of review, the Secretary of the Navy will review the final recommendation and decide whether to direct plaintiff's separation.[5] At each level of review, the Navy may decline to order plaintiff's separation. As such, the Navy's decision-making process has not yet been consummated.[6] Therefore, the BOI proceeding is not a "final agency action" of the type that is subject to judicial review under the APA. Accordingly, this Court lacks jurisdiction to review the BOI report under the APA.[7]

2. Due Process Challenge

Perhaps mindful of the procedural hurdles to presenting claims under the APA, plaintiff has also styled his case as a freestanding constitutional challenge to the disciplinary proceedings under the Due Process clause. Constitutional claims brought independently of the APA are not subject to the finality requirement. However, because such claims also operate outside the scope of *Darby*, the exhaustion rule applies to such claims as a matter of judicial discretion.[8] *See Darby*, 509 U.S. at 153 ("Of

---

[5] At oral argument, the government conceded that the Navy's decision would become "final" (for purposes of the APA) once the Secretary of the Navy directs separation, even though there are two avenues for administrative appeal available after such a decision.

[6] At oral argument, plaintiff's counsel argued that the BOI's report is final because the BOI proceedings have concluded, and that therefore the BOI report is final and subject to review. If the Court were to accept this reasoning, then all agency action at every level of decision-making would meet the finality requirement, thereby frustrating the very purpose of the requirement. Additionally, to the extent plaintiff contends that Major Brezler's altered status in the Marines during the pendency of the disciplinary review process is a final agency action, the Court disagrees that plaintiff's temporarily altered status is subject to judicial review. Regardless, the collateral consequences of the pending disciplinary charges do not constitute irreparable harm, and thus the Court cannot enjoin the Marine Corps from altering plaintiff's status while the BOI recommendation is under review. *Guitard*, 967 F.2d at 742 ("the injuries that generally attend a discharge from employment— loss of reputation, loss of income and difficulty in finding other employment—do not constitute the irreparable harm necessary to obtain a preliminary injunction.

[7] In a post-argument submission, plaintiff correctly notes that, even if there is no final agency decision, a court may "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 555(b); 5 U.S.C. § 706(1). As a threshold matter, there is no unreasonable delay claim asserted in the current complaint. In any event, there is no factual basis for such a claim at this juncture. On December 11, 2014, an endorsement issued by the Show Cause Authority, and the record (including the revised transcript) is now pending review by the Staff Judge Advocate to the Commandant of the Marine Corps. Counsel for defendants indicated to the Court that a recommendation is expected in March. Thus, at this point, there is no indication that a final decision is being unreasonably delayed. If any unreasonable delay were to occur in the future, plaintiff could assert an unreasonable delay claim at that time.

[8] Defendants also contend that any attempt to challenge the constitutionality of an agency action is subject to the APA's finality requirement because the APA provides the requisite waiver of the federal government's sovereign immunity for such claims. By letter dated February 11, 2015, plaintiff counters that the Court's authority is not limited to the APA. Under certain circumstances, a district court certainly has jurisdiction to hear claims for injunctive relief for alleged constitutional violations by the military; that jurisdiction is not limited by either the APA's finality requirement or the doctrine of sovereign immunity. *See, e.g.*, *Pilchman v. Department of Defense*, 154 F. Supp. 2d 415, 421 (E.D.N.Y. July 25, 2001) ("[I]nsofar as the complaints seek injunctive relief for

course, the exhaustion doctrine continues to apply as a matter of judicial discretion in cases not governed by the APA."); *Able v. United States*, 88 F.3d 1280, 1288 n.7 (2d Cir. 1996) (holding that *Darby*'s limits to the exhaustion rule were not applicable to a case seeking review of a military policy on constitutional grounds); *Cunningham v. Loy*, 76 F. Supp. 2d 218, 220-21 (D. Conn. 1999) ("The limits imposed by *Darby v. Cisneros* regarding administrative exhaustion under the APA are not applicable since *Darby* specifically made no alteration in the exhaustion doctrine in cases not governed by the APA."). Accordingly, in such circumstances, exhaustion is generally required, but exhaustion may not be required when: "(1) available remedies provide no genuine opportunities for adequate relief; (2) irreparable injury may occur without immediate judicial relief; (3) administrative appeal would be futile; and (4) in certain instances a plaintiff has raised a substantial constitutional question." *Able*, 88 F.3d 1288 (quoting *Guitard*, 967 F.2d at 741).

Here, as in *Guitard*, plaintiff challenges the disciplinary proceedings on Due Process grounds, claiming that the procedures used in the disciplinary proceedings were illegal. Applying the *Able* factors, the Court readily concludes that exhaustion should be required of any due process claim here. Plaintiff has ample access to process within the Navy proceedings, and therefore he has genuine opportunities for adequate relief. If there were procedural defects in the BOI proceedings, then plaintiff can raise these issues before the agency. It is possible that the Navy may in fact agree with plaintiff, and remand the proceedings to the BOI for further fact finding. Finally, although plaintiff's Due Process claim is brought under the Constitution, this claim is not the type of discrete constitutional issue that exempted the plaintiff in *Able* from the exhaustion requirement. In *Able*, the question before the court was whether the "Don't Ask, Don't Tell" policy was constitutional. Here, plaintiff does not contend that the military regulation governing the use of confidential materials is itself unconstitutional. Instead, plaintiff challenges the manner in which the BOI proceedings were conducted. For this reason, the nature of plaintiff's claims do not exempt plaintiff from the exhaustion rule.

Furthermore, even apart from the exhaustion issue, plaintiff's due process claims cannot proceed because they are unripe. This is because plaintiff has not yet been disciplined, and thus has not yet suffered a cognizable deprivation. *See Thomas v. City of New York*, 143 F.3d 31, 34-35 (2d Cir. 1998) (affirming dismissal of procedural due process claim as unripe, where plaintiffs claimed the City's licensing application procedures denied due process, but plaintiffs had not yet been denied a license under the process they claimed was unlawful); *Coffran v. Board of Trustees*, 46 F.3d 3, 3 (2d Cir. 1995) (due process claim arising from medical board's recommendation that a police officer be

---

alleged violation of plaintiff's constitutional rights, the court may entertain those claims and award appropriate relief if they are found to be meritorious. . . . Even in the military context, the courts cannot abdicate their ultimate responsibility to decide constitutional questions."); *see, e.g., Adkins v. Rumsfeld*, 450 F. Supp. 2d 440, 446 (D. Del. 2006) (sovereign immunity did not bar claim by former Air Force member that he was issued a letter of reprimand in retaliation for his constitutionally protected speech to flight surgeon). However, the Court need not resolve the sovereign immunity issue at this stage because, even assuming *arguendo* that a constitutional claim could be brought independent of the finality requirement of the APA, the Court concludes that plaintiff's due process claim should be exhausted and is not ripe. As discussed *infra*, the Court does not reach these issues with respect to any First Amendment claim that plaintiff may assert in the future.

involuntarily retired was not ripe for review). The Court therefore concludes that, even if plaintiff were to style his APA challenge as a Due Process claim,[9] this claim is unlikely to succeed at this juncture because it is unripe.

### 3. Military Regulations

To the extent plaintiff seeks to enforce regulations of the Department of Navy as a separate cause of action, that claim also cannot proceed. (Compl. at ¶ 5.) Plaintiff cannot possibly be arguing that Navy regulations give rise to a private right of action enforceable in federal court. Instead, it appears that plaintiff is arguing that the disciplinary proceeding is invalid because the agency failed to comply with its own regulations. That is a claim that plaintiff must raise under the APA, after the agency takes final action subject to judicial review. Plaintiff cannot assert claims under Navy regulations in order to avoid the APA's procedural requirements.

### 4. First Amendment

At oral argument, plaintiff's counsel argued that exhaustion should not be required because his client, like the plaintiff in *Able*, seeks to challenge a violation of his First Amendment rights. However, the Court has closely examined both the complaint and Major Brezler's declaration in support of the motion, and neither submission purports to assert a First Amendment retaliation claim. At most, it appears that plaintiff's theory is that the BOI proceedings were held in response to congressional inquiries into the deaths at FOB Delhi and media coverage of the incident. (*See* Brezler Decl. at ¶¶ 30, 45.) Plaintiff himself distills his case in the following way:

> The convening of this BOI arose out [of] (a) the murder of three Marines on a forward operating base in Afghanistan, (b) a warning I sent in reply to a request I received for information from those Marines' unit that could have prevented those murders, (c) the efforts of the families of these dead Marines, Congress, and the media to secure answers about those murders, and (d) a concerted effort directed from the highest levels of the Marine Corps to not provide such answers and avoid any public scrutiny, and to discredit, punish, and deter those it fears are a threat to this attempted cover-up.

(*Id.* at ¶ 3.) A First Amendment retaliation claim would have to be based on some type of alleged speech by the plaintiff, and the complaint does not allege that the BOI proceeding was motivated by plaintiff's speech.[10] Plaintiff himself expressly denies having any responsibility for the media coverage he claims sparked the disciplinary charges. (*Id.* at ¶¶ 45 ("First, the judge advocate argued I should be separated because I was responsible for the media stories about the FOB Delhi murders. But there was no evidence that this was true, and it was not true."), 67-70.) At oral argument, plaintiff's counsel made reference to

---

[9] To the extent plaintiff argues that his due process claim stems from a right to be free from an arbitrary and capricious disciplinary proceeding, the Second Circuit has rejected that view of the APA. *See Furlong v. Shalala*, 156 F.3d 384, 394 (2d Cir. 1998) (failure to comply with the APA does not give rise to due process claim, because "a statute that simply provides a standard for review of agency action cannot furnish the substantive basis for a claim of entitlement to a property interest. The APA is merely a procedural vehicle for review of agency action; it does not confer a substantive right to be free from arbitrary agency action.") (citation omitted).

[10] Plaintiff does not contend that the Marine Corps is retaliating against him for warning Marines at FOB Delhi in July 2012.

communications between plaintiff and Congressman Peter King. However, there are no direct allegations in the complaint about any such communications.[11] In short, even liberally construed, the current complaint does not assert a claim of retaliation under the First Amendment. If plaintiff were to amend the complaint to assert a claim of retaliation under the First Amendment, the Court would, at that time, consider the factors under *Able* to determine whether exhaustion should be required.[12]

## IV. CONCLUSION

In sum, the Court lacks jurisdiction to enjoin the disciplinary proceedings. The BOI's recommendation is not a final agency action, and therefore plaintiff cannot seek review under the APA at this time. Moreover, with respect to any attempt to bring a due process claim outside the confines of the APA framework, plaintiff has adequate avenues for relief before administrative tribunals, which may obviate the need for federal judicial intervention. Such claims are, therefore, unexhausted and unripe. As a result, with respect to the due process claim, on the record before the Court, plaintiff has not shown a likelihood of success on the merits, or even sufficiently serious questions on the merits making them a fair ground for litigation.

With respect to any First Amendment retaliation claim (based upon plaintiff's communication with Congressman King or with anyone else), no such separate claim is contained in the complaint. Thus, the Court cannot address that claim unless and until plaintiff amends the complaint to include this cause of action, together with specific allegations regarding the nature of that claim. If such a claim is asserted, the Court will require additional briefing as to whether this claim should proceed, in light of the *Able* factors.

Accordingly, plaintiff's motion for a preliminary injunction is denied without prejudice.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: February 18, 2015
Central Islip, NY

\* \* \*

---

[11] Plaintiff's declaration contains one oblique reference to retaliation that mentions his own speech: "In a subsequent investigation into whether General Mills took this action to retaliate against me for statutorily protected communications to among others members of congress, General Mills testified under oath that he was unaware of any such communications. The Inspector General found this testimony false because the 'evidence established that [Mills] was aware of [Brezler]'s communication before taking the action.'" (Brezler Decl. at ¶ 35). There are no other averments in the declaration or the complaint that amplify this allegation, and it is unclear what communications plaintiff is referring to. In fact, the declaration does not assert that retaliation in fact occurred, but instead states that Lt. Gen. Mills was investigated for possible retaliatory conduct. Any such claim would have to be clearly asserted in the complaint to be reviewed by the Court.

[12] At oral argument and in a post-argument letter, plaintiff referenced a potential claim under the Military Whistleblower Protection Act, 10 U.S.C. § 1034. That claim also is not in the complaint. In any event, this Court concludes, as other courts have held, that no private right of action exists under that statute. *See Acquisto v. United States*, 70 F.3d 1010, 1011 (8th Cir. 1995) ("§ 1034 does not provide [a service member] with any private cause of action, express or implied"); *accord Hernandez v. United States*, 38 Fed. Cl. 532, 536 (Fed. Cl. 1997); *see also Bryant v. Military Dep't of the State of Mississippi*, 381 F. Supp. 2d 586, 590 (S.D. Miss. 2005) (holding that § 1034 "provides only an administrative remedy and not a private right of action.").

Plaintiff is represented by Michael J. Bowe, Kasowitz, Benson, Torres & Friedman LLP, 1633 Broadway, New York, NY 10019, and Kevin Thomas Carroll, Quinn Emanuel Urquhart & Sullivan LLP, 777 6th Street, 11th Floor, Washington, DC 20001. The government is represented Leigh Aaron Wasserstrom, Assistant United States Attorney, on behalf of Preet Bharara, United States Attorney, Southern District of New York, 86 Chambers Street, New York, NY 10007.