**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

JASON BREZLER,

Major Brezler,

v.

LIEUTENANT GENERAL RICHARD MILLS, UNITED STATES MARINE CORPS, and UNITED STATES DEPARTMENT OF THE NAVY,

Defendants.

No. 14 Civ. 7424 (JFB)

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

LORETTA E. LYNCH
Attorney General of the United States

PREET BHARARA
United States Attorney for the
Southern District of New York
86 Chambers Street – 3rd Floor
New York, N.Y. 10007
Tel. No.: (212) 637-3274

LEIGH WASSERSTROM
Special Assistant United States Attorney

– Of Counsel –

## TABLE OF CONTENTS


PREMILINARY STATEMENT ....................1

REGULATORY FRAMEWORK ....................3

FACTUAL BACKGROUND ....................5

A. Mishandling of Classified Information and Subsequent Investigations ....................5

B. Adverse Fitness Report Based on NCIS Investigation and Referral to BOI ....................7

C. BOI Proceeding ....................9

D. Review of BOI Decision and Final Decision ....................11

PROCEDURAL BACKGROUND ....................13

STANDARDS OF REVIEW ....................14

A. Motion to Dismiss Standards ....................14

B. Summary Judgment Standard ....................15

C. Review of Agency Action Under the APA ....................15

ARGUMENT ....................17

A. The Court Lacks Jurisdiction ....................17

1. Major Brezler's APA Claim Is Nonjusticiable ....................18

2. A Claim Based on the Navy's Alleged Failure to Follow Regulations Must Be Exhausted ....................20

3. Major Brezler Has Not Sought Review of a Civilian Review Board Decision ....................23

B. Even If the Court Reaches the Merits, the Navy's Separation Decision Should Not Be Set Aside ....................24

1. The Assistant Secretary's Decision Is Based on Undisputed Evidence of Misconduct Sufficient to Justify Separation ....................25

2. The Assistant Secretary Considered the Allegations of Retaliation and Improper Influence and Concluded They Were Without Merit ....................27

3. The Navy Complied With Applicable Regulations ....................................30

C. Major Brezler's Remaining Claims Should Be Dismissed....................................31

CONCLUSION..........................................................................................................................33

## TABLE OF AUTHORITIES

*Able v. United States*,
88 F.3d 1280 (2d Cir. 1996)....................22, 23

*Aera Energy LLC v. Salazar*,
691 F. Supp. 2d 25 (D.D.C. 2010), *aff'd*, 642 F.3d 212 (D.C. Cir. 2011)....................27

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)....................15

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................14

*Beharry v. Ashcroft*,
329 F.3d 51 (2d Cir. 2003)....................22, 23

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)....................14

*Benzman v. Whitman*,
523 F.3d 119 (2d Cir. 2008)....................32

*Cantor Fitzgerald v. Lutnick*,
313 F.3d 704 (2d Cir. 2002)....................14

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)....................15

*Chappell v. Wallace*,
462 U.S. 296 (1983)....................16, 21

*Cone v. Caldera*,
223 F.3d 789 (D.C. Cir. 2000)....................16

*Crane v. Secretary of the Army*,
92 F. Supp. 2d 155 (W.D.N.Y. 2000)....................22

*Darby v. Cisneros*,
509 U.S. 137 (1993)....................21

*Davis v. Harvey*,
No. 04-CV-1051, 2006 WL 2794318 (E.D.N.Y. Sept. 27, 2006)....................16

*Dibble v. Fenimore*,
545 F.3d 208 (2d. Cir. 2008)....................16, 4

*Dibble v. Fenimore*,
339 F.3d 120 (2d Cir. 2003)....................*Passim*

*Environmental Defense Fund, Inc. v. Costle*,
657 F.2d 275 (D.C. Cir. 1981)....................15

*Escaler v. Citizenship and Immigration Services*,
582 F.3d 288 (2d Cir. 2009)....................32

*Espinosa v. Immigration & Customs Enf't*,
181 F. App'x 89, 91 (2d Cir. 2006)....................16

*Falk v. Secretary of the Army*,
870 F.2d 941 (2d Cir. 1989)....................16, 25, 30

*Guitard v. Sec'y of Navy*,
967 F.2d 737 (2d Cir. 1992)....................*Passim*

*In re Joint E. and S. District Asbestos Litigation*,
14 F.3d 726 (2d Cir. 1993)....................32

*Jones v. 106th Rescue Wing*,
859 F. Supp. 2d 381 (E.D.N.Y. 2012)....................19

*Jones v. New York State Division of Military & Naval Affairs*,
166 F.3d 45 (2d Cir. 1999)....................*Passim*

*Karpova v. Snow*,
497 F.3d 262 (2d Cir. 2007)....................16, 25

*Kreis v. Sec'y of the Air Force*,
866 F.2d 1508 (D.C. Cir. 1989)....................16, 18, 24

*Kurlan v. Callaway*,
510 F.2d 274 (2d Cir.1974)....................18

*Lujan v. National Wildlife Federation*,
497 U.S. 871 (1990)....................15

*Makarova v. United States*,
201 F.3d 110 (2d Cir. 2000)....................14

*Montana-Dakota Utility Co. v. Northwestern Public Service Co.*,

341 U.S. 246 (1951) ....................................................................................................32

*National Sci. & Technology Network, Inc. v. F.C.C.*,
397 F.3d 1013 (D.C. Cir. 2005) ......................................................................................23

*Natural Resource Defense Council v. EPA*,
658 F.3d 200 (2d Cir. 2011)............................................................................................15

*Norton v. Larney*,
266 U.S. 511 (1925) ........................................................................................................14

*Orloff v. Willoughby*,
345 U.S. 83 (1953) ....................................................................................................16, 18

*Patsy v. Board of Regents*,
457 U.S. 496 (1982) ........................................................................................................20

*Residents for Sane Trash Solutions, Inc. v. United States Army Corps of Engr's*,
31 F. Supp. 3d 571 (S.D.N.Y. 2014)...............................................................................15

*Robinson v. Overseas Military Sales Corp.*,
21 F.3d 502 (2d Cir. 1994)..............................................................................................14

*Royer v. I.N.S.*,
730 F. Supp. 588 (S.D.N.Y. 1990)..................................................................................32

*Russo v. Reish*,
No. 97 Civ. 3607, 1997 WL 401821 (S.D.N.Y. July 17, 1997) .......................................23

*Saad v. Dalton*,
846 F. Supp. 889 (S.D. Cal. 1994) ..................................................................................22

*Scheuer v. Rhodes*,
416 U.S. 232 (1974) ........................................................................................................14

*Serotte, Reich & Wilson, LLP v. Montante*,
No. 05-CV-284S, 2009 WL 3055294 (W.D.N.Y. Sept. 21, 2009).....................................1

*Sharkey v. Quarantillo*,
541 F.3d 75 (2d Cir. 2008)..............................................................................................27

*Shipping Finance Services Corp. v. Drakos*,
140 F.3d 129 (2d Cir. 1998)............................................................................................14

*Yarusso v. 106 Rescue Wing, New York Air Nat. Guard*,

511 F. App'x 13 (2d Cir. 2013) ....................21

**STATUTES**

5 U.S.C. § 702 ....................15

5 U.S.C. § 703 ....................1

5 U.S.C. § 706(2) ....................15

10 U.S.C. § 1552 ....................5, 23

10 U.S.C. § 1553 ....................5

28 U.S.C. § 1331 ....................31, 32

28 U.S.C. § 1361 ....................32

**RULES**

Fed. R. Civ. P. 12 ....................14

Fed. R. Civ. P. 56 ....................15

Defendants United States Marine Corps, United States Department of the Navy, and Lieutenant General Richard Mills (collectively, the "Defendants" or the "Government"),[1] by their attorneys, Loretta E. Lynch, United States Attorney General, and Preet Bharara, United States Attorney for the Southern District of New York, respectfully submit this memorandum of law in support of their motion to dismiss under Rule 12, or, in the alternative, for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

**PRELIMINARY STATEMENT**

Plaintiff Major Jason Brezler brings this action to set aside his administrative separation from the Navy. The facts underlying the Navy's separation determination are undisputed. In July 2012, Major Brezler sent a classified document through an unsecure commercial email account. The email transmission led to an investigation into Major Brezler's handling of classified information. That investigation revealed that Major Brezler stored more than 100 documents with classification markings on his personal laptop and external hard drive, in violation of law and regulations.

Based on the undisputed evidence of this conduct, Major Brezler received an adverse fitness report, and the Navy referred Major Brezler to a Board of Inquiry. At the Board of Inquiry hearing, Major Brezler, who was represented by both civilian and military counsel, did not dispute that he stored classified information on his personal computer, nor did he challenge the impartiality of any of the Board members. After considering the arguments of counsel and the evidence presented, including over 60 character statements and live testimony of numerous witnesses introduced on Major Brezler's behalf, the Board substantiated the misconduct and

[1] The United States Department of the Navy is the only proper defendant to this Administrative Procedure Act ("APA") action. *See* 5 U.S.C. § 703; *Serotte, Reich & Wilson, LLP v. Montante*, No. 05-CV-284S, 2009 WL 3055294, at *6 (W.D.N.Y. Sept. 21, 2009) (holding that an individual defendant is not a proper defendant under the APA where such individual is not responsible for any final agency action).

voted unanimously that Major Brezler should be separated with an Honorable characterization of service.

The Board's record and recommendation were in turn analyzed and endorsed by additional Navy personnel before the record was presented to the Secretary of the Navy for a final decision. Then, based on a thoroughly developed administrative record, including the investigative reports, Board record, audio recordings of the Board proceedings, and over 1000 pages of supplemental submissions by Major Brezler's counsel, the Secretary of the Navy, through his delegate the Assistant Secretary for Manpower and Reserve Affairs, approved the Board's recommendation and directed separation with Honorable discharge.

Although Major Brezler does not dispute his misconduct, he challenges his separation on the basis of alleged substantive and procedural defects. All of these were raised before and considered by the Assistant Secretary for Manpower and Reserve Affairs, but none persuaded the decision-maker that separation was not warranted. Most prominently, Major Brezler alleges a pattern of retaliation beginning with an adverse fitness report and culminating with his referral to the Board of Inquiry. Major Brezler's allegations of retaliation, however, were considered and found to be without merit at every stage of the administrative process and, independently, in a whistleblower retaliation investigation by the Department of Defense Inspector General. Further, Major Brezler does not even allege that the Assistant Secretary or any member of the Board of Inquiry retaliated or is otherwise biased against him.

For the reasons set forth below, the Government's motion should be granted. As a threshold matter, the Court lacks jurisdiction to review Major Brezler's claims under the justiciability and exhaustion doctrines. Furthermore, the Navy's separation decision, which is entitled to substantial deference, should not be set aside.

**REGULATORY FRAMEWORK**

Secretary of the Navy Instruction ("SECNAVINST") 1920.6C governs the administrative separation of officers from the Navy and the Marine Corps. Administrative Record ("AR") 2633-2656. An officer may be ordered to "show cause" for retention in the military, after which a Board of Inquiry ("BOI") convenes to review evidence and recommend whether the officer (referred to in the BOI process as the "Respondent") should be separated from the military. AR 2693, at §§ 7, 29.

The officer who convenes the BOI, the so-called "Convening Authority," appoints a nonvoting Recorder, who presents evidence in favor of separation, and at least three members of the same branch of service as the Respondent. AR 2644, at § 4. The Convening Authority may also appoint a nonvoting legal advisor. AR 2644, at § 4(k). If appointed, the legal advisor, rather than the senior member, makes final rulings on procedure, evidence, and challenges to members. AR 2644, at § 4(i).

Because the BOI is solely an administrative proceeding, and not a court-martial, the rules of evidence do not apply. AR 2652, at § 10(a). The BOI has discretion to restrict evidence or testimony that it believes to be irrelevant, immaterial, inauthentic, or from an incompetent source. AR 2652, at § 10(c).

The Respondent has a right to counsel before the BOI. AR 2647, at § 6(b)–(d). The Respondent may challenge BOI members for cause and submit matters to show that a member is incapable of making an impartial decision, which may result in that member's removal by the Convening Authority or by the legal advisor. AR 2647, at § 6(f). The Respondent also has the right to submit, before or during the hearing, statements, letters, or affidavits in his or her favor. AR 2648, at § 6(h).

In light of the evidence presented at the hearing, the members of the BOI examine each of the reasons for separation specified by the officer who ordered the Respondent to show cause for retention, the so-called "Show Cause Authority." AR 2652, at § 11(a). Upon the conclusion of the hearing, the members, by majority vote, determine, for each of the stated reasons, if a preponderance of the evidence supports the bases. *Id.* If the members substantiate one or more reasons, the members then vote, by majority, whether to recommend the Respondent's administrative separation from the naval service. AR 2652-53, at § 11(a)(1)–(2).

The Convening Authority must prepare a Record of Proceedings, which includes the evidence submitted to the BOI, each of the reasons for which the Respondent was required to show cause, the particular acts alleged, the Respondent's position on each of the stated reasons, a report of the BOI's findings on the stated reasons and its recommendation on separation, copies of all documents pertinent to convening the BOI, and a summary transcript of the BOI's proceedings. AR 2653, at § 12(a)–(b). A verbatim transcript is not required unless the Show Cause Authority originally directed one. AR 2653, at § 12(a). The Record of Proceedings and the counsel for the Respondent's comments are ultimately submitted via the chain of command to the Secretary of the Navy for final determination. AR 2655, at §13, 14(a).

Typically, the Assistant Secretary of the Navy for Manpower and Reserve Affairs ("Assistant Secretary") acts on behalf of the Secretary of the Navy in officer administrative separation proceedings. AR 2655, at § 13(a). If the BOI recommends separation, the Assistant Secretary may approve the BOI's findings and characterize the Respondent's separation no less favorably than that recommended by the BOI. AR 2655, at § 14(c)(2). Alternatively, the Assistant Secretary may disapprove the recommendation and direct the Respondent's retention. AR 2655, at § 14(c)(1).

Finally, if separation is directed, a Marine may seek further administrative review of a final decision. Any current or former member of the Navy or Marine Corps may apply to the Board for Correction of Naval Records ("BCNR") to correct errors or to remove injustices from his service record. 10 U.S.C. § 1552. Separately, a former member of the Navy or Marine Corps may seek relief at the Naval Discharge Review Board ("NDRB") for review and a determination of whether the service member's discharge was granted in a proper manner and was fair and equitable considering the regulations in effect at the time of the discharge. 10 U.S.C. § 1553.

## FACTUAL BACKGROUND

### A. Mishandling of Classified Information and Subsequent Investigations

Major Brezler deployed to Afghanistan in 2009 and was stationed at Forward Operating Base ("FOB") Delhi. AR 2574. In May 2010, Major Brezler returned to the U.S. with a personal computer and portable hard drive, both of which contained classified documents. AR 2578.

On July 23, 2012, Captain Brian Donlon emailed Captain Andrew Terrell to request information on an Afghan District Chief of Police named Sarwar Jan. AR 1522. Terrell forwarded the request to Major Brezler the next day. AR 1521. On July 24, 2012, Major Brezler emailed, through his personal Yahoo account, a document stored on his personal computer about Sarwar Jan with "SECRET//NOFORN" (Not Releasable to Foreign Nationals/Governments/Non-US Citizens) classification markings to the non-classified email account of Captain Donlon in Afghanistan, the personal Gmail account of Captain Terrell, and the personal Gmail account of Larissa Mihalisko.[2] AR 1521, 2732.

[2] Major Brezler's July 24, 2012 email is not a protected communication because it was made to someone outside of the chain of command who was not designated to receive a protected communication. AR 2711.

Captain Donlon recognized that Major Brezler sent documents with classification markings over an unsecured network and noted that he would report the incident. AR 1521. Approximately one hour later, Major Brezler reported this spillage of classified information to his commander, Lieutenant Colonel Daniel Whisnant. AR 2055, 2171, 2227. During that call, Major Brezler stated to Lieutenant Colonel Whisnant, "I fucked up." AR 2765, 2802.

On August 6, 2012, the Naval Criminal Investigative Service ("NCIS") began an investigation. AR 2719. While the NCIS investigation was ongoing, Major Brezler's commander directed a preliminary inquiry on September 11, 2012. AR 2696, 2579. The preliminary inquiry concluded on September 16, 2012, finding that Major Brezler transmitted classified information across a network that lacked sufficient security controls to protect the information and recommended that the matter be handled administratively. AR 2695. On October 10, 2012, Major Brezler's Regimental Commanding Officer, Colonel Michael LeSavage, suspended Major Brezler from his command in light of the NCIS investigation. AR 2579, 1608-10.

NCIS agents interviewed Major Brezler on October 17, 2012. AR 2760-66. Major Brezler waived his rights to counsel and against self-incrimination and admitted that he emailed a document with secret classification markings from his personal email account to an unsecured network in Afghanistan and to two other unsecured personal email accounts. *Id.* Major Brezler also stated that he had deleted all classified material from his laptop. AR 2761, 2765. NCIS "imaged" Major Brezler's laptop and external hard drive, obtaining virtual copies of all the data contained therein. AR 2767-68. NCIS intended to search these virtual "images." AR 2767-68.

Later that day, after the interview but before NCIS could search the "imaged" copies, Major Brezler contacted NCIS to inform them that he did in fact have additional documents

marked classified on his laptop. AR 2772-73. NCIS agents returned the next day and retrieved Major Brezler's laptop and hard drive. AR 2774. NCIS then discovered that Major Brezler's external hard drive contained 106 documents with classification markings of at least secret. AR 2787, 2790.

On December 5, 2012, Colonel LeSavage received an interim report from NCIS indicating that Major Brezler transmitted classified information on an unclassified network and that Major Brezler possessed additional documents with classification markings. AR 1608-10. Based on the interim report, on December 19, 2012, Colonel LeSavage emailed his superior, Brigadier General James Hartsell, to request that Major Brezler be removed from his command pending the submission of an adverse fitness report. AR 1608-10. General Hartsell agreed with Colonel LeSavage, and submitted the request to his own superior, Lieutenant General Steven Hummer, Commander, Marine Forces Reserve. AR 1608. General Hummer approved the request, and Major Brezler was subsequently relieved from command on December 20, 2012. AR 1608, 2579.

NCIS concluded its investigation into Major Brezler's mishandling of classified information on February 20, 2013. AR 2579. NCIS then forwarded the investigation to Marine Forces Reserve. AR 2579. Marine Forces Reserve advised NCIS that the command would not pursue criminal charges against Major Brezler, but indicated that administrative action was being considered pending adjudication of Major Brezler's security clearance. AR 2805-2809.

**B. Adverse Fitness Report Based on NCIS Investigation and Referral to BOI**

On March 4, 2013, Colonel LeSavage submitted the adverse fitness report. AR 0597-99. Because the acting Battalion Commander, Major Schutta, was the same rank as Major Brezler, General Hummer exercised his discretion as Commander to authorize Colonel LeSavage to act

as the reporting senior and to author the report. AR 1609. On March 11, 2013, Major Brezler received, acknowledged, and signed the report, but submitted an addendum in which he argued that argued that Colonel LeSavage was improperly designated as the reporting senior. AR 0599. On March 12, 2013, after reviewing the report and the addendum, General Hartsell, the reviewing officer, acknowledged and concurred with the adverse characterization. AR 0598.

Major Brezler's first alleged protected communication, a communication with Congressman King, occurred on March 22, 2013. SAC ¶ 38. Five months later, on August 25, 2013, the Marine Corps Times published an article regarding Major Brezler's adverse fitness report. AR 1364-66. The article, which indicated that Major Brezler had spoken to Congressman King, states that King sent a letter to Commandant General Amos, in which King argued that it is "unfair for Maj. Brezler's good-faith effort to warn his fellow Marines, of what sadly proved to be a mortal danger, to derail his reserve career." AR 1364.

On August 26, 2013, the then-Commandant of the Marine Corps, General James Amos, forwarded the article to several Marine Corps personnel, including General Mills who would assume command of Marine Forces Reserve in two days, and requested additional information. AR 1691-92. Carlyle Shelton, the acting Inspector General of the Marine Corps, responded the next day and provided a detailed history of the investigation and stated that he was "awaiting NCIS classified reports of the incident to complete the legal picture." AR 1696-98. General Mills also communicated to General Amos that he had recently become aware of Major Brezler's case and that he would "get more detail." AR 1691.

On August 28, 2013, General Mills assumed command of Marine Forces Reserve. AR 1367. The preliminary legal review for administrative action against Major Brezler was not concluded by the Marine Forces Reserve until sometime after General Hummer departed as

Commander in June 2013. AR 1368, 2579. In the absence of a Convening Authority, no administrative action could be taken until General Mills assumed command. AR 1367, AR 2579-80. On August 30, 2013, after receiving the recommendation of the his staff and reviewing the classified NCIS report, General Mills directed Major Brezler to show cause for retention in the Marine Corps. AR 0004-5.

The day before the show cause order, on August 29, 2013, Major Brezler filed a complaint with the Department of Defense Inspector General (DoD IG), which launched an investigation. AR 2706–2716. Although Major Brezler's initial DoD IG complaint centered on his adverse fitness report, the DoD IG also examined the August 30, 2013 show cause order. AR 2707-09.

**C. BOI Proceeding**

The BOI was conducted from December 17 to December 19, 2013. AR 1819. At the outset of the proceeding, the Recorder and Major Brezler's counsel questioned the three members of the BOI to determine whether they could evaluate the evidence impartially and whether there were grounds requiring recusal. AR 1825-37. Major Brezler did not challenge any member for cause.[3] AR 1837. Major Brezler also testified that he did not believe that the BOI process was unfair. AR 2197 ("Q. Okay. So you have no objection to the convening authority convening this board of inquiry; is that correct? A. No. Judged by the fact that I am sitting here today suggests that I don't object to that process."); AR 2200 ("Q. Do you think anybody in this room is out to get you so to speak? A. No, I don't believe that.").

[3] In advance of the BOI, Major Brezler filed a motion to dismiss alleging "unlawful command influence" by General Mills and selective "prosecution" (notwithstanding the fact that the BOI was not a criminal matter). AR 2813-46. After considering the arguments presented by counsel, the legal advisor denied the motion to dismiss, based on various legal and factual defects, including, *inter alia*, Major Brezler's failure to present evidence that any BOI members had been influenced by General Mills or that General Mills was "being pressured to make a decision one way or another." AR 1856-57.

The fact that Major Brezler mishandled classified information in violation of Navy regulations was not disputed at the BOI.[4] Counsel for the Respondent stated in his opening statement: "I mean, he did it." AR 1869-70. Major Brezler likewise admitted that he improperly stored the 106 documents at issue on his laptop and personal hard drive. AR 2155 ("Q: Did you mishandle classified information? A: Yes, I regrettably did."); 2208 ("Q. Okay. Did you say -- did you, Major Brezler, then Captain Brezler, did you put classified information on to your personal laptop computer? A. I did. Q. Did you, Major Brezler, put classified information on to your personal external hard drive? A. I did."). Major Brezler also admitted that he accessed a document with secret classification markings on his hard drive at some point in 2011, copied and pasted text from the document into a draft manuscript, and intentionally deleted the classification markings from the copied text, describing his action as "an extremely, extremely poor decision on my part." AR 2165-67, 2212–14. In his defense, Major Brezler introduced character statements from 64 individuals for the BOI members to consider, and presented live testimony of nine witnesses. AR 0907–1062, 1873, 2010–2153.

After considering the evidence, testimony, and arguments of counsel, the BOI voted unanimously that Major Brezler should be administratively separated with an Honorable discharge. AR 2273-75. The Board substantiated six of the eight alleged bases for separation, but found that Major Brezler had not violated two of the provisions of the Uniform Code of Military Justice ("UCMJ") included on the Findings Worksheet. AR 1064-67.

---

[4] Prior to the convening of the BOI, the Command Security Manager of Marine Corps Forces Central Command reviewed a sample of 18 documents with classification markings from the 106 such documents in Major Brezler's possession. AR 1593-99. The Command Security Manager's report, which was produced for the BOI, stated that 13 of the 18 documents were properly marked with secret classification markings, and that disclosure of these documents would cause serious damage to American security interests and endanger American forces. AR 1593-99. The Security Manager sampled only 18 documents instead of reviewing all 106 due to limited resources. AR 1898.

**D. Review of BOI Decision and Final Decision**

After the BOI, no action was taken until the DoD IG completed its whistleblower retaliation investigation. The DoD IG concluded its investigation on November 4, 2014, and did not substantiate Major Brezler's allegations, including any retaliation based on his communication with Congressman King on March 22, 2013. AR 2705, 2707-08. Rather, the DoD IG concluded that General Mills "would have taken the unfavorable personnel action against [Major Brezler] absent his protected communications." AR 2707.

In October and November 2014, respectively, Major Brezler filed supplemental submissions challenging the sufficiency of the transcript of the BOI proceeding (AR 1076-84) and raising many of the same alleged defects Major Brezler raises in this proceeding (AR 1252-1352). On December 5, 2014, the Staff Judge Advocate ("SJA") of Marine Forces Reserve provided a memorandum ("SJA Memo") to General Mills addressing the alleged deficiencies raised in Major Brezler's submissions. AR 1800-07. On December 11, 2014, after consideration of the SJA's memorandum, the BOI record, and Major Brezler's supplemental submissions, General Mills endorsed the BOI's findings and recommendation, and forwarded the record to the Assistant Secretary via the Deputy Commandant, Manpower and Reserve Affairs ("Deputy Commandant"). AR 1073. In response to Major Brezler's claim that the transcript of the BOI was insufficient, the Navy provided a revised transcript on December 30, 2014. AR 1818-2276. On December 31, 2014, General Mills submitted an updated endorsement, stating that his recommendation was unchanged by the revisions to the transcript. AR 1816.[5]

[5] In connection with this litigation, the Navy has also provided, as a courtesy, complete audio recordings of the BOI proceeding, available audio recordings of the court reporter's stenographic dictation, and available portions of a text file created by the stenographic recording system. AR 2606, 2624 & audio recordings.

Before any further recommendation or endorsement, on February 2, 2015, Major Brezler's counsel submitted another supplemental submission, arguing that the BOI transcript was inadequate notwithstanding its revision, that the BOI's findings were not supported by substantial evidence, and that Major Brezler was improperly referred to the BOI in retaliation for speaking to Congressman King. AR 2278-2285. On August 4, 2015, the Deputy Commandant endorsed the BOI's recommendation ("Deputy Commandant Endorsement"). AR 2615-31. The Deputy Commandant's Endorsement addressed the arguments raised by Major Brezler's counsel, including the sufficiency of the transcript (AR 2622-24) as well as the sufficiency of the evidence supporting the BOI decision and whether Major Brezler was referred to the BOI in retaliation for protected communications (AR 2624-25).

On September 15, 2015, counsel for Major Brezler submitted another supplemental submission. AR 2409–29. On October 23, 2015, the Navy Deputy Assistant Judge Advocate General for Administrative Law provided her factual and legal analysis to the Judge Advocate General of the Navy ("JAG"). AR 2573-2607. This memorandum (the "JAG Memo") addressed each of the arguments made by Major Brezler's counsel in his four supplemental submissions, including the sufficiency of the evidence supporting separation (AR 2590-92), the allegations of improper influence and reprisal (AR 2593-2599), and the allegations of procedural errors (AR 2600-07). On November 12, 2015, the JAG recommended that the Assistant Secretary approve the BOI's findings and recommendations and administratively separate Major Brezler with an Honorable discharge. AR. 2612-13.

On November 24, 2015, based on his review of the complete Administrative Record submitted in this action, including the investigative reports, Board record, audio recordings of the Board proceedings, and over 1000 pages of supplemental submissions by Major Brezler's

counsel, the Assistant Secretary approved Major Brezler's separation with an Honorable discharge. AR 2631. The JAG Memo (AR 2572-2610), JAG recommendation letter (2611-2613), and the Deputy Commandant Endorsement (AR 2614-2631), which the Assistant Secretary signed, were provided to Major Brezler as reflecting the final action in this matter. Major Brezler has not exhausted his administrative remedies before the BCNR.[6]

**PROCEDURAL BACKGROUND**

On December 22, 2014, while his administrative proceeding was pending, Major Brezler filed a complaint and a motion for a preliminary injunction in this Court. Dkt. Nos. 1, 5. On February 18, 2015, the Court denied Major Brezler's motion for a preliminary injunction without prejudice. *See* Dkt. No. 19. The Court held that it lacked subject matter jurisdiction to adjudicate Major Brezler's claims under the APA because no final agency action had been taken. Dkt. No. 19 at 2-3. The Court, however, granted Major Brezler leave to file an amended complaint. *Id.* Major Brezler filed his Amended Complaint on April 6, 2015. Dkt. No. 21. Defendants moved to dismiss, again arguing, *inter alia*, that no final agency action had been taken. Dkt. No. 28.

After the Assistant Secretary issued his final decision, the Court granted the Defendants' motion without prejudice, and permitted Major Brezler to file a Second Amended Complaint ("SAC"). Dkt. No. 41. By stipulation, the parties agreed that Defendants would not separate Major Brezler before October 23, 2016. Dkt. No. 43. Major Brezler filed his SAC on April 25, 2016. Dkt. No. 45. Defendants answered on June 24, 2016, Dkt. No. 48, and filed the Administrative Record and supplement thereto (collectively, the "AR") with the Court on July 1,

[6] Because the Assistant Secretary approved separation with an Honorable characterization of service, the NDRB, which has authority to change the characterization of service, would not offer meaningful relief in this case.

2016 and July 26, 2016, respectively. Defendants now move to dismiss or, in the alternative, for summary judgment.

## STANDARDS OF REVIEW

### A. Motion to Dismiss Standards

On a motion to dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, a plaintiff carries the burden of establishing that the Court has subject matter jurisdiction to adjudicate his complaint. *See Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 (2d Cir. 1994). When a district court lacks the statutory or constitutional authority to adjudicate a claim, that claim should be dismissed. *See Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). A plaintiff must prove that subject matter jurisdiction exists by a preponderance of the evidence. *See id.* Although a court must "accept as true all material factual allegations in the complaint," *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)), for purposes of assessing jurisdiction, it also must refrain from "drawing from the pleadings inferences favorable to the party asserting [jurisdiction]," *id.* (citing *Norton v. Larney*, 266 U.S. 511, 515 (1925)).

In considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must accept as true the well-pleaded factual allegations set forth in the complaint and draw all reasonable inferences in favor of the plaintiff. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). The court, however, need not give "credence to plaintiff's conclusory allegations." *Cantor Fitzgerald v. Lutnick*, 313 F.3d 704, 709 (2d Cir. 2002) (internal quotation marks and citation omitted). The court should begin by "identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of

truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). If well-pleaded factual allegations exist, the court must then determine whether they plausibly give rise to an entitlement for relief. *Id.*

**B. Summary Judgment Standard**

Where a party seeks judicial review of agency action, "summary judgment is appropriate, since whether an agency action is supported by the administrative record and consistent with the APA standard of review is decided as a matter of law." *Residents for Sane Trash Solutions, Inc. v. United States Army Corps of Engr's*, 31 F. Supp. 3d 571, 586 (S.D.N.Y. 2014) (citations and internal quotation marks omitted). Summary judgment is appropriate when "there is no genuine issue as to any material fact and [] the moving party is entitled to a judgment as a matter of law." *See* Fed. R. Civ. P. 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Because the Court need not and, indeed, may not, "find" underlying facts in this matter, there are no material facts essential to the Court's resolution of this action. *See, e.g., Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 883-84 (1990).

**C. Review of Agency Action Under the APA**

The APA authorizes judicial review of federal agency action for any person "suffering legal wrong because of agency action." 5 U.S.C. § 702. A court may "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law . . . ." 5 U.S.C. § 706(2). An agency action is arbitrary and capricious only where "the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Natural Res. Def. Council v. EPA*, 658 F.3d 200, 215 (2d Cir. 2011) (citation and

internal quotation marks omitted). The APA's "arbitrary and capricious" standard is "highly deferential" and "presumes the agency's action to be valid." *Envtl. Def. Fund, Inc. v. Costle*, 657 F.2d 275, 283 (D.C. Cir. 1981) (citations omitted). Moreover, agency actions are afforded a presumption of regularity. *Espinosa v. Immigration & Customs Enf't*, 181 F. App'x 89, 91 (2d Cir. 2006). Thus, a court must uphold agency action so long as the agency has provided "a satisfactory explanation including a rational connection between the facts found and the choice made." *Karpova v. Snow*, 497 F.3d 262, 268 (2d Cir. 2007).

Courts must give even greater deference to administrative decisions made within the military context. *Dibble v. Fenimore*, 545 F.3d 208, 216 (2d. Cir. 2008); *Falk v. Sec'y of the Army*, 870 F.2d 941, 944–45 (2d Cir. 1989). Courts review military matters under an "unusually deferential application of the 'arbitrary or capricious' standard" of the APA. *Kreis v. Sec'y of the Air Force*, 866 F.2d 1508, 1514 (D.C. Cir. 1989). "[W]hen applying the arbitrary and capricious test, a court may not assess the wisdom of an agency's choice; inquiry is limited instead to whether the Board has made a clear error of judgment." *Falk v. Secretary of the Army*, 870 F.2d 941, 944–45 (2d Cir. 1989). Judicial review of administrative decisions in the military context is "especially confined . . . to ensure that the courts do not become a forum for appeals by every soldier dissatisfied with his or her ratings, a result that would destabilize military command and take the judiciary far afield of its area of competence." *Davis v. Harvey*, No. 04-CV-1051, 2006 WL 2794318, at *13 (E.D.N.Y. Sept. 27, 2006) (citing *Cone v. Caldera*, 223 F.3d 789, 793 (D.C. Cir. 2000)).

# ARGUMENT

## A. The Court Lacks Jurisdiction

The Court lacks jurisdiction to adjudicate Major Brezler's APA claim challenging the Assistant Secretary's decision. *Dibble v. Fenimore*, 339 F.3d 120, 127-28 (2d Cir. 2003); *Guitard v. Sec'y of Navy*, 967 F.2d 737, 740 (2d Cir. 1992); *Kreis*, 866 F.2d at 1510. Challenges to military personnel decisions are generally nonjusticiable under the intramilitary immunity doctrine. Courts have recognized, however, a narrow exception to the general presumption in favor of nonjusticiability; servicemembers may seek judicial review in federal court based on a facial constitutional challenge to military regulations or the service's failure to comply with its own mandatory guidelines. The Second Circuit has held, however, that administrative exhaustion is required before bringing a claim based on failure to follow regulations. Finally, the Supreme Court and Second Circuit have recognized that notwithstanding the general presumption of nonjusticiability, a servicemember may seek judicial review under the APA of an adverse decision by the service's civilian review board.

Here, the Court lacks jurisdiction over Major Brezler's challenge to his administrative separation. To the extent that Major Brezler's claim requires the court makes an individualized inquiry into a discrete personnel action, any such claim is nonjusticiable. Furthermore, even if Major Brezler's claim were limited to a challenge based on the Navy's alleged failure to follow its own regulations, Major Brezler must first exhaust his administrative remedies, which he has not done. Finally, although courts may review a decision by a civilian review board under the APA, Major Brezler has not asserted such a claim here.

### 1. Major Brezler's Claim Is Nonjusticiable

The justiciability of military personnel decisions "is limited by the fundamental and highly salutary principle that: '[J]udges are not given the task of running the Army.'" *Kreis v. Sec'y of Air Force*, 866 F.2d 1508, 1511 (D.C. Cir. 1989) (quoting *Orloff v. Willoughby*, 345 U.S. 83, 93-94 (1953)). Accordingly, "courts will not normally review purely discretionary decisions by military officials which are within their valid jurisdiction." *Jones v. New York State Div. of Military & Naval Affairs*, 166 F.3d 45, 52 (2d Cir. 1999) (quoting *Kurlan v. Callaway*, 510 F.2d 274, 280 (2d Cir. 1974)). The rule of nonjusticiability "is based on the common-sense notion that allowing service members to sue their superiors would unacceptably compromise military discipline and readiness for combat." *Id.*; *see also Kreis*, 866 F.2d at 1511 ("Appellant's request for retroactive promotion falls squarely within the realm of nonjusticiable military personnel decisions. To grant such relief would require us to second-guess the Secretary's decision about how best to allocate military personnel in order to serve the security needs of the Nation.").

More specifically, the Second Circuit has held that claims for equitable relief based on military personnel decisions are generally nonjusticiable. *Dibble*, 339 F.3d at 127-28. In *Dibble*, a member of the Air National Guard who was honorably discharged brought suit, alleging that he was "unlawfully denied re-enlistment in retaliation for his constitutionally and statutorily protected activities as union steward." *Id.* at 122. The Second Circuit held that Dibble's complaint must be dismissed as nonjusticiable under the intramilitary immunity doctrine. *Id.* at 128. The Second Circuit "declin[ed] to adopt a categorical rule on the justiciability of intramilitary suits," but held that equitable challenges to discrete military personnel decisions are non-justiciable to the extent that they require "a particularized inquiry into the mindset of [the

servicemember's] superior officers." *Id.* The Second Circuit found that "[f]or the district court to find that the Guard violated Dibble's constitutional rights by discharging him, it would be forced to make a particularized inquiry into the mindset of his superior officers, determining whether their various disciplinary actions were motivated by proper military concerns or by the unconstitutional desire to stifle Dibble's protected First Amendment activity." *Id.* at 128.[7] "Especially considering the availability of intramilitary review," the Second Circuit declined "to insert the federal courts into military decisionmaking in such an intrusive manner." *Id.* On the other hand, *Dibble* held that courts may "entertain" suits that are "facial challenges to the constitutionality of statutes or military regulations" or "where the military has failed to follow its own mandatory regulations in a manner substantially prejudicing a service member." *Id.* at 122, 127-28; *see also Jones*, 166 F.3d at 52 (recognizing exception to general rule of nonjusticiability "where the military has failed to follow its own mandatory regulations in a manner substantially prejudicing a service member").

Adjudication of Major Brezler's claims would require the Court to make a "particularized inquiry into the mindset" of Major Brezler's superior officers—precisely the sort of inquiry that the Second Circuit has held is barred by the intramilitary immunity doctrine. *Dibble*, 339 F.3d at 128. The SAC alleges that Major Brezler's "most serious threshold challenge to separation is the overwhelming evidence that he was only ordered to a BOI in response to his communications with Congressman King. SAC ¶ 43. The SAC further alleges that the "bad faith and improper motives behind ordering Major Brezler to show cause before a BOI also infected the BOI hearings so much that it ultimately resembled a star chamber and kangaroo court." *Id.* ¶ 76. The

[7] *See also Jones v. 106th Rescue Wing*, 859 F. Supp. 2d 381, 386 (E.D.N.Y. 2012) (dismissing claims based on allegations that military servicemember's supervisor "was motivated by ill will and legally improper motives when transferring plaintiff and denying his requests for promotions" because "[t]he military personnel decisions raise[d] by Plaintiff involve[s] precisely the type of individualized questions that are prohibited from judicial review").

Government not only categorically denies these allegations, but respectfully submits that the Court lacks jurisdiction to review a discrete personnel decision because that review would impermissibly require a "particularized inquiry" into these allegations. Particularly given the availability of intramilitary administrative review, it would be improper for the Court to insert itself "into military decisionmaking" before Major Brezler exhausts his administrative remedies. *Dibble*, 339 F.3d at 128.

**2. A Claim Based on the Navy's Alleged Failure to Follow Regulations Must Be Exhausted**

Even if Major Brezler's claim were limited to a challenge based on the Navy's alleged failure to follow its own mandatory guidelines, the Court likewise lacks jurisdiction over such a claim because Major Brezler has failed to exhaust his administrative remedies. Although the Second Circuit has recognized that federal courts have jurisdiction over claims based on the military's failure to follow its own mandatory regulations," exhaustion of administrative remedies is required before bringing any such claim. *Jones*, 166 F.3d at 52, 54-55. In *Jones*, the Second Circuit held that administrative exhaustion is required for a claim based on the "regulations" exceptions to the nonjusticiability rule. *Jones*, 166 F.3d at 54-55; *see also Guitard*, 967 F.2d at 740 (emphasizing "the particular importance of administrative exhaustion in circumstances implicating military discipline"). In *Jones*, a major in the Army National Guard sought to challenge his removal from service based on the Guard's alleged failure to comply with its regulations. *Id.* at 52. The Second Circuit held that exhaustion of all administrative remedies was a prerequisite to his claim for injunctive relief under Section 1983. *Id.* at 54. The Second Circuit acknowledged that in *Patsy v. Board of Regents,* 457 U.S. 496, 516 (1982), the Supreme Court held that "policy considerations alone cannot justify [a] judicially imposed exhaustion" requirement for 1983 claims where the statute imposes no such requirement, but

held that exhaustion was required notwithstanding *Patsy*. *Id.* at 54. The Second Circuit stated that in requiring exhaustion it was not "crafting an exception to the general rule that § 1983 does not have an exhaustion requirement," but "simply clarify[ing] the contours of the 'regulations' exception to the well established rule" of nonjusticiability. *Id.*; *see also Yarusso v. 106 Rescue Wing, New York Air Nat. Guard*, 511 F. App'x 13, 15 (2d Cir. 2013) (holding exhaustion required before servicemember can challenge military decision based on alleged failure to regulations).

The exhaustion requirement set forth in *Jones* is not changed by the Supreme Court's decision in *Darby v. Cisneros*, 509 U.S. 137 (1993), which (consistent with *Patsy*) held that under the APA courts may not impose an additional exhaustion requirement as a prudential doctrine of judicial administration. As the Second Circuit held in *Jones*, because the exhaustion requirement arises from the contours of the justiciability doctrine, exhaustion is required for any claim based on the military's failure to follow regulations even where the statute under which relief is sought does not require it. *See Jones*, 166 F.3d at 54. Likewise, in *Chappell v. Wallace*, the Supreme Court recognized that exhaustion requirement in the military context arises from "the special relationship" between the military and its personnel. 462 U.S. 296, 301-04 (1983). *Chappell* noted that the civilian review boards are one component of the "comprehensive internal system of justice to regulate military life." 462 U.S. at 302-03. The existence of "two systems of justice . . . : one for civilians and one for military personnel"—a "special and exclusive system of military justice"—is "required" by the military's special status, "contemplated" by the Constitution, "created" by Congress, and "long recognized" by the courts, and therefore precludes judicial interference into intramilitary disputes. *Id.* at 300, 303-04. The *Chappell* Court observed, however, that once a servicemember exhausts his administrative remedies,

civilian review board "decisions are subject to judicial review and can be set aside if they are arbitrary, capricious or not based on substantial evidence." *Id.* at 303; *see also Saad v. Dalton*, 846 F. Supp. 889, 891 (S.D. Cal. 1994).[8]

Finally, the recognized exceptions to the exhaustion requirement have been construed narrowly, and none applies here. The Second Circuit has held that exhaustion "may not be required when: (1) available remedies provide no genuine opportunity for adequate relief; (2) irreparable injury may occur without immediate judicial relief; (3) administrative appeal would be futile; and (4) in certain instances a plaintiff has raised a substantial constitutional question." *Guitard*, 967 F.2d at 741. Applying these factors, the Second Circuit in *Able v. United States* held that exhaustion of a facial constitutional challenge to the "Don't Ask, Don't Tell" policy fell within the irreparable injury and futility exceptions to the exhaustion requirement. 88 F.3d 1280, 1288 (2d Cir. 1996). With respect to the futility requirement, the Second Circuit held that exhaustion would be futile because the agency had no power to declare the statute unconstitutional, noting that the Court's analysis required no fact-finding. *Id.* As a general matter, however, even when petitioner's claim "would likely have failed" in the agency review process, exhaustion is still required because it serves other purposes, including facilitating judicial review by "protecting the authority of administrative agencies, limiting interference in agency affairs, developing the factual record to make judicial review more efficient, and resolving issues to render judicial review unnecessary." *Beharry v. Ashcroft*, 329 F.3d 51, 62 (2d Cir. 2003). For these reasons, exhaustion is excused for futility only when an adverse decision is a certainty or when "available procedures are incompetent to provide adequate redress." *See*

[8] Although *Crane v. Secretary of the Army*, 92 F. Supp. 2d 155 (W.D.N.Y. 2000), held that the exhaustion requirement does not apply post-*Darby*, *Crane* does not even mention *Chappell* or *Jones*, much less consider their rationales, and for that reason alone should be considered unpersuasive by this Court.

*Nat'l Sci. & Tech. Network, Inc. v. F.C.C.*, 397 F.3d 1013, 1014 (D.C. Cir. 2005); *Russo v. Reish*, No. 97 Civ. 3607, 1997 WL 401821, at *2-*3 (S.D.N.Y. July 17, 1997).

Here, to the extent that Major Brezler seeks to challenge his separation on the basis that the Navy allegedly failed to comply with its own guidelines, Major Brezler must first exhaust his administrative remedies by seeking relief before the BCNR. *Jones*, 166 F.3d at 54-55; 10 U.S.C. § 1552. Major Brezler does not bring a facial challenge to the constitutionality or legality of any regulation. *Cf. Able*, 88 F.3d at 1288-89. Major Brezler also has access to process that offers genuine opportunities for adequate relief, and, as set forth below, an adverse decision by the BCNR is subject to judicial review. *Guitard*, 967 F.2d at 741. Finally, judicial interference prior to complete administrative review is particularly inappropriate because the Navy's administrative process is both necessary and competent to determine disputed factual and legal issues. *See Beharry*, 329 F.3d at 62.

**3. Major Brezler Has Not Sought Review of a Civilian Review Board Decision**

Although judicial review of civilian review board decisions under the APA is available, Major Brezler does not seek such relief here, and the fact that he has styled his claim as a challenge to the Assistant Secretary's decision under the APA is not sufficient to confer jurisdiction. Supreme Court and Second Circuit precedent recognizes the availability of judicial review of civilian review board decisions under the APA, but does not suggest a discrete personnel decision that arises outside that procedural context can be reviewed under the APA without consideration of the justiciability doctrine. Consistent with *Chappell*, the Second Circuit has held that notwithstanding the justiciability doctrine federal courts may review fully exhausted decisions of civilian review boards to correct records "under the deferential standard of whether the decisions were arbitrary, capricious, or unsupported by substantial evidence."

*Dibble v. Fenimore*, 545 F.3d 215, 216 (2d Cir. 2008) ("*Dibble II*") (citing *Chappell*, 462 U.S. at 303). The Second Circuit explicitly noted that this decision was based on "ample precedent," which "takes note of the facts that the Board is made up of civilians and that it is authorized, with minor exceptions, only to correct military records" and thus "has limited power and interferes only minimally with the cohesiveness and efficiency of existing military hierarchies and operations." *Id.* at 215-16; *see also Kreis*, 866 F.2d at 1512 (dismissing request for retroactive promotion as nonjusticiable but permitting APA review of claim for correction of military records).

Major Brezler is not at this time seeking review of the decision of a civilian review board to correct military records. *Dibble II* held only that intramilitary immunity did not bar claims seeking review of civilian review board decisions, and did not purport to empower federal courts to review any military personnel decision under the APA before such a claim has been properly exhausted. Allowing such a claim to proceed would be an end-run around the doctrine of justiciability, would constitute a significant interference with military decision-making, and is contrary to Supreme Court and Second Circuit precedent.

**B. Even If the Court Reaches the Merits, the Navy's Separation Decision Should Not Be Set Aside**

Even assuming that this Court could properly exercise jurisdiction over Major Brezler's claims at this stage, there is no basis to set aside the Navy's separation decision. In the limited circumstances where courts review military personnel actions pursuant to the APA, the APA requires that the court provide substantial deference to the military's determination. *Kreis*, 866 F.2d at 1512 (holding that courts require "only that the agency exercise its discretion in a reasoned manner" and defer "to the agency's ultimate substantive decision"). The Administrative Record here does not reflect the type of "clear error of judgment," failure to

consider an important fact, or failure to provide "a satisfactory explanation including a rational connection between the facts found and the choice made" that would be necessary to set aside the Assistant Secretary's decision under the APA. *Karpova*, 497 F.3d at 268; *Falk*, 870 F.2d at 944-45. The extensive record reflects a thorough and careful decision-making process that resulted in a reasoned decision on a question that is legally vested in the military's sound discretion.

**1. The Assistant Secretary's Decision Is Based on Undisputed Evidence of Misconduct Sufficient to Justify Separation**

As the Administrative Record demonstrates, the Assistant Secretary's final decision to separate Major Brezler was made after a thorough consideration of the relevant facts, and the Administrative Record provides an ample explanation for the decision that is rationally based on the facts. As set forth in the Deputy Commandant Endorsement, "[n]ot only was there sufficient evidence to support the Board's findings, but the evidence of Major Brezler's substandard performance and misconduct was enough, by itself, to support the BOI's recommendation that Major Brezler be separated from the Marine Corps." AR 2627. Likewise, the JAG Memo explains that "[t]he record contains sufficient evidence to support the members' overall findings that [Major Brezler] exhibited substandard performance, willful misconduct, and gross negligence by removing classified information from Afghanistan, by storing that information on his personal computer system, and by transmitting that information in an unsecured manner." AR 2591; *see also* AR 1801-02 (SJA Memo). Further, "[t]he NCIS investigation, Preliminary Inquiry, and Major Brezler's own admissions to the board all show that he removed classified information from Afghanistan and stored it on his personal computer. They also show that he emailed a classified brief from his yahoo email account to the unclassified emails of three other individuals." AR 2591; *see also* AR 2692-2704 (Preliminary Inquiry); 2718-2811 (NCIS

Report). Finally, "[t]he board's exercise of discretion in finding that only certain bases were met, while striking or finding no misconduct for others, provides additional evidence that the board members independently reviewed the evidence against Major Brezler, and that they were not improperly biased against him, as they clearly disagreed with some of the recorder's arguments about the evidence of misconduct." AR 2591.

Major Brezler alleges that there was no specific evidence presented at the BOI supporting his separation (as distinct from the evidence of misconduct, which he does not dispute). SAC ¶¶ 87-91. This argument was considered and rejected by the Assistant Secretary. The applicable guidelines do not require the presentation of separate or specific evidence to support separation. AR 2625-27; AR 2591. As explained in the JAG Memo, "[o]nce the board has found that sufficient evidence exists to establish that misconduct was committed, they must make a decision on whether separation is warranted and, if so, what the characterization of discharge should be." AR 2591. "The basis for separation must be proved by preponderance of the evidence. Once one or more basis for separation is met, the board must then determine whether separation is warranted in light of the misconduct and any other evidence presented." AR 2591; *see also* AR 1801-02 (SJA Memo). Accordingly, as the Assistant Secretary concluded, the undisputed evidence of misconduct is sufficient to justify separation. AR 2625-27.

### 2. The Assistant Secretary Considered the Allegations of Retaliation and Improper Influence and Concluded They Were Without Merit

Major Brezler's allegations of retaliation and "improper influence" likewise do no warrant relief here. As a threshold matter, Major Brezler does not allege that the Assistant Secretary, the final decision-maker, directed separation on the basis of any retaliatory motive or bias. Major Brezler likewise does not allege bias on the part of the Deputy Commandant, the Navy Deputy Assistant Judge Advocate General for Administrative Law, or the Navy JAG, each

of whom reviewed the BOI recommendation. Finally, Major Brezler did not challenge any member of the BOI for cause, AR 1837, and in fact testified that he did not believe that the BOI process was unfair. AR 2197 ("Q. Okay. So you have no objection to the convening authority convening this board of inquiry; is that correct? A. No. Judged by the fact that I am sitting here today suggests that I don't object to that process."); AR 2200 ("Q. Do you think anybody in this room is out to get you so to speak? A. No, I don't believe that."). Because the sole focus of review under the APA is final agency action, these facts substantially undermine Major Brezler's claim that the Assistant Secretary's separation decision is arbitrary or capricious. *Sharkey v. Quarantillo*, 541 F.3d 75, 87 (2d Cir. 2008); *Aera Energy LLC v. Salazar*, 691 F. Supp. 2d 25, 34–35 (D.D.C. 2010), *aff'd*, 642 F.3d 212 (D.C. Cir. 2011) (holding that "by referring the case to an unbiased [administrative law judge] for an independent evidentiary hearing, the [agency] severed whatever nexus existed between the improper political pressure and the agency's final decision").

The Assistant Secretary (as well as the Deputy Commandant, General Mills, and the Board itself) considered the same allegations of retaliation and improper influence that Major Brezler raises in this action and concluded they were unfounded. With respect to the allegations of reprisal, Major Brezler's first alleged protected communication occurred on March 22, 2013. SAC ¶ 38. By that time, Major Brezler had already been "suspended from command, relieved from command, and received an adverse fitness report," and accordingly the Assistant Secretary concluded that none of these actions could have been undertaken in reprisal for any protected communication. AR 2599.

Further, the Assistant Secretary reasonably concluded that the "record does not support a finding that the BOI was convened as an act of reprisal." AR 2599. As both the Deputy

Commandant Endorsement and JAG Memo note, the DoD IG conducted a whistleblower reprisal investigation, which investigated the allegation that General Mills referred Major Brezler to a BOI in retaliation for protected communications and included an interview of General Mills. AR 2708-16. In his interview with DoD IG, General Mills "stated he made his decision based on the recommendations of his legal team from the Marine Forces Reserve Staff Judge Advocate (SJA) office, and his own review of the BOI package that included the adverse FITREP and the NCIS investigation report that found that [Major Brezler] retained and spilled classified information." AR 2174. He also stated that "he could not ignore those actions by a field grade officer" and directed Major Brezler to the BOI because "'his . . . judgment regarding his handling of classified information, a judgment that made me question his future value to the United States Marine Corps.'" AR 2714. The DoD IG "found no evidence of retaliatory motive," and noted that Major Brezler's communication to Congressman King "did not reflect badly on Lt Gen Mills." AR 2715. The DoD IG report thus concluded that General Mills "would have taken the unfavorable personnel action against [Major Brezler] absent his protected communications." AR 2707. Furthermore, administrative action was recommended to and considered by Marine Forces Reserve before Major Brezler made any protected communication. AR 2695, 2806-09. Based on these facts and the undisputed evidence of misconduct, the Assistant Secretary rationally and reasonably concluded that "[a]s noted by the DoD IG, which found no reprisal, the evidence adduced in the NCIS investigation and PI supported administrative action against Major Brezler. There is simply no credible evidence that the BOI was convened for an improper purpose." AR 2624-25; *see also* AR 2596-99 (JAG Memo); AR 1800 (SJA Memo).

The Assistant Secretary considered Major Brezler's allegations that General Mills and his staff improperly influenced the BOI and concluded that they were unfounded as well. *See* AR

2593-96; 2620. As the JAG Memo notes, in support of his allegations of improper influence, Major Brezler did "not point to any evidence beyond the fact that the Marine Corps Times article spurred a discussion among senior officers about the facts of the case," and that evidence did not in fact reflect any illegal bias or attempt to improperly influence the BOI. AR 2594. In addition, Major Brezler argued in the administrative proceeding, as he alleges here, that General Mills improperly influenced the BOI proceeding by "discourage[ing] a significant defense witness from providing a statement on Major Brezler's behalf." SAC ¶ 80. As the JAG Memo points out, however, Major Brezler selectively quotes from an email exchange between General Mills and Brigadier General Kennedy and neglects to include that a further communication that reflects that "Brig Gen Kennedy's decision not to write a letter in support of Maj Brezler was not based on improper influence from Lt Gen Mills but, rather, based on Maj Brezler's lack of responsiveness to Brig Gen [Kennedy's] attempts to more clearly understand the facts of the BOI case prior to providing a letter of support." AR 2594-95 (email from Brigadier General Kennedy to General Mills stating "I didn't write for Brezler only because I lacked answers to questions that I posited to him following the email exchange with you. This was based on my reconsideration of the matter [and] not any inference from your response."); *see also* AR 1803 (SJA Memo); AR 1856-57 (legal advisor decision denying motion to dismiss for unlawful command influence).

**3. The Navy Complied With Applicable Regulations**

The Navy has complied with the applicable guidelines, including those governing the creation of the record of the BOI. Major Brezler's claims of procedural errors were considered in the administrative process and found to be without merit. Furthermore, it is well settled that the court must "defer to an agency's interpretation of its own regulation unless that interpretation is plainly erroneous." *Falk*, 870 F.2d at 946.

The transcript of the BOI complies with the applicable procedural requirements. Major Brezler alleges that the Navy did not comply with its regulations regarding the BOI record, and the required verbatim transcript was not created. SAC ¶¶ 92-105. Each of these allegations is wrong. The applicable instruction states that a "transcript shall be in summary form unless a verbatim transcript is directed by the show cause authority." AR 2653. The show cause authority did not order a verbatim transcript, but the Navy provided one nonetheless. AR 2623; 2605. Based on Major Brezler's objection to the initial transcript, a second transcript was prepared by a more experienced court reporter.[9] AR 2605.

Although Major Brezler claims that the second transcript has unspecified errors and therefore is not "verbatim," the Assistant Secretary reasonably concluded that the transcript is "substantially" verbatim. AR 2623. As set forth in the Deputy Commandant Endorsement, "the corrected transcript clearly and accurately sets forth the testimony given at the hearing," and "[t]he omissions in the corrected transcript are neither qualitatively nor quantitatively substantial. Within the three days of testimony and the lengthy transcript, the inaudible portions are relatively few, very brief (a few words, at most), and largely reflect the difficulty of transcribing telephonic testimony." AR 2624.

Furthermore, the transcripts provided are far more complete than the summary transcript required under the applicable guideline. AR 2606. In addition to the revised transcript, the Navy provided to Major Brezler, as a courtesy, complete audio recordings of the BOI proceeding, available audio recordings of the court reporter's stenographic dictation, and available portions of a text file created by the stenographic recording system. AR 2606, 2624 & audio recordings.

[9] While the Navy was in the process of revising the transcript, the Marine Corps updated its regulations and began to require a verbatim transcript, but the updated regulation provided no direction regarding transcript requirements for BOIs that had convened, adjourned, and were pending final action. AR 2605.

The Navy also permitted Major Brezler to supplement the record to the extent that he believed that inaccuracies in the record existed, but Major Brezler did not object to any specific errors or omissions in the second transcript. AR 2606. Finally, to the extent that the Assistant Secretary believed that the transcript was not a sufficient basis to review the record, he could have recommended further fact-finding or decided not to direct separation on that basis. The Assistant Secretary instead determined that the extensive record before him provided a sufficient basis for his decision.

Major Brezler's remaining claims of procedural error likewise do not provide any basis for relief. Major Brezler alleges that the Board failed to consider certain evidence (SAC ¶¶ 81-85) and improperly denied witness and information requests (SAC ¶¶ 138-143), that the Recorder made improper arguments at the BOI (SAC ¶¶ 150-151), and that the Board record was not provided in a timely manner (SAC ¶¶ 94-96). These allegations were specifically considered by the Assistant Secretary and found to be without merit. AR 2626-27 (witness and information requests); AR 2629 (arguments by recorder); 2600-2601 (information requests); 2602-03 (arguments by recorder); 2603-04 (consideration of letter from Director of Intelligence); AR 2624 (time for processing).

**C. Major Brezler's Remaining Claims Should Be Dismissed**

Major Brezler's claims under the general federal question jurisdiction statute, 28 U.S.C. § 1331, and the Declaratory Judgment Act fail as a matter of law. As the Supreme Court held, "[t]he Judicial Code, in vesting jurisdiction in the District Courts, does not create causes of action, but only confers jurisdiction." *Montana-Dakota Util. Co. v. Northwestern Public Service Co.*, 341 U.S. 246, 249 (1951). Furthermore, 28 U.S.C. § 1331 is not a waiver of sovereign immunity. *Royer v. I.N.S.*, 730 F. Supp. 588, 590 (S.D.N.Y. 1990). Likewise, the Declaratory

Judgment Act does not "provide an independent cause of action." *In re Joint E. and S. Dist. Asbestos Litig.*, 14 F.3d 726, 731 (2d Cir. 1993).

Nor does Major Brezler state a claim for mandamus relief pursuant to 28 U.S.C. § 1361. Mandamus is an "extraordinary remedy," *Escaler v. Citizenship and Immigration Servs.*, 582 F.3d 288, 292 (2d Cir. 2009), and jurisdiction exists only where a plaintiff can demonstrate that: "(1) there is a clear right to the relief sought; (2) the Government has a plainly defined and peremptory duty to perform the act in question; and (3) there is no other adequate remedy available." *Benzman v. Whitman*, 523 F.3d 119, 133 (2d Cir. 2008). Here, the SAC does not identify a "clear and indisputable right" to the issuance of a writ of mandamus, any plainly defined and peremptory duty, or the lack of any other remedy.

## CONCLUSION

For the forgoing reasons, the Government's motion should be granted, and judgment should be entered for Defendants.

Dated: New York, New York
August 29, 2016

Respectfully submitted,

LORETTA E. LYNCH
Attorney General of the United States

PREET BHARARA
United States Attorney for the
Southern District of New York

By: */s/ Leigh Wasserstrom*

LEIGH WASSERSTROM
Special Assistant United States Attorney
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel.: (212) 637-3274
leigh.wasserstrom@usdoj.gov