# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

—————————————

№ 14-CV-7424 (JFB)

—————————————

JASON BREZLER,

Plaintiff,

VERSUS

LIEUTENANT GENERAL RICHARD MILLS, UNITED STATES MARINE CORPS, AND
UNITED STATES DEPARTMENT OF THE NAVY,

Defendants.

—————————————

**MEMORANDUM AND ORDER**
December 6, 2016

—————————————

JOSEPH F. BIANCO, District Judge:

This lawsuit arises from a military Board of Inquiry ("BOI") disciplinary proceeding that recommended Major Jason Brezler's dismissal from the United States Marine Corps. Major Brezler ("plaintiff") brings this action against Lieutenant General Richard Mills, the United States Marine Corps, and the United States Department of the Navy (collectively, "the government" or "defendants"), challenging that BOI proceeding under the Administrative Procedure Act ("APA"), 5 U.S.C. § 551, *et seq.*, and pursuant to 28 U.S.C. §§ 1331, 1361, and 2201.[1]

Plaintiff's Second Amended Complaint (ECF No. 45) requests, *inter alia*, that the Court vacate the findings and recommendation of the BOI and permanently enjoin defendants from taking

---

[1] The Navy is the only proper defendant in this case pursuant to 5 U.S.C. § 703, which provides that an APA "action for judicial review may be brought against the United States, the agency by its official title, or the appropriate officer" responsible for the contested agency action. Here, the final agency action at issue is the November 2015 endorsement by the Assistant Secretary of the Navy—acting on behalf of the Secretary of the Navy—approving the BOI's recommendation that plaintiff be discharged. *See Brezler v. Mills*, 86 F. Supp. 3d 208, 217 n.5 (E.D.N.Y. 2015); Defs.' Mot. to Dismiss or for Summ. J. ("Defs.' Br."), ECF No. 56, at 4. Accordingly, the Court lacks subject-matter jurisdiction over defendants Lieutenant General Mills and the United States Marine Corps and will dismiss them from the case. *See* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); *Serotte, Reich & Wilson, LLP v. Montante*, No. 05-CV-284S, 2009 WL 3055294, at *6 (W.D.N.Y. Sept. 21, 2009) (dismissing claim against improper APA defendant).

any adverse personnel action against plaintiff on the basis of the BOI proceeding, his August 30, 2013 referral to the same, or the purported facts underlying the BOI proceeding.

The government has moved to dismiss the complaint or, in the alternative, for summary judgment. Plaintiff has cross-moved for summary judgment. The government claims that dismissal or summary judgment in its favor is warranted on the following grounds: (1) plaintiff's claims are non-justiciable under the intramilitary immunity doctrine; (2) the exception to that doctrine covering challenges to mandatory regulations does not apply because plaintiff failed to exhaust his administrative remedies; (3) the evidence supports the BOI's findings and recommendation, as well as the subsequent endorsement of those findings and recommendation by military and civilian officials; and (4) the Navy abided by all applicable procedural rules.

In addition to arguing that the Navy failed to comply with several mandatory regulations governing the BOI process, plaintiff argues that the BOI itself was the product of unlawful retaliation stemming from a protected communication he made to U.S. Congressman Peter King.

For the reasons set forth herein, the Court denies the government's motion—except that it dismisses defendants Lieutenant General Mills and the United States Marine Corps from this action, *see supra* note 1—and grants plaintiff's motion to the extent that it finds that defendants failed to provide plaintiff with "[f]ull access to, and copies of, records relevant" to the BOI proceeding as required by Secretary of the Navy Instruction ("SECNAVINST") 1920.6C, Enclosure 8, ¶ 6(d) (2005).

Accordingly, the Court vacates the BOI's findings and recommendation and remands to the Secretary of the Navy for further proceedings consistent with this Memorandum and Order, including providing plaintiff with documents that are relevant to his retaliation claims and with a new BOI proceeding during which he can fully and fairly explore those issues and complete the administrative record.

As a threshold matter, discussed in more detail below, the government correctly concedes that the intramilitary immunity doctrine does not bar judicial review under the APA as to whether the Navy failed to abide by its own mandatory regulations, which is the precise issue that the Court explores in the instant case. Moreover, based upon the plain language of the APA and clear Supreme Court jurisprudence construing the APA in *Darby v. Cisneros*, 509 U.S. 137 (1993), this Court holds that plaintiff is not required to exhaust his administrative remedies by appealing the final agency decision dismissing him from the Marine Corps to the Board for Correction of Naval Records before seeking judicial review. Thus, this Court has jurisdiction under the APA to consider whether, as plaintiff contends, the Navy violated its own rules and regulations during the BOI proceeding that led to his dismissal. In addition, although both sides have submitted evidence to the Court outside the administrative record, because this is an APA review, the Court has relied upon only the administrative record in reaching its holding.

With respect to the merits, the Court concludes that the Navy violated its own discovery rule by failing to provide Major Brezler, prior to his BOI hearing or at any stage during the administrative review process, with all documents relevant to his

retaliation claims. Those materials would have been critical to plaintiff's ability to fully and fairly explore whether, among other things, the Navy convened the BOI because of a protected communication he made to Congressman King (which was the subject of an August 25, 2013 story in the *Marine Corps Times*).

For example, in arguing to this Court that there is no evidence of retaliation in the administrative record, the Navy relies heavily on an action memorandum to the Judge Advocate General of the Navy stating that the "legal review" of Major Brezler's case was completed before publication of the *Marine Corps Times* article, and that the BOI "package" was simply "held for Lieutenant General Mills to take action upon once he assumed the position of MARFORRES." (R. at 2579 n.7.)[2] However, that memorandum was not prepared until after Major Brezler's BOI hearing, and no such BOI "package" was produced to Major Brezler in discovery prior to that proceeding, or at any point during the subsequent administrative review. Similarly, there is no support for the Navy's conclusion that it did not have to disclose pre-BOI e-mails or other communications regarding Major Brezler because those materials were irrelevant. For example, if communications prior to the *Marine Corps Times* article indicate that the Navy did not contemplate a BOI, or indicate an affirmative decision not to initiate a BOI, such communications would be highly relevant to Major Brezler's claim that the BOI was retaliatory. To the extent that the government now contends that such documents are immaterial because they do not relate to the conduct that ostensibly led to the BOI and plaintiff's separation— namely, Major Brezler's mishandling of classified materials—the Court finds that argument unpersuasive based on its review of the administrative record, and inconsistent with the government's prior position in this litigation. Plaintiff raised claims of retaliatory motive and improper influence during the BOI proceeding and at each level of subsequent review, and the Navy clearly considered those claims at every stage of the administrative process. Indeed, the government has never argued in the instant action that plaintiff's retaliation arguments were irrelevant to the BOI, but rather has repeatedly asserted that the Navy carefully examined and rejected those claims throughout the administrative review.

In short, this Court finds that Major Brezler lacked the relevant documents necessary to fully and fairly litigate his retaliation claims, and that the Navy's failure to provide those materials violated its own discovery rule under the particular circumstances of this case. The Court emphasizes that, in reaching this holding, it has not concluded that the BOI was in fact retaliatory, or that the final agency action separating plaintiff from the Marine Corps was arbitrary and capricious. Instead, the Court holds that the Navy's regulatory infraction clearly prevented Major Brezler from fully and fairly litigating his retaliation claims during the administrative process, and potentially deprived decision-makers within the Marine Corps and the Department of the Navy of critical information relevant to their assessment of those claims, which they rejected based upon an incomplete record.

Finally, on the issue of remedy, the Court is cognizant of (and agrees with) the Supreme Court and Second Circuit's admonitions that federal courts avoid unreasonably interfering with the military mission by probing the subjective intent of

---

[2] "R." is a citation to the Administrative Record annexed to the Declaration of Tian Gao, ECF No. 62.

military personnel decisions. However, as discussed below, both the Supreme Court and the Second Circuit have recognized that such deference is not limitless. In the instant case, given that the Court's conclusion is limited to the Navy's violation of its own discovery rule, and there is insufficient evidence that such failure was in bad faith, the Court declines Major Brezler's invitation to engage in an unwarranted intrusion into the Navy's administrative process by ordering district court discovery and conducting an evidentiary hearing regarding his retaliation claims. The Court further rejects plaintiff's request to permanently enjoin the Navy from taking any further disciplinary action based upon his misconduct.

Instead, it is clear to the Court that the proper remedy, under the particular circumstances of this case, is to remand this matter to the Department of the Navy so that Major Brezler may obtain relevant discovery on his retaliation claims as required by Navy regulations. The Navy must then provide Major Brezler with a new BOI hearing so that he may fully and fairly present relevant evidence on those issues. Of course, following remand, plaintiff could again contest any final agency decision before this Court pursuant to the APA.

## I. BACKGROUND

### A. REGULATORY FRAMEWORK

Because this lawsuit challenges the manner in which the Navy conducted Major Brezler's disciplinary proceeding, a brief discussion of the relevant administrative framework is necessary.

Applicable are three sections of the United States Code, Title Ten, governing the involuntary separation of officers from the armed forces: 10 U.S.C. §§ 1181, 1182 and 14903. Together, Sections 1182 and 14903 provide that the "military department concerned" (here, the Navy) must convene a "board of inquiry" to receive evidence in the case of any officer who has been required to show cause why he should not be separated. Section 14903 requires the BOI to make a recommendation to the Secretary of the Navy, who reviews the recommendation and decides whether to remove the officer or close the case.

Section 1181 confers on the Navy the authority to establish its own specific procedures for implementing the BOI process. The primary Navy regulations that govern separation proceedings are SECNAVINST 1920.6C, entitled "Administrative Separation of Officers," and Marine Corps Order ("MCO") P5800.16A, entitled "Marine Corps Manual for Legal Administration."

Under these Navy regulations, separation proceedings for Marines occur in the following manner. First, the Show Cause Authority[3] notifies the officer that he must appear before a BOI. The BOI conducts a live hearing and receives testimony from witnesses. Based upon the record developed at the hearing, the BOI makes a recommendation as to whether the officer should be retained or separated. The Show Cause Authority reviews the record and decides whether to endorse the recommendation. If the recommendation is endorsed, it is reviewed by the Staff Judge Advocate to the Commandant of the Marine Corps. The Staff Judge Advocate then makes a recommendation to the Secretary of the Navy or his designee, who reviews the

---

[3] Pursuant to SECNAVINST 1920.6C, the Show Cause Authority for the Marine Corps is the Deputy Chief of Staff for Manpower and Reserve Affairs, though he may delegate that role to generals and lieutenant generals in command.

record and renders a final determination as to retention or separation.

If the Secretary directs separation, an individual has two avenues for internal administrative appeal by applying to (1) the Board for Correction of Naval Records ("BCNR") to correct errors or to remove injustices from his service record; or (2) the Naval Discharge Review Board ("NDRB") for review and a determination of whether discharge was granted in a proper manner and was fair and equitable based on the regulations existing at the time of the discharge.

B. FACTUAL HISTORY

The following facts are taken from the parties' Rule 56.1 submissions and the underlying administrative record.[4] The government contends that many of the assertions in plaintiff's 56.1 statement constitute "extra-record evidence" because they are drawn from declarations and documents that the Navy did not review as part of the administrative process. (Defs.' Resp. to Pl.'s 56.1, ECF No. 65, at 2).[5] Accordingly, the Court will first summarize those facts that, except where noted, are undisputed by the parties and supported by the administrative record. It will then summarize plaintiff's supplemental

submissions. Finally, the Court will discuss a declaration submitted by the government during the instant litigation providing additional facts outside of the administrative record. The Court emphasizes that, although it provides a summary of the extra-record evidence in this case (and also discusses its implications *infra*), it has not relied upon that evidence in reaching its determination, but rather has based its decision on an independent review of the administrative record.

1. Undisputed Facts Supported by the Administrative Record

a. Security Incident and Investigation

Plaintiff is a reservist in the United States Marine Corps, assigned to the Marine Reserve facility in Garden City, Long Island. *Brezler*, 86 F. Supp. at 213. In 2009, plaintiff deployed to Afghanistan and was stationed at Forward Operating Base ("FOB") Delhi. (Defs.' 56.1, ECF. No. 57, at ¶ 1; R. at 2574.) When plaintiff returned to the United States in 2010, he brought with him a personal laptop computer and an external hard drive. (Defs.' 56.1 at ¶ 2; R. at 2574.) Subsequently, on July 24, 2012, Marine Captain Andrew Terrell contacted plaintiff and asked him to send any information he had concerning an Afghan District Chief of Police named Sarwar Jan to Brian Donlon, another Marine Captain. (Defs.' 56.1 at ¶¶ 3-4; R. at 1521-22, 1525-26.) That same day, plaintiff e-mailed Captain Donlon, from his laptop and through his personal Yahoo e-mail account, a document about Jan containing classification markings. (Defs.' 56.1 at ¶ 5; R. at 1521, 1524-25, 2732.) Captain Donlon responded and noted that the document was marked as classified, and about an hour later, plaintiff reported this "spillage" to his

---

[4] The Court has conducted an independent review of the administrative record as is required in an APA proceeding. *See Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001). Nevertheless, the Court finds the parties' 56.1 Statements to be helpful in summarizing the factual history of this case.

[5] As discussed *infra* Part II.C, a court reviewing an agency action is generally confined to the administrative record, but it may consider extra-record evidence when there has been a "strong showing . . . of a claim of bad faith or improper behavior" by the agency. *Nat'l Audubon Soc. v. Hoffman*, 132 F.3d 7, 14 (2d Cir. 1997).

commanding officer, Lieutenant Colonel Whisnant. (Defs.' 56.1 at ¶¶ 7-9; R. at 1521, 1524-25, 2055, 2171, 2227.)

As a result, the Naval Criminal Investigative Service ("NCIS") began an investigation on August 6, 2012, and the Marine Corps opened a preliminary inquiry on September 11, 2012. (Defs.' 56.1 at ¶¶ 10-11; R. at 2579, 2696, 2719.) The inquiry's report, dated September 16, 2012, determined that "[s]pillage [of classified information] occurred from Major Jason C. Brezler's personal computer; the probability of further compromise is remote and the threat to national security is minimal . . . ." (Defs.' 56.1 at ¶ 12; R. at 2695.) The report also recommended that the "incident be handled administratively." (*Id*.) Its analysis was limited to plaintiff's laptop, and the inquiry did not review the contents of the external hard drive. (R. at 2693-95.)

Pending completion of the NCIS investigation, plaintiff's regimental commanding officer, Colonel Michael LeSavage, suspended plaintiff from command in October 2012.[6] (Defs.' 56.1 at ¶ 13; R. at 1608-10, 2579.) NCIS agents interviewed plaintiff on October 17, 2012, and after waiving his rights to counsel and against self-incrimination, plaintiff acknowledged that he had e-mailed over an unsecure network a document that plaintiff subsequently realized contained classification markings. (Defs.' 56.1 at ¶¶

14-15; R. at 2760-66.) NCIS searched plaintiff's laptop and hard drive, identifying 106 documents marked classified. (Defs.' 56.1 at ¶¶ 20-21; R. at 2787, 2790.)

Following a preliminary NCIS report concluding that plaintiff had maintained and disseminated classified information on an unsecure system, Colonel LeSavage requested in a December 19, 2012 e-mail to Marine General James Hartsell that plaintiff be relieved of his command until NCIS issued a final assessment. (Defs.' 56.1 at ¶ 23; R. at 1608-10.) Colonel LeSavage also said that he would "forward an adverse not observed" fitness report ("FitRep")[7] to General Hartsell, and that he had removed plaintiff's acting battalion commander "from the reporting chain as he is of same grade" as plaintiff. (R. at 1608-09.) In addition, Colonel LaSavage said that NCIS had indicated that plaintiff would unlikely receive a renewed security clearance, and that "[w]hether charges are referred or there is a BOI as a next step is for [the Marine Forces Reserve Staff Judge Advocate] to determine." (*Id*. at 1609.) General Hartsell forwarded that message to General Steven Hummer, then-Commander of the Marine Forces Reserve, who concurred with the request; accordingly, plaintiff was relieved of command and assigned to the Inactive Ready Reserve ("IRR"). (Defs.' 56.1 at ¶¶ 24-25; R. at 1608, 2805.)

In March 2013, Colonel LeSavage submitted an adverse FitRep stating that

---

[6] Plaintiff asserts that "[n]o October 2012 letter from Colonel LeSavage to Major Brezler suspending him from command exists." (Pl.'s Resp. to Defs.' 56.1, ECF No. 66-1, at ¶ 13.) Indeed, the administrative record does not contain a formal written notice from Colonel LeSavage to plaintiff, despite a December 2012 e-mail from Colonel LeSavage to a superior officer stating that plaintiff's "command duties have been suspended since Oct in light of NCIS investigation," and noting that a letter of suspension was signed and disseminated on October 17, 2012. (R. at 1608-10.)

[7] FitReps "provide[] the primary means for evaluating a Marine's performance to support the Commandant's efforts to select the best qualified personnel for promotion, augmentation, retention, resident schooling, command, and duty assignments." MCO P1610.7F, Ch. 2, ¶ 3(a)(2) (2010). They are prepared annually or on other specified occasions. *Id*. at Ch. 3; *see also United States v. Mitchell*, 37 M.J. 903, 905 (N-M. C.M.R. 1993), *aff'd*, 39 M.J. 131 (C.M.A. 1994).

plaintiff had been relieved of his command "due to loss of trust and confidence," and that plaintiff's security clearance had expired and was pending "further action." (Defs.' 56.1 at ¶¶ 30-33; R. at 597-99.) As Colonel LeSavage had indicated in his December 2012 e-mail to General Hartsell, although plaintiff's acting battalion commander would normally have conducted the FitRep, Colonel LeSavage authored the report on the grounds that the commander held the same rank as plaintiff. (Defs.' 56.1 at ¶ 31; R. at 598, 1608-09.) Plaintiff protested Colonel LeSavage's involvement, submitting an addendum to the FitRep contending that "Col LeSavage arbitrarily re-designated himself" as the reviewing officer, and that he had told plaintiff in December 2012 that "although [plaintiff] 'had done some good things for the Corps' . . . [plaintiff] was 'done.'" (Defs.' 56.1 at ¶ 33; R. at 599.)

NCIS completed its investigation of plaintiff at the beginning of 2013. (Defs.' 56.1 at ¶¶ 26-29; R. at 2579, 2786-89, 2805-10.) In an interim report dated January 7, 2013, NCIS stated that "[a]ll investigative activity is complete. Investigation now pending administrative or judicial action." (R. at 2787.) Similarly, an April 16, 2013 report, which stated that the investigation was now closed, concluded that "[a]ny further administrative action is pending the outcome of the Department of Defense" review of plaintiff's security clearance, and that the Marine Corps had determined not to charge plaintiff with criminal violations. (Defs.' 56.1 at ¶¶ 26-29; R. at 2808-09.)

b. BOI and Inspector General Report

On March 22, 2013, plaintiff spoke with U.S. Congressman Peter King and asserted that the FitRep was procedurally improper;

as a result, Congressman King sent a July 11, 2013 letter to Marine Commandant General James Amos expressing his concerns about the FitRep process. (Defs.' 56.1 at ¶¶ 34, 38; R. at 1364.) The *Marine Corps Times* subsequently published an article on August 25, 2013 describing plaintiff's challenge to the FitRep and Congressman King's intercession. (Defs.' 56.1 at ¶¶ 36-38; R. at 1364-66.)

That article precipitated a whirlwind of e-mails among high-ranking Marine Corps officials. The following day, Commandant Amos forwarded it to several other officers and asked for the "ground truth" about the facts therein. (Defs.' 56.1 at ¶ 39; R. at 1692, 1698.) General Richard Mills, who subsequently assumed command of the Marine Forces Reserve on August 28, 2013, responded that he would "get more detail." (Defs.' 56.1 at ¶¶ 39, 41-42; R. at 1691, 1367.) On August 30, 2013, General Mills—the Show Cause Authority—notified plaintiff that he was convening a BOI to determine whether plaintiff should remain in the Marine Corps. (Defs.' 56.1 at ¶ 45; R. at 4-5.)

The BOI convened from December 17 through December 19, 2013. (Defs.' 56.1 at ¶ 48; R. at 1819.) Although plaintiff declined to challenge the impartiality of any of the BOI's three members (Defs.' 56.1 at ¶¶ 52, 55; R. at 1837), he did file a motion to dismiss the proceeding because of, *inter alia*, a "conflict of interest and unlawful command influence" and "selective prosecution" (Defs.' 56.1 at ¶ 53; R. at 2813-46). Following oral argument by plaintiff's counsel, the BOI Legal Advisor denied the motion on all grounds, determining that the BOI was not the product of undue political pressure, and that there was insufficient evidence that the Navy handled plaintiff's spillage differently

vis-à-vis similar security lapses. (Defs.' 56.1 at ¶ 54; R. at 1839-57.)

During the proceeding, plaintiff admitted to mishandling classified information, which he characterized as an "absolute poor decision on [his] part." (Defs.' 56.1 at ¶¶ 60-61; R. at 2208-09, 2212-13.) In his defense, plaintiff adduced character statements from more than 60 individuals, as well as live testimony from several witnesses. (Defs.' 56.1 at ¶ 62; R. at 907-1062, 1873, 2010-2153.) On a unanimous vote, the BOI recommended that plaintiff be separated and honorably discharged from the Marine Corps after finding, by a preponderance of the evidence, that plaintiff had demonstrated substandard performance of duty and committed acts of misconduct or dereliction by violating four of the six Uniform Code of Military Justice provisions asserted as bases for his separation. (Defs.' 56.1 at ¶¶ 63-64; R. at 1064-67, 2273-75.)

On August 29, 2013, one day prior to issuance of the BOI order to show cause, plaintiff filed a separate complaint with the Department of Defense Inspector General ("IG"). (Defs.' 56.1 at ¶ 46; R. at 2707-17.) The complaint alleged that the Marine Corps and several Marine officers had retaliated against plaintiff for his protected communication to Congressman King by, *inter alia*, issuing the adverse FitRep and relieving plaintiff from command, and the subsequent investigation also considered whether the BOI proceeding constituted an unlawful retaliation. (Defs.' 56.1 at ¶ 66; R. at 2707.)

The final IG report, dated November 4, 2014, found that plaintiff's retaliation allegations were unsubstantiated. (Defs.' 56.1 at ¶¶ 66-70; R. at 2707.) The IG determined that, although General Mills was likely aware of plaintiff's March 22, 2013

protected communication with Congressman King prior to convening the BOI on August 30, 2013—though he told the IG otherwise—General Mills "would have taken the personnel action [i.e., convening the BOI] against [plaintiff] absent his protected communication," and that there was "no evidence of retaliatory motive on the part of LtGen Mills when he directed [plaintiff] to the BOI." (Defs.' 56.1 at ¶¶ 69-70; R. at 2713-15.)

c. Post-BOI Review

After completion of the BOI process, plaintiff submitted a November 2014 "letter of deficiencies" alleging that: (1) unlawful command influence fatally infected the BOI process; (2) the Marine Corps failed to prove its charges against plaintiff; (3) the conduct of the BOI violated plaintiff's due process rights; and (4) the transcript of the BOI proceedings was of poor quality and did not enable adequate review. (Defs.' 56.1 at ¶ 71; R. at 1252-1352.) In response, the Staff Judge Advocate to the Commandant of the Marine Corps ("SJA"), Colonel Eric Kleis, prepared a December 5, 2014 memorandum determining that there was "no substantive legal basis to grant relief" as a result of those purported errors, and General Mills endorsed the BOI's honorable discharge recommendation on December 11, 2014. (Defs.' 56.1 at ¶¶ 72-73; R. at 1800-07, 1073-74.)

As a result of plaintiff's challenge to the BOI transcript, the Navy provided a revised version on December 30, 2014, and the next day, General Mills again accepted the BOI's recommendation notwithstanding the edits to the transcript. (Defs.' 56.1 at ¶¶ 74, 77; R. at 1816, 1818-2276.) The Marine Corps also furnished an audio recording of the proceeding to plaintiff. (Defs.' 56.1 at ¶ 78; R. at 2606, 2624.) In addition, the Navy

subsequently prepared a second transcript that it deemed to be a "substantially verbatim" record of the BOI proceeding. (Defs.' 56.1 at ¶¶ 75-76; R. at 2605-06.)

Although plaintiff again objected to the BOI on February 2, 2015 (Defs.' 56.1 at ¶ 80; R. at 2278-85), the Deputy Commandant of the Marine Corps endorsed the panel's recommendation on August 4, 2015, rejecting plaintiff's procedural and substantive challenges (Defs.' 56.1 at ¶¶ 81-87; R. at 2615-31). The Navy Deputy Assistant Judge Advocate General for Administrative Law then prepared an October 23, 2015 memorandum discussing plaintiff's various claims and concluding that the "record does not support a finding that the BOI was convened as an act of reprisal," and that there was sufficient evidence to support the BOI's separation recommendation. (Defs.' 56.1 at ¶¶ 89-101; R. at 2573-2607.) The memo also found that the BOI transcript was "legally unobjectionable," and that the relevant regulation in force at the time of the proceeding did not require a verbatim record to be made unless the Convening Authority so requested, though the Navy subsequently modified the regulation to mandate a verbatim transcript in all circumstances. (Defs.' 56.1 at ¶ 76; R. at 2605-06.)

On November 24, 2015, the Assistant Secretary of the Navy for Manpower and Reserve Affairs approved the BOI's recommendation of separation with honorable discharge. (Defs.' 56.1 at ¶ 102; R. at 2631.)

2. Additional Evidence Alleged by Plaintiff

In support of his motion for summary judgment, plaintiff submitted declarations and documentary evidence containing testimony and materials not included in the administrative record. These materials allege an orchestrated campaign by senior military and civilian officials to punish plaintiff for alerting Congressman King and others to a cover-up concerning the deaths of several Marines in Afghanistan. The government has entered a general objection to consideration of extra-record evidence, and the Court notes the government's challenges to specific factual allegations below.

a. FOB Delhi Attack and Aftermath

Plaintiff contends, and the government concedes, that an Afghan national murdered Marines Lance Corporal Gregory T. Buckley, Jr., Corporal Richard A. Rivera, and Staff Sergeant Scott E. Dickenson on August 10, 2012 at FOB Delhi. (Pl.'s 56.1, ECF No. 61, at ¶ 2; Brezler Decl. at ¶ 15.[8]) The national was a child sex slave kept by Sarwar Jan, whom plaintiff and his fellow Marines had previously expelled from Marine-controlled territory for criminal activity. (Pl.'s 56.1 at ¶ 3; Brezler Decl. at ¶ 12.) After ousting Jan, plaintiff helped prepare a memorandum documenting Jan's malfeasance so that the Marine Corps would not reassign Jan elsewhere. (Pl.'s 56.1 at ¶ 4; Brezler Decl. at ¶ 12.) That memorandum is the document marked classified that plaintiff sent from his laptop computer on July 24, 2012, a few weeks before Jan's sex slave killed the Marines at FOB Delhi. (Pl.'s 56.1 at ¶ 8; Brezler Decl. at ¶ 13.) Plaintiff asserts that he sent that memorandum because he believed it was unclassified and that Jan was an urgent threat. (Pl.'s 56.1 at ¶ 8; Brezler Decl. at ¶ 13.) He further alleges that the Marine

_____

[8] Citations to the "Brezler Decl." refer to the Declaration of Jason Brezler, annexed as Exhibit 1 to the Declaration of Michael J. Bowe ("Bowe Decl."), ECF No. 60.

Corps failed to take any preventive measures prior to the FOB Delhi attack, and that the Corps neither subsequently investigated the murders, nor punished anyone as a result of the attack. (Pl.'s 56.1 at ¶¶ 12-14; Brezler Decl. at ¶¶ 15-16.)

### b. Suspension and FitRep

In addition, plaintiff contends that his October 2012 suspension and the March 2013 FitRep were the products of bad faith and improper procedure. He asserts that Colonel LeSavage suspended plaintiff from command shortly after learning of an October 2012 letter from Congressman King to the Marine Corps sent on behalf of the Gregory Buckley, Jr.'s surviving family members. (Pl.'s 56.1 at ¶¶ 19-22; Brezler Decl. at ¶¶ 20-21.) As previously noted, plaintiff also claims that he never received any notice, formal or otherwise, about his suspension. (Pl.'s 56.1 at ¶¶ 24-26; Brezler Decl. at ¶ 21.)

Plaintiff further alleges that Colonel LeSavage circumvented military regulations to improperly and covertly author the FitRep. Specifically, plaintiff asserts that: (1) Colonel Whisnant, plaintiff's battalion commander and reporting officer, submitted a FitRep on or about November 20, 2012, and Colonel LeSavage thus prepared the adverse March 2013 FitRep outside of the ordinary reporting timeframe; (2) Colonel LeSavage falsely represented that Colonel Whisnant was "mobilized and deployed" so that Colonel LeSavage could submit the March 2013 FitRep in his stead; (3) Major Jim Schutta, plaintiff's acting battalion commander and reporting officer, should have authored the FitRep if Colonel Whisnant were unavailable; and (4) Colonel LeSavage designated the FitRep as "DC," a classification used for a Marine who has already been disciplined through a judicial or non-judicial proceeding. (Pl.'s 56.1 at ¶¶ 28-39; Brezler Decl. at ¶¶ 22-25; Bowe Decl., Ex. 8.) Moreover, plaintiff claims that, when he learned that Colonel LeSavage was preparing the adverse FitRep, Colonel LeSavage told him that plaintiff was "done" and also threatened Colonel Whisnant if he attempted to interfere. (Pl.'s 56.1 at ¶¶ 40-41; Brezler Decl. at ¶ 26.)

Throughout his submissions, plaintiff repeatedly contends that the Marine Corps officers involved in issuing the FitRep and relieving him from his command, including Colonel LeSavage and General Hartsell, never recommended or requested a BOI prior to the July 2013 King letter. (See, e.g., Pl.'s 56.1 at ¶¶ 50, 55, 63-65; Brezler Decl. at ¶ 3.) Plaintiff claims that, on the contrary, the Marine Corps transferred him from the IRR to the Chemical Biological Incident Response Force ("CBIRF") in March 2013 due to his "needed skills and experience," and Colonel LeSavage did not object. (Pl.'s 56.1 at ¶¶ 66-62;[9] Brezler Decl. at ¶ 73; Bowe Decl., Ex. 27.)

### c. King Correspondence and Response

After the Marine Corps received the July 13, 2013 correspondence from Congressman King inquiring about the FitRep, plaintiff contends that the Marine Corps prepared a draft response that included a statement from Colonel Whisnant attesting that the FitRep was procedurally improper because regulations required that Major Schutta prepare the report in Colonel Whisnant's absence. (Pl.'s 56.1 at ¶¶ 65-69; Brezler Decl. at ¶ 73; Bowe Decl., Ex. 8.) Plaintiff further asserts that this response was never provided to Congressman King, and that the

---

[9] Plaintiff's 56.1 Statement is replete with incorrectly marked paragraph numbers. The Court cites to the paragraphs as they are numbered therein.

Marine Corps placed him on a "hard hold" in mid-August 2013. (Pl.'s 56.1 at ¶¶ 70, 91-93.)

Following publication of the August 25, 2013 story in the *Marine Corps Times*, plaintiff contends that high-ranking Marine officers took a sudden interest in his case, as reflected in August 26, 2013 correspondence noting "several calls from [Generals] with multiple stars," such as Commandant Amos and Generals Hartsell and Mills. (Pl.'s 56.1 at ¶¶ 72-110; Bowe Decl., Exs. 11, 13, 14, 15, 17.) Plaintiff further alleges that one of those e-mails providing the "ground truth" sought by Commandant Amos said that "Major Brezler is now trying to 'work' the system to have the Fitrep removed." (Pl.'s 56.1 at ¶ 111; Bowe Decl., Ex. 12.)

Again, plaintiff contends that none of those e-mails indicates that a BOI was contemplated or forthcoming. (*See, e.g.*, Pl.'s 56.1 at ¶ 114.) In addition, plaintiff asserts that an internal August 26, 2013 e-mail summary of his case prepared by the Marine Corps Inspector General misstated several facts, including that NCIS had reported plaintiff to the U.S. Attorney's Office in the "2d Cir." for violation of federal statutes. (Pl.'s 56.1 at ¶¶ 115-25; R. at 1696-98.) Plaintiff further contends that "General Mills and/or his staff and General Hartsell and/or his staff had not discussed directing Major Brezler to show cause before August 25, 2013," and that the government has failed to release documents related to the BOI and the August 26, 2013 Inspector General report in response to requests filed under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, *et seq*. (Pl.'s 56.1 at ¶¶ 142-45, 150.)

d. BOI Process

With respect to the BOI itself, plaintiff argues that retaliation and selective punishment infected the process. He asserts that e-mail correspondence shows that military public relations officials used media leaks to shape public perception of plaintiff's case, and that his "referral to a BOI for so-called 'spillage' of classified information in a 'cross-domain' violation was the first such referral of a Marine Reservist to a BOI for this reason during the entire span of the 'War on Terror.'" (Pl.'s 56.1 at ¶¶ 164-65, 167, 189-91; Brezler Decl. at ¶ 36; Bowe Decl., Exs. 23-24; *see also* Pl.'s 56.1 at ¶¶ 168-82.) Moreover, plaintiff claims that the government failed to apprise him of some of the bases for the administrative proceeding, and that SJA Colonel Kleis pressured plaintiff's BOI counsel to "take it easy" during the hearing. (Pl.'s 56.1 at ¶¶ 183-88; Bowe Decl., Ex. 28 ("Carroll Decl."), at ¶ 7.)

In addition, plaintiff contends that the government impeded his defense and review of the BOI decision by: (1) dissuading Brigadier General Paul Kennedy from submitting a letter supporting plaintiff; (2) denying document requests; (3) denying requests for witness testimony; (4) failing to include plaintiff's pre-hearing motions to dismiss and change venue in the Administrative Record; (5) preventing defense counsel from copying the September 16, 2012 inquiry report; and (6) failing to provide a verbatim transcript of the BOI proceeding within 30 days of the proceeding's conclusion. (Pl.'s 56.1 at ¶¶ 192-219.) Regarding the transcript, plaintiff alleges that the original version contained "1,548 missing portions designated 'inaudible,'" and that the subsequently produced corrected transcripts

still contained unacceptable errors. (Pl.'s 56.1 at ¶¶ 228-30; Brezler Decl. at ¶ 55; Bowe Decl., Ex. 3.)

In support of these procedural and substantive challenges, plaintiff submits the affidavit of Gary Benthal, a former Staff Judge Advocate in the Marine Corps. ("Benthal Decl.," annexed as Bowe Decl., Ex. 4.) Mr. Benthal states, *inter alia*, that the timing of the BOI proceeding was

> extremely unusual [because] after Major Brezler had already had adverse administrative actions taken against him, including the command's reversal of the adverse administrative action placing him in the IRR [by transferring him to the CBIRF], [] he was not notified of a Board of Inquiry until approximately a year after the investigation in his case was completed and administrative action had already been taken against him.

(Benthal Decl. at ¶ 28.) Based on Mr. Benthal's review of the case and his "education, training and experience it is [Mr. Benthal's] opinion that Major Brezler's command did not have the intent to recommend him for a Board of Inquiry prior to defective Notification being served on him nearly one year later on 30 August 2013." (*Id*. at ¶ 31.)

### 3. The Government's Supplemental Submission

The Court held oral argument on the parties' cross-motions on October 14, 2016 and afforded the government time to voluntarily provide plaintiff with additional discovery if it chose to do so. (*See* ECF No. 72.) In response, the government filed a letter on November 8, 2016 attaching a declaration prepared by Colonel Eric Kleis—the Marine Corps SJA at the time of plaintiff's BOI proceeding—with an accompanying exhibit. ("Kleis Decl.," ECF No. 78.) That declaration states that Colonel Kleis became aware of the NCIS investigation concerning plaintiff in or about September 2012. (Kleis Decl. at ¶ 3.) According to Colonel Kleis, in February 2013, NCIS provided him with information indicating that plaintiff had mishandled more than 100 documents marked classified, and Colonel Kleis concluded at or about that time that he would recommend that a show cause order be issued. (*Id*. at ¶ 6.) Colonel Kleis did not immediately provide that recommendation because he was waiting for NCIS to officially close its investigation, and for the Department of the Navy Central Adjudication Facility ("DONCAF")[10] to complete a review of plaintiff's security clearance. (*Id*. at ¶ 7.) Colonel Kleis believed that DONCAF would decide to revoke plaintiff's security clearance, and that such a decision would provide additional grounds for a BOI proceeding and for the BOI to ultimately recommend plaintiff's separation from the Marine Corps. (*Id*. at ¶ 8.)

NCIS terminated its inquiry in April 2013, and from that time through August 20, 2013, Colonel Kleis believed that the DONCAF review was underway, which is partially why he refrained from formally recommending that plaintiff face a BOI. (*Id*. at ¶ 9.) In addition, General Hummer stepped down from command of the Marine Forces Reserve in June 2013, which meant that there was no Show Cause Authority who could convene a BOI. (*Id*. at ¶¶ 9-10.) Although Colonel Kleis explored whether another Marine officer could issue a show cause order before Hummer's successor—

---

[10] As noted below, plaintiff refers to this entity as "DODCAF."

General Mills—took command, Colonel Kleis decided to wait for General Mills to assume that role. (*Id*. at ¶ 10.) Despite an August 2, 2013 inquiry from a Marine Forces Reserve security manager, DONCAF did not provide an update on its review prior to August 21, 2013, when Colonel Kleis first learned of Congressman King's letter to Commandant Amos. (*Id*. at ¶¶ 12-13.) Colonel Kleis reviewed the Marine Corps' response to Congressman King and discovered that DONCAF had already decided not to take any action on plaintiff's security clearance because it had previously expired. (*Id*. at ¶ 14.)

After General Mills assumed command of the Marine Forces Reserve on August 28, 2013, Colonel Kleis briefed him on plaintiff's case two days later, on August 30, 2013, the day General Mills issued the show cause order. (*Id*. at ¶ 15.) Colonel Kleis presented General Mills with a BOI "package" consisting of the NCIS investigation report, the adverse FitRep, and a Joint Personnel Adjudication System ("JPAS") security report dated that same day. (*Id*. at ¶ 16.) In addition, Colonel Kleis gave General Mills a draft show cause order and orally recommended that General Mills order plaintiff to show cause for retention. (*Id*. at ¶¶ 16-18.) Colonel Kleis states in his declaration that his customary practice at that time was to provide a written recommendation only in rare circumstances, and that he advised General Mills of various alternatives to a BOI, including a court-martial proceeding. (*Id*. at ¶¶ 17-18.) Colonel Kleis states that he and General Mills did not discuss Congressman King's letter or the *Marine Corps Times* article, and that at the end of their meeting, General Mills signed the show cause order Colonel Kleis had prepared. (*Id*. at ¶¶ 18-19.) Colonel Kleis did not retain a copy of the composite BOI package because the relevant

records systems or files contained the constituent documents. (*Id*. at ¶ 20.) However, while preparing his declaration, Colonel Kleis located an August 20, 2013 document from an internal tracking system, the Officer Disciplinary Notebook ("ODN"), used to monitor Marine officer disciplinary proceedings, and he attached a redacted copy to his declaration. (*Id*. at ¶ 21; ECF No. 78 at 11-26.) The ODN entry regarding plaintiff reflects, *inter alia*, that: (1) NCIS completed its investigation of plaintiff on February 20, 2013, and that plaintiff's command requested a DONCAF security clearance review; (2) DONCAF began collecting information on March 20, 2013, and that its review was still pending as of April 20, 2013, May 20, 2013, June 20, 2013, and July 20, 2013; and (3) a Marine Forces Reserve security manager inquired on August 2, 2013 as to the status of the DONCAF inquiry, but had not received a response as of August 20, 2013. (ECF No. 78 at 15.)

4. Plaintiff's Response to the Government's Supplemental Submission

On November 10, 2016, plaintiff submitted a letter and declaration in response to the government's November 8, 2016 supplemental submission. (ECF Nos. 80-81.) In that filing, plaintiff raises a number of arguments, including claims regarding Colonel Kleis's credibility and how the lack of relevant discovery has prejudiced plaintiff. (*See* ECF No. 81 at 3-4 ("In sum, offered the opportunity to supplement the record with exculpatory evidence, the Marine Corps could only muster a self-serving, uncorroborated declaration that confirms, not debunks, Plaintiff's proof of illegal retaliation. In the face of the existing record, and Defendants' failure to produce substantial credible

exculpatory evidence, the Court should vacate the BOI proceeding below in its entirety.")) Plaintiff's declaration also states the following: "In December 2012, I was informed that DODCAF had reported that because my security clearance had expired during the NCIS investigation, they would not consider revocation and would only consider renewing my expired clearance if and when I joined a unit and billet in which it was necessary to have a clearance." (ECF No. 81 at ¶ 1.) Thus, plaintiff contests the accuracy of Colonel Kleis's belief that plaintiff's security clearance review was pending until August 2013.

## C. PROCEDURAL HISTORY

On December 22, 2014, plaintiff sought a temporary restraining order from this Court prohibiting defendants from acting upon the BOI's recommendation. (ECF No. 4.) That same day, the Court held a hearing and denied plaintiff's request for a temporary restraining order, but ordered defendants to respond to the request for a preliminary injunction. (ECF Nos. 8-9.)

On February 18, 2015, the Court issued a memorandum and order denying plaintiff's motion for a preliminary injunction without prejudice, finding that the Court lacked jurisdiction to enjoin the disciplinary proceedings under the APA because the BOI's recommendation was not a final agency action absent approval by the Secretary of the Navy. *Brezler*, 86 F. Supp. 3d at 220. The Court further found that it lacked jurisdiction on due process grounds because plaintiff had failed to exhaust administrative remedies and because such claims were not ripe. *Id*. The Court granted plaintiff leave to file an amended complaint, which he did on April 6, 2015. (ECF No. 21.)

On July 1, 2015, defendants filed a motion to dismiss the First Amended Complaint. (ECF No. 28.) Following oral argument on September 21, 2015, the Court granted the motion on March 17, 2016, but gave plaintiff leave to file another amended complaint because of the Assistant Secretary's post-argument endorsement of the BOI recommendation. (ECF No. 41.)

Plaintiff filed his Second Amended Complaint on April 25, 2016. (ECF No. 45.) The government moved to dismiss or for summary judgment on August 29, 2016 (ECF No. 55), and plaintiff cross-moved for summary judgment the following day (ECF No. 58). The Court held oral argument on October 14, 2016, and both sides filed post-argument supplemental submissions. The Court has thoroughly considered the submissions of both sides.

## II. STANDARD OF REVIEW

## A. ADMINISTRATIVE PROCEDURE ACT

Plaintiff challenges the BOI's recommendation under the Administrative Procedure Act, 5 U.S.C. § 551, *et seq*. Section 706(2) of the APA provides that a reviewing court shall "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law . . . ." 5 U.S.C. § 706(2)(B). Additionally, Section 706(1) provides that a federal court "shall . . . compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1).

"The scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto.*

*Ins. Co.,* 463 U.S. 29, 43 (1983). "Nevertheless, the agency must examine the relevant data and articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *Id.* (quoting *Burlington Truck Lines v. United States,* 371 U.S. 156, 168 (1962)). Accordingly, an agency action is arbitrary and capricious where "the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Id.* at 42.

## B. DISMISSAL

To defeat a motion to dismiss brought under Rule 12(b)(1), "[t]he plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Aurecchione v. Schoolman Transp. Sys., Inc.,* 426 F.3d 635, 638 (2d Cir. 2005). In resolving this issue, the court "must accept as true all material factual allegations in the complaint, but [it is] not to draw inferences from the complaint favorable to plaintiffs." *J.S. ex rel. N.S. v. Attica Cent. Schs.,* 386 F.3d 107, 110 (2d Cir. 2004). Additionally, the court "may refer to evidence outside the pleadings" to resolve the jurisdictional issue. *Makarova v. United States,* 201 F.3d 110, 113 (2d Cir. 2000) (citing *Kamen v. Am. Tel. & Tel. Co.,* 791 F.2d 1006, 1011 (2d Cir. 1986)).

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept the factual allegations set forth in the Second Amended Complaint as true and draw all reasonable inferences in favor of plaintiff. *See Operating Local 649 Annuity*

*Trust Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 91 (2d Cir. 2010). "In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must allege a plausible set of facts sufficient 'to raise a right to relief above the speculative level.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). This standard does not require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

The Supreme Court clarified the appropriate pleading standard in *Ashcroft v. Iqbal*, setting forth two principles for a district court to follow in deciding a motion to dismiss. 556 U.S. 662 (2009). First, district courts must "identify[] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* Second, if a complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

## C. SUMMARY JUDGMENT

The standard for summary judgment is well-settled. Pursuant to Federal Rule of Civil Procedure 56(a), a court may grant a motion for summary judgment only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Gonzalez v. City of Schenectady*, 728 F.3d 149, 154 (2d Cir. 2013). The moving party bears the burden of showing that he is entitled to summary judgment. *See Huminski v. Corsones*, 396 F.3d 53, 69 (2d

Cir. 2005). Pursuant to Federal Rule of Civil Procedure 56(c),

> [a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). The court "'is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments.'" *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004) (quoting *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996)); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (summary judgment is unwarranted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Once the moving party has met its burden, the opposing party "'must do more than simply show that there is some metaphysical doubt as to the material facts . . . . . [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*.'" *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (alteration and emphasis in original) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). As the Supreme Court stated in *Anderson*, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." 477 U.S. at 249-50 (internal citations omitted). Indeed, "the mere existence of *some* alleged factual dispute between the parties alone will not defeat an otherwise properly supported motion for summary judgment." *Id.* at 247-48 (emphasis in original). Thus, the non-moving party may not rest upon mere conclusory allegations or denials but must set forth "'concrete particulars'" showing that a trial is needed. *R.G. Grp., Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984) (quoting *SEC v. Research Automation Corp.*, 585 F.2d 31, 33 (2d Cir. 1978)). Accordingly, it is insufficient for a party opposing summary judgment "'merely to assert a conclusion without supplying supporting arguments or facts.'" *BellSouth Telecomms., Inc. v. W.R. Grace & Co.-Conn.*, 77 F.3d 603, 615 (2d Cir. 1996) (quoting *Research Automation Corp.*, 585 F.2d at 33).

Where "a party seeks review of agency action under the APA, the district judge sits as an appellate tribunal," and "[t]he entire case on review is a question of law." *Am. Bioscience*, 269 F.3d at 1083. Thus, a summary judgment determination is "generally appropriate" in APA cases because "the question whether an agency's decision is arbitrary and capricious . . . is a legal issue amenable to summary disposition." *Noroozi v. Napolitano*, 905 F. Supp. 2d 535, 541 (S.D.N.Y. 2012) (alteration and citation omitted). "Generally, a court reviewing an agency decision is confined to the administrative record compiled by that agency when it

made the decision." *Hoffman*, 132 F.3d at 14. However,

> extra-record investigation by the reviewing court may be appropriate when there has been a strong showing in support of a claim of bad faith or improper behavior on the part of agency decisionmakers or where the absence of formal administrative findings makes such investigation necessary in order to determine the reasons for the agency's choice.

*Id.* (citing *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 420 (1971), *overruled on other grounds by Califano v. Sanders,* 430 U.S. 99, 105 (1977)). In addition, a court may remand a case to the agency for additional fact-finding when there is insufficient evidence supporting the decision. *Id.*

### III. DISCUSSION

#### A. SUBJECT MATTER JURISDICTION

##### 1. Intramilitary Immunity Doctrine

The government contends that the Court lacks jurisdiction under the APA because the intramilitary immunity doctrine bars plaintiff's claims. Since the government correctly acknowledges that—notwithstanding this general rule—an agency's failure to abide by its own mandatory regulations is not shielded from judicial review (Defs.' Br. at 17), and, for the reasons set forth below, the Court concludes that this exception applies here, the Court will only briefly summarize the doctrine.

In *Feres v. United States*, 340 U.S. 135, 146 (1950), the Supreme Court created an exception to the Federal Tort Claims Act's waiver of sovereign immunity for tort claims against the government if the injuries at issue "arise out of or are in the course of activity incident to [military] service." Since *Feres*, the doctrine of intramilitary immunity has been extended to prevent a variety of claims against superior officers. *See Dibble v. Fenimore*, 339 F.3d 120, 125 (2d Cir. 2003) ("*Dibble I*") (collecting cases). However, the doctrine of intramilitary immunity is not absolute. *See id.* at 128; *Jones v. New York State Div. of Military & Naval Affairs*, 166 F.3d 45, 52 (2d Cir. 1999). Although the Second Circuit has "decline[d] to adopt a categorical rule on the justiciability of intramilitary suits," it has drawn a distinction between challenges to the rules of general applicability as opposed to "particularized inquir[ies] into the mindset of [] superior officers." *Dibble I*, 339 F.3d at 128. Accordingly, "where the military has failed to follow its own mandatory regulations in a manner substantially pejudicing a service member," a court may consider a lawsuit seeking redress. *Id.* (citing *Jones*, 166 F.3d at 52).

##### 2. Exhaustion

The government concedes that courts may hear challenges to the military's failure to enforce its own mandatory regulations. Gov't Br. at 20 (citing *Jones*, 166 F.3d at 52 (2d Cir. 1999) ("To the extent that a military regulation is mandatory, the courts will see that it is observed.")). However, it contends that plaintiff is procedurally barred in this case from seeking review because he has not exhausted his administrative remedies. As set forth below, the Court disagrees and holds that no such exhaustion of administrative remedies is mandated under the APA in order to obtain review of the final agency action *sub judice*.

Section 10(c) of the APA enables judicial scrutiny of "final agency action for which there is no other adequate remedy in a court," and it provides that

> [e]xcept as otherwise *expressly* required by statute, agency action otherwise final is final for the purposes of this section whether or not there has been presented or determined an application for a declaratory order, for any form of reconsideration, or, unless the agency otherwise requires by rule and provides that the action meanwhile is inoperative, for an appeal to superior agency authority.

5 U.S.C. § 704 (emphasis added). In *Darby v. Cisneros*, 509 U.S. 137, 154 (1993), the Supreme Court held that this language prohibits courts from "impos[ing] an exhaustion requirement as a rule of judicial administration where the agency action has already become 'final' under § 10(c)." Accordingly, "where the APA applies, an appeal to 'superior agency authority' is a prerequisite to judicial review *only* when expressly required by statute or when an agency rule requires appeal before review and the administrative action is made inoperative pending that review." *Id.* (emphasis in original). In other words, under *Darby*, a plaintiff need not seek further review of a final action within the agency before filing suit, unless a specific statute or rule expressly requires otherwise.

The government does not dispute that the Assistant Secretary's November 24, 2015 endorsement of the BOI recommendation constitutes a final agency action for purposes of the APA. *See Brezler*, 86 F. Supp. 3d at 217 n.5 ("At oral argument, the government conceded that the Navy's decision would become 'final' . . .

once the Secretary of the Navy directs separation, even though there are two avenues for administrative appeal available after such a decision."). Instead, it argues that plaintiff has not exhausted the administrative process because he failed to appeal the Assistant Secretary's decision to the Board for Correction of Naval Records.[11]

The BCNR is a civilian review board established pursuant to 10 U.S.C. § 1552 with the authority to "determin[e] the existence of error or injustice in the naval records of current and former members of the Navy and Marine Corps, to make recommendations to the Secretary [of the Navy] or to take corrective action on the Secretary's behalf when authorized." 32 C.F.R. § 723.2. Neither the language of the governing statute nor the applicable rule requires that plaintiff appeal the Assistant Secretary's endorsement to the BCNR prior to seeking judicial review. Moreover, "[f]iling an application with the Board shall not operate as a stay of any other proceedings being taken with respect to the person involved." 32 C.F.R. § 723.3(d). Thus, a BCNR appeal would not render plaintiff's separation inoperative pending the Board's determination. In short, no exhaustion requirement is contained within the language of the APA or the applicable statute (or regulations) creating the BCNR. Thus, the government's argument is foreclosed by the plain language of the relevant law. As the Supreme Court has explained, "We have stated time and again that courts must presume that a legislature

---

[11] Plaintiff may also appeal to the Naval Discharge Review Board, 10 U.S.C. § 1553, 32 C.F.R. § 724.102, *et seq.*, but the government acknowledges that the "NDRB, which has authority to change the characterization of service, would not offer meaningful relief in this case" because plaintiff received an honorable discharge. Gov't Br. at 13 n.6.

says in a statute what it means and means in a statute what it says there. When the words of a statute are unambiguous, then, this first canon is also the last: judicial inquiry is complete." *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992) (citations omitted); *see also Estate of Pew v. Cardarelli*, 527 F.3d 25, 30 (2d Cir. 2008) ("We first look to the statute's plain meaning; if the language is unambiguous, we will not look further.") In short, consistent with the plain language of the applicable law and the Supreme Court decision in *Darby*, this Court cannot require plaintiff to file an application with the BCNR before considering his claim that the military failed to abide by its mandatory regulations. 509 U.S. at 154. *See also Air Espana v. Brien*, 165 F.3d 148, 151 (2d Cir. 1999) ("Under the APA . . . courts are not free to impose an exhaustion requirement unless the specific statutory scheme at issue imposes such a requirement." (brackets omitted)).

Nevertheless, the government relies upon *Guitard v. United States Secretary of Navy*, 967 F.2d 737 (2d Cir. 1992), and *Jones*, 166 F.3d 45, to argue that exhaustion is required here because plaintiff challenges a military personnel decision. In *Guitard*, the Second Circuit reversed a preliminary injunction barring the Navy from discharging a member of the Naval Reserve on the grounds that the plaintiff had failed to exhaust his administrative remedies. The Second Circuit explained that "[u]nder the exhaustion rule, a party may not seek federal judicial review of an adverse administrative determination until the party has first sought *all possible relief* within the agency itself," and it emphasized that "[t]he imperatives concerning military discipline require the strict application of the exhaustion doctrine in discharge cases." *Id.* at 740 (emphasis added) (citing *Myers v. Bethlehem*

*Shipbuilding Corp.*, 303 U.S. 41, 50-51 (1938)).

Plaintiff argues that *Darby*, decided the following year, abrogated *Guitard*, and indeed, *Darby* makes no exception for APA-based challenges to military personnel actions. However, the government contends that *Jones*, a post-*Darby* decision, reaffirmed that exhaustion *is* required in such cases. In *Jones*, the plaintiff filed a non-APA 42 U.S.C. § 1983 claim asserting that the New York Army National Guard ("NYANG") violated his constitutional rights when it discharged him in violation of NYANG's own mandatory regulations. 166 F.3d at 47-49. The Second Circuit determined that the plaintiff had failed to avail himself of an opportunity for further internal administrative review prior to filing suit, and citing *Guitard*'s "view that civilian courts must avoid unnecessary interference with . . . the United States military," it held that "NYANG members must exhaust administrative remedies before bringing a federal challenge based on the NYANG's failure to follow its own regulations." *Id.* at 54. Although *Jones* considered the limited issue of "whether a member of a state National Guard must exhaust administrative remedies before seeking equitable relief from a civilian court under *§ 1983*," *id.* at 53-54 (emphasis added), the government urges the Court to disregard *Darby* and apply *Jones* to this APA action because the military enjoys a "special status" reflected in the existence of "two systems of justice . . . one for civilians and one for military personnel," *Chappell v. Wallace*, 462 U.S. 296, 303-04 (1983).

This Court declines to do so. Although the law accords the *sui generis* nature of military life unique deference, *id.* at 304, the plain language of the statute and *Darby*'s dictate, which governs "where the APA

applies," 509 U.S. at 154, are dispositive. The Court will not require plaintiff to exhaust all avenues of administrative review of a final agency decision where Congress and the military have not imposed such a requirement. This holding is in harmony with the weight of post-*Darby* case law finding that there is no "military exception" to *Darby*. *See, e.g.*, *Ostrow v. Sec'y of Air Force*, 48 F.3d 562 (D.C. Cir. 1995) (per curiam); *Crane v. Sec'y of Army*, 92 F. Supp. 2d 155, 161 (W.D.N.Y. 2000) (collecting cases and observing that, "[a]lmost without exception, federal courts throughout this country have also declined to create a military exception to the Court's decision in *Darby*"). *But see Saad v. Dalton*, 846 F. Supp. 889, 891 (S.D. Cal. 1994) (holding that "plaintiff may not pursue judicial review before petitioning the BCNR for relief" and distinguishing *Darby* because "[r]eview of military personnel . . . is a unique context with specialized rules limiting judicial review").

Though the government argues that *Jones* stands for the proposition that "exhaustion is required for *any* claim based on the military's failure to follow regulations even where the statute under which relief is sought does not require it," Gov't Br. at 21 (emphasis added), the better view is that *Jones* merely reflects that *Darby*, by its own terms, is limited to APA cases. *See Darby*, 509 U.S. at 153-54 ("Of course, the exhaustion doctrine continues to apply as a matter of judicial discretion in cases not governed by the APA."). Thus, in a non-APA action, "the exhaustion doctrine recognized by the Second Circuit obtains to minimize judicial interference with military discipline by precluding judicial intervention in administrative military proceedings until the party has first sought available relief within the agency itself." *Cunningham v. Loy*, 76 F. Supp. 2d 218, 221 (D. Conn.

1999). *Jones* and *Guitard* are of no moment here because *Darby* and the APA preclude imposition of an exhaustion requirement not found in statute or rule. Accordingly, the Court will review plaintiff's claim that defendants failed to follow compulsory procedural rules.[12]

## B. MERITS

Plaintiff alleges that the Navy committed several regulatory infractions during the BOI process. Because the Court concludes that the Navy's violation of its own discovery rule requires vacatur of the BOI's findings and recommendation, it will address only that claim.[13]

---

[12] Plaintiff also argues, in the alternative, that any exhaustion requirement should be waived because an appeal would be futile. However, given the Court's conclusion that no exhaustion requirement exists, it need not address plaintiff's futility argument.

[13] Plaintiff also asserts that defendants (1) failed to provide him with proper notice of all the charges that the BOI considered; (2) omitted from the BOI record required documents and included documents that were not part of the proceeding; (3) failed to generate a verbatim transcript of the BOI; (4) failed to adhere to the required timeline for the BOI proceeding and post-BOI process; (5) pressured plaintiff's BOI counsel prior to the proceeding; (6) prevented plaintiff from calling witnesses and submitting supportive testimony; and (7) used the BOI proceeding for publicity purposes. Because the Court is remanding the matter for a new BOI, these other procedural challenges are moot.

In addition to these procedural complaints, plaintiff contends that the (1) separation decision was not supported by substantial evidence and was the result of retaliation; (2) the Assistant Secretary's "rubberstamp" endorsement of the BOI report was based on "irrelevant and improper considerations"; and (3) the separation decision was arbitrary and capricious because the government treated similar security lapses with greater leniency. Because the Court finds that the BOI process was contrary to "the statutes and regulations governing that agency," *Dilley v. Alexander*, 603 F.2d 914, 920 (D.C. Cir. 1979), *decision clarified,* 627 F.2d 407 (D.C. Cir.

### 1. Facts

SECNAVINST 1920.6C, Enclosure 8, ¶ 6(d) (2005) provides that plaintiff has the right of

> [f]ull access to, and copies of, records relevant to the case, except that information or material shall be withheld if CHNAVPERS or DC (M&RA) determines that such information should be withheld in the interest of national security. When information or material is so withheld, a summary of the information or material will be provided to the extent the interests of national security permits.

This rule is facially broad in scope and requires production of *all* information relevant to plaintiff's case. The only exception pertains to material deemed to implicate national security concerns.

Defendants do not dispute that on December 3, 2013—a few weeks before the

BOI proceeding began—plaintiff requested, *inter alia*, all correspondence concerning plaintiff from July 1, 2012 to the date of the request. (R. at 2552, 2600-01, 2626.) By letter dated December 13, 2013, the government summarily denied discovery because (1) it concluded that plaintiff's disclosure request was duplicative of pending FOIA applications; (2) "the information requested [was] not determined to be relevant as to [plaintiff's] actions"; and (3) plaintiff already had access to the materials that the government planned to use at the BOI proceeding. (R. at 2552.)

In November 2014, plaintiff filed a letter of deficiencies alleging a violation of the disclosure rule and that he did not receive critical documents through the FOIA process until after the BOI concluded. (R. at 1319-21.) The December 5, 2014 memorandum prepared by Colonel Kleis (the "SJA Memo") addressed plaintiff's claim and determined that "[a]t no time did [plaintiff] request a continuance to obtain documents he requested via the FOIA process. . . . [Plaintiff] was given all process provided for by the Orders, Instructions, Regulations and Codes regarding the administrative processing of Officers in the Marine Corps Reserve." (R. at 1803.) Similarly, the October 23, 2015 memorandum prepared by the Deputy Assistant Judge Advocate General (the "JAG Memo") determined that plaintiff's disclosure requests were "cumulative and irrelevant" in light of his FOIA applications, and that denial of discovery was not prejudicial because the BOI found that plaintiff did not commit any misconduct in Afghanistan; thus, refusal to disclose documents pertaining to plaintiff's actions in Afghanistan did not impede his defense. (R. at 2600-01). In addition, the JAG Memo held plaintiff responsible for failing to seek

---

1980), it will not reach these substantive claims. The Court is also mindful that the intramilitary immunity doctrine and the deference owed to military personnel actions significantly cabins scrutiny of the Navy's decision to discharge plaintiff. *See Dibble I*, 339 F.3d at 125-26. Moreover, "[t]his Court will not place itself in the position of reviewing an entire series of military personnel decisions . . . and then presume to tell military officials of the Executive Branch how best to hire, retain, discharge or promote members of the United States Armed Forces." *Dibble v. Fenimore*, 488 F. Supp. 2d 149, 161 (N.D.N.Y. 2006), *aff'd*, 545 F.3d 208 (2d Cir. 2008). Instead, as discussed in more detail *infra*, the Court will remand this matter to the Secretary of Navy for a new BOI hearing so that, consistent with the Navy's discovery rule, Major Brezler can obtain all relevant documents on his retaliation claims and have a full and fair opportunity, after receiving those materials, to present the evidence supporting his claim of retaliation to the BOI and to those reviewing any adverse BOI decision.

postponement of the BOI pending receipt of documents through FOIA.  (R. at 2601.)

Finally, the Deputy Commandant's August 4, 2015 endorsement, subsequently approved by the Assistant Secretary on November 24, 2015 (the "SecNav Report"), found that plaintiff

> failed, in his request and in his letter of deficiency, to adequately explain why the requested documents, assuming they existed, were relevant. With respect to Major Brezler's request for documents ("e-mails since July 1, 2012, regarding Brezler, Sarwar Jan, Ainuddin Khudairaham or the August 10, 2012 attack by Generals Flynn and Mills, or any commander or principal staff officer within the 3rd [sic] Battalion, 8th Marines from July 1 to August 10, 2012"), documents not provided were not relevant, did not exist, or were not within the control of [the Marine Forces Reserve].

(R. at 2626.)

## 2.  Analysis

The Navy, like any other agency, must comply with its own binding rules.  *Smith v. Resor*, 406 F.2d 141, 145 (2d Cir. 1969) (holding that mandatory military "procedures and regulations cannot be ignored by the agencies themselves even where discretionary decisions are involved").  Although the government contends that this Court must review plaintiff's discovery claim under an "unusually deferential application of the 'arbitrary or capricious' standard of the APA" because it implicates military decision-making (Defs.' Br. at 16 (quoting *Kreis v. Sec'y of the Air Force*, 866 F.2d 1508, 1514 (D.C. Cir. 1989)), "the issue before the court does not involve a military judgment requiring military expertise, but rather review of the [Navy's] application of a procedural regulation governing its case adjudication process."  *Kreis v. Sec'y of Air Force*, 406 F.3d 684, 686 (D.C. Cir. 2005) ("*Kreis II*").  *Compare Falk v. Sec'y of the Army*, 870 F.2d 941, 945 (2d Cir. 1989) (adopting a more deferential review standard in a case challenging substantive military decision-making), *with Blassingame v. Sec'y of the Navy*, 866 F.2d 556, 559-60 (2d Cir. 1989) (adopting a "plenary, careful and searching" review of a claim challenging non-compliance with a military regulation).  On the contrary, ensuring that the Navy followed its own rules "does not involve any undue interference with the proper and efficient operation of our military forces because [it] require[s] only that the [Navy] carry out the procedures and regulations it created itself."  *Blassingame*, 866 F.2d at 560 (third alteration in original) (quoting *Smith*, 406 F.2d at 146); *see also Dilley*, 603 F.2d at 920 (according the military special deference is "wholly inappropriate . . . when a case presents an issue that is amenable to judicial resolution").  "It is the duty of the federal courts to inquire whether an action of a military agency conforms to the law, or is instead arbitrary, capricious, or contrary to the statutes and regulations governing that agency."  *Dilley*, 603 F.2d at 920.

Here, the Court finds that the Navy violated the APA by denying plaintiff's discovery request.  It is axiomatic that an agency decision is "arbitrary or capricious" if it is contrary to the agency's own mandatory rules.  *See* 5 U.S.C. § 706(2)(A); *Dilley*, 603 F.2d at 920; *State Farm*, 463 U.S. at 42.  SECNAVINST 1920.6C, Enclosure 8, ¶ 6(d) requires that the Navy provide "*full access*" to relevant records, and only excludes information pertaining to

national security. It makes no exception for materials that are duplicative of pending FOIA applications.[14] Thus, the government's decision that it need not disclose documents that might also be released through the FOIA process "imposed a requirement not present in its regulation" and is plainly at odds with the rule's wide-ranging ambit, which encompasses all relevant information. *Kreis II*, 406 F.3d at 686. In *Blassingame*, the Second Circuit similarly refused to adopt the Navy's cramped reading of a rule requiring investigation of possible erroneous enlistments. 866 F.2d at 560. The government argued that this requirement was limited to instances where the government sought to discharge a recruit for deficient recruitment, but the Second Circuit held that the "plain wording" of the rule "establishes that an investigation is required of any case which 'comes to a commander's attention.' No requirement that the soldier still be in uniform is suggested." *Id.* Likewise, the language of SECNAVINST 1920.6C, Enclosure 8, ¶ 6(d) does not

exclude from discovery materials that overlap with FOIA productions.[15] Nor does it impose an obligation on plaintiff to establish why the materials he sought were relevant to the BOI proceeding or to request a continuance to challenge the denial of discovery.

Further, the Court finds that the government's determination that the documents sought by plaintiff "were not relevant, did not exist, or were not within the control of [the Marine Forces Reserve]" (R. at 2626) to be completely unsupported by the administrative record. Plainly, "e-mails since July 1, 2012, regarding Brezler" could be highly relevant to the BOI since at least some would pertain to the security incident that led to the disciplinary action, and could also pertain to the retaliation claims. Yet, nothing in the administrative record provides any reasonable basis for the Navy's sweeping conclusion that all of these documents were immaterial. The SJA Memo, the JAG Memo, and the SecNav Report are bereft of such analysis and make "no attempt to inquire as to the evidence, if any, supporting these conclusions." *W. Harlem Envtl. Action v. U.S. E.P.A.*, 380 F. Supp. 2d 289, 295 (S.D.N.Y. 2005). The government's argument that the Navy's relevancy assessment was reasonable, "particularly in light of the fact that the BOI concluded that Major Brezler did not commit misconduct in Afghanistan" (Defs.' Br. in Opp'n to Pl.'s Mot. for Summ. J. ("Defs.' Opp'n Br."), ECF No. 64, at 21), seems to entirely miss the point of Major Brezler's retaliation claims. Although agency decision-making is entitled to a

---

[14] Although the government's submissions do not advance a contrary interpretation of this regulation, the Court is cognizant that "considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer, and the principle of deference to administrative interpretations." *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 844 (1984) (footnote omitted). "A similar deference applies when an agency interprets its own regulations," and that "interpretation, regardless of the formality of the procedures used to formulate it, is 'controlling unless plainly erroneous or inconsistent with the regulation[s].'" *Encarnacion ex rel. George v. Astrue*, 568 F.3d 72, 78 (2d Cir. 2009) (alteration in original) (quoting *Auer v. Robbins*, 519 U.S. 452, 461 (1997)). Assuming *arguendo* that the Navy contends that the Court should interpret SECNAVINST 1920.6C, Enclosure 8, ¶ 6(d) to include a "FOIA exception," the Court finds, as stated *infra*, that such a construction is "plainly erroneous" and inconsistent with the regulation's expansive disclosure requirement.

[15] To the extent that defendants argue that the production of relevant documents was unnecessary because it was duplicative of plaintiff's FOIA request, the Court finds that argument unpersuasive because plaintiff did not obtain all relevant documents (through FOIA or any other mechanism) prior to his BOI hearing.

"presumption of regularity," *Volpe*, 401 U.S. at 415, a determination is arbitrary and capricious if it is implausible or contrary to the evidence before the agency, *State Farm*, 463 U.S. at 43. Where there are "no findings and no analysis . . . to justify the choice made, no indication of the basis on which the [Navy] exercised its expert discretion," this Court is "not prepared to and the Administrative Procedure Act will not permit [it] to accept such adjudicatory practice." *Burlington Truck Lines*, 371 U.S. at 167 (footnote omitted); *see also State Farm*, 463 U.S. at 48.

Here, there are no findings or analysis in the administrative record as to why correspondence concerning plaintiff was not relevant to his BOI proceeding and discoverable under SECNAVINST 1920.6C, Enclosure 8, ¶ 6(d)'s expansive scope. That the BOI ultimately determined that plaintiff did not commit misconduct while stationed in Afghanistan offers no support for the government's tenuous claim that *all* e-mails from July 1, 2012 through December 3, 2013 concerning plaintiff were irrelevant to the BOI proceeding.

Given the clear failure to provide all documents that would be relevant to, *inter alia*, plaintiff's claims of retaliation, the government appears to be bolstering the administrative record by taking the position (as articulated in its post-argument submission) that such documents are not "relevant" under the regulation because plaintiff's retaliation allegations do not relate to the misconduct that provided the ostensible basis for the BOI and Major Brezler's separation from the Marine Corps. (*See* Kleis Decl. at ¶ 21 ("[T]his document is not relevant to Major Brezler's administrative proceeding as that term is used in SECNAVIST 1920.6C because it does not relate to the actions for which

Major Brezler was ordered to show cause or the bases for separation . . . .")). In other words, the government now suggests in this APA litigation that the retaliation issue was outside the scope of the BOI hearing, and thus, plaintiff's retaliation claims (and documents that would have allowed him to fully pursue those claims) were irrelevant.

That position, however, is completely inconsistent with the administrative record in this case, which demonstrates unequivocally that plaintiff's retaliation allegation was raised prior to the BOI, considered at the BOI, and renewed and reviewed at every stage of the administrative process. In fact, the government's submissions to this Court repeatedly concede this critical point. (*See* Defs.' Br. at 27 ("The Assistant Secretary (as well as the Deputy Commandant, General Mills, and the Board itself) considered the same allegations of retaliation and improper influence that Major Brezler raises in this action and concluded they were unfounded."); Defs.' Opp'n Br. at 16 ("The Assistant Secretary (as well as the Deputy Commandant, General Mills, the Board, and the DoD IG) considered substantially the same allegations of retaliation and improper influence that Major Brezler raises in this action and concluded they were unfounded."); *id*. at 23 ("As set forth more fully above, in the Government's Motion, and in the Administrative Record, the Assistant Secretary scrupulously considered and addressed Major Brezler's allegations of retaliation . . . .")). At no point was Major Brezler ever advised that his claims of retaliation were outside the scope of administrative review. In short, there is absolutely no question that Major Brezler's retaliation allegation was raised and decided at the BOI, and substantively reviewed at each subsequent stage of the administrative process. Thus, unless there was a national

security reason or other valid basis for withholding documents relevant to that claim (an assertion completely absent in the administrative record), the failure to provide those relevant documents to Major Brezler so that he could fully litigate the retaliation issue was a clear violation of SECNAVIST 1920.6C, Enclosure 8, ¶ 6(d).

Accordingly, the Court finds that the denial of discovery violated the Navy's mandatory disclosure regulation and the APA. Notwithstanding the general argument advanced by the government that such a determination "would impermissibly turn civilian courts into forums in which military personnel could routinely challenge evidentiary determinations during military personnel proceedings," Defs.' Opp'n Br. at 21, the Court is duty-bound "to inquire whether an action of a military agency conforms to the law, or is instead arbitrary, capricious, or contrary to the statutes and regulations governing that agency," *Dilley*, 603 F.2d at 920. In this particular instance, the "evidentiary determination" made by the Navy cannot be reconciled with the plain text of the applicable rule and the administrative record before this Court. *See Blassingame*, 866 F.2d at 560.

It is also apparent that the failure to disclose relevant information prejudiced plaintiff. Major Brezler argued in his motion to dismiss the BOI, and throughout the course of the instant litigation, that there is a "strong showing"—even without resort to plaintiff's extra-record submissions—that the Navy initiated the BOI due to "bad faith or improper behavior." *See Hoffman*, 132 F.3d at 14; *Volpe*, 401 U.S. at 420. In contrast, the government asserts that the claims of retaliation are baseless and have absolutely no support in the administrative record. However, the Court disagrees with the government's assessment. Plaintiff has

pointed to a number of documents in the administrative record to support his retaliation claims, including, among other things, the following uncontroverted facts: (1) General Mills directed Major Brezler to the BOI on August 30, 2013, only five days after the *Marine Corps Times* published a story about Congressman King's challenge to the adverse FitRep; (2) although General Mills told the IG that he was unaware of Congressman King's correspondence at the time he ordered the BOI, that statement is incorrect given that General Mills received Commandant Amos's e-mail about the *Marine Corps Times* article several days before issuing the BOI order; (3) in the flurry of e-mails among high-level military commanders (including Commandant Amos and Generals Mills and Hartsell) from the time the story was published until General Mills directed the BOI, there is not a single mention of the existence of a BOI package or that a BOI was under consideration; (4) the show cause order directing the BOI refers to the documents it relied upon and references no "package," but only an NCIS report prepared over eight months earlier and a JPAS report prepared that same day; and (5) Colonel LeSavage, General Hartsell, and the Marine Forces Reserve (including Colonel Kleis) were aware of all the facts in 2012 that formed the basis for the BOI in August 2013 and, in March 2013, took administrative action against Major Brezler by issuing an adverse FitRep without convening a BOI or placing him on a "legal hold" until immediately after receipt of Congressman King's correspondence.[16]

---

[16] In addition, plaintiff attempts to show that the Navy's decision to separate him was arbitrary and capricious because it treated similar security lapses by other military personnel with greater leniency. To advance this argument, plaintiff points to the JAG Memo, which includes "an apparent summary of all closed spillage investigations resulted in the subject not being separated or even directed to a BOI, even though most involved intentional and far more

In response, the government has repeatedly asserted that these uncontroverted facts have no probative value because the BOI "package" was completed prior to Congressman King's letter and only held in abeyance pending adjudication of Major Brezler's security clearance, which had previously expired. (*See* Defs.' Resp. to Pl.'s 56.1 at ¶ 139 ("The Staff Judge Advocate for Marine Forces Reserve Command indicated that the legal review of Major Brezler's case was completed sometime after General Hummer departed in June 2013 and before General Mills assumed command on August 30, 2013."); *id*. at ¶ 147 ("[T]he Administrative Record shows that the recommendation upon which General Mills based his decision was prepared before August 30, 2013."); *see also* Defs.' Opp'n Br. at 4-5 ("NCIS formally closed its investigation on April 16, 2013, AR 2811, and the Staff Judge Advocate ('SJA') of Marine Forces Reserve, in turn, concluded its legal review for administrative action against Major Brezler after General Hummer departed as Commander in June 2013. In the absence of a Show Cause Authority, the package was held for Lieutenant General Mills to take action once he assumed command.")). Moreover, the government argues that any assertion that the BOI package did not exist prior to General Mills assuming command is baseless:

Major Brezler's only response to this dispositive timeline is to argue, without any competent evidence or persuasive evidence, that the Marine Corps and the Navy are lying and that no "BOI package" was awaiting General Mills when he assumed command. Major Brezler's allegations are untrue and ignore significant evidence in the Administrative Record to the contrary.

Defs.' Opp'n Br. at 18 (citations omitted). However, a close examination of the administrative record undermines the government's position and highlights the prejudice that plaintiff suffered due to his inability to obtain all documents relevant to his retaliation claims.

First, as noted above, there is a complete absence in the administrative record of any e-mails or documents that reference existence of a BOI "package" prior to the *Marine Corps Times* article and General Mills assuming command. Second, the "significant evidence" the government cites in the administrative record to support this critical contention is a single footnote in the JAG Memo, which states: "Discussions with SJA [Colonel Kleis] indicate that the legal review of Maj Brezler was not completed until after Lt Gen Hummer departed [as commander of the Marine Forces Reserve]. The package was held for Lt Gen Mills to take action on once he assumed the position . . . ." (R. at 2579 n.7.) However, the JAG Memo does not cite any underlying document containing the BOI "package" that Colonel Kleis ostensibly prepared before General Mills took command. Moreover, the JAG Memo was prepared after the BOI hearing, and plaintiff was thus unable to rebut this contention—that a BOI package predated the *Marine Corps Times*

---

extensive spillage and misconduct than Major Brezler's alleged misconduct . . . ." (Mem. of Law in Supp. of Pl.'s Mot. for Summ. J. and, in the Alternative, for a Prelim. Inj., ECF No. 59, at 7.) The government disputes this contention and argues that these other cases are distinguishable from Major Brezler's conduct. In any event, as noted *supra* note 13, the Court does not reach this substantive claim in light of the need to remand the case for the reasons discussed herein.

article—at that proceeding. Third, and as also previously discussed, plaintiff did not have all of the discovery that would be relevant to this important contention. For example, the BOI "package" was never provided to Major Brezler at any point in the administrative process, and plaintiff did not receive all of the e-mails regarding his case from the period before the *Marine Corps Times* article that might support (or even contradict) the pre-existence of the BOI "package."[17] In sum, the Navy completely deprived Major Brezler of any meaningful opportunity to rebut the post-hearing, conclusory assertion in this footnote, and to the extent that military and civilian officials relied on Colonel Kleis's allegation that the BOI "package" pre-dated the *Marine Corps Times* article in endorsing the BOI, such reliance certainly prejudiced plaintiff because he could not fully contest that assertion during the administrative review.

Similarly, to the extent that the government relies on DONCAF's review of Major Brezler's expired security clearance to explain the delay between the closing of the NCIS investigation in April 2013 and the BOI decision in August 2013, plaintiff was not given a fair opportunity (with proper discovery) to explore that issue, the facts of which are far from clear in the administrative record. The government correctly notes that NCIS stated in an April 16, 2013 report that its investigation was now closed, that "[a]ny further administrative action is pending the outcome

of the Department of Defense" review of plaintiff's security clearance, and that the Marine Corps had determined not to charge plaintiff with criminal violations. (R. at 2808-10.) However, the administrative record omits further mention of the DONCAF review, and there are no facts that set forth when that adjudication was complete. If DONCAF finished its security clearance review months before General Mills convened the BOI, that adjudication would provide little or no support for the timing of the BOI decision. Certainly, to the extent that the Navy relied on the DONCAF review to support a finding of non-retaliation, Major Brezler should receive discovery regarding the adjudication process, such as related communications between DONCAF and the Marine Forces Reserve.

Although the Court has reached its determination independent of the extra-record evidence submitted by both parties, the Court has reviewed those materials and notes that the post-oral argument voluntary discovery provided by the government confirms the need for a remand and new BOI because it raises additional factual questions that plaintiff never had an opportunity to explore during the administrative process. For example, Colonel Kleis states in his declaration that the BOI package "would have been in [sic] fully assembled, except for the DONCAF information, by . . . July 2013." (Kleis Decl. at ¶ 16.) However, as noted above, there is no record evidence confirming the existence of that package in July 2013, and the Navy never provided plaintiff with the package itself. Colonel Kleis now states that he did not have to retain that "BOI package" because the documents contained therein were stored separately in other files and records systems. (*Id*. at ¶ 20.) Moreover, although the government suggested in this

---

[17] Moreover, if Major Brezler had been aware of the purported pre-existence of the BOI "package," he could have (at a minimum) sought to rebut that assertion with the fact that none of the post-*Marine Corps Times* e-mails providing the "ground truth" Commandant Amos sought—including the response from the Marine Corps Inspector General—states that a BOI was imminent or even contemplated in the few days prior to the August 30, 2013 show cause order. (R. at 1696-98.)

case that the administrative record shows that the recommendation upon which General Mills based his BOI decision was "prepared" before August 30, 2013 (Defs.' 56.1 Resp. to Pl.'s 56.1 at ¶ 147), Colonel Kleis now makes clear that he never placed that guidance in writing at any point in time; instead, Colonel Kleis states that he kept his counsel to himself from February 2013 until August 30, 2013, when he simply made an oral recommendation that General Mills convene a BOI (Kleis Decl. at ¶¶ 6, 11, 16-17). This revelation—that no written BOI recommendation existed prior to August 30, 2013—is inconsistent with what would be reasonably understood from the JAG Memo's conclusory assertion that Colonel Kleis completed his legal review after General Hummer departed the Marine Forces in June 2013, but before General Mills assumed command. (R. at 2579 n.7.)

Moreover, the explanation provided by Colonel Kleis for the six-month delay in making his oral recommendation was completely undeveloped in the record. In particular, Colonel Kleis asserts that he held the BOI recommendation in abeyance to await completion of the DONCAF adjudication because that review could have resulted in an additional basis for plaintiff's separation if DONCAF revoked plaintiff's security clearance, and he provides this Court with an ODN entry to support that assertion. (See Kleis Decl. at 8; ECF No. 78 at 15.) As a threshold matter, the Navy never provided this ODN entry to Major Brezler, who thus never had a chance to explore this issue during the administrative process. Second, having now received the ODN, Major Brezler vigorously disputes this factual assertion, and he has submitted a post-argument declaration stating that he was advised in December 2012 that, because his security clearance had expired, there would be no revocation, and DONCAF

would only consider renewing his clearance based upon any future assignment. (ECF No. 81 at ¶ 1.) Third, as noted above, it does not appear that the administrative record contains any DONCAF materials (or that anyone from DONCAF was ever interviewed) regarding the timing and nature of the security clearance adjudication. Fourth, as Major Brezler observes in his post-argument response to Colonel Kleis' declaration, there is another aspect of his chronology that warrants further exploration (and that was also apparently unknown during the administrative proceeding). Colonel Kleis states that, in July 2013, he reconsidered the necessity of waiting on the DONCAF determination and considered the possibility of obtaining a show cause determination from an alternate authority since General Mills had not yet replaced General Hummer as commander of the Marine Forces Reserve. (See Kleis Decl. at ¶¶ 9-10.) However, plaintiff notes that on July 11, 2013, around the time of this reconsideration by Colonel Kleis, the Marines Corps received Congressman King's inquiry. Although Colonel Kleis asserts that he did not learn of the letter until August 21, 2013, Major Brezler has not had any opportunity to explore what prompted Colonel Kleis to consider moving forward with a BOI in July 2013 (after months of delay) if that decision was completely unrelated to Congressman King's correspondence.

In sum, although the government argues that the Navy scrupulously considered and rejected plaintiff's retaliation claims during the administrative process, it is abundantly clear to this Court that the administrative record was not fully developed on this critical issue because of the Navy's failure to provide relevant documents, as mandated by its own discovery provision, and that

Major Brezler was prejudiced as a result.[18] Had the Navy afforded plaintiff the discovery mandated by its own rules, he might have been able to demonstrate, through documentary evidence and by examining Colonel Kleis (and potentially other witnesses) at his BOI hearing, that the Navy never considered empaneling a BOI in the months prior to Congressman King's letter and the *Marine Corps Times* article. Plaintiff may also have been able to show that a BOI package was not awaiting General Mills' approval when General Mills assumed command of the Marine Forces Reserve, but that this is rather an *ex post* contention that the Navy first propounded in the JAG Memo dated nearly two years after the BOI proceeding and almost one year following commencement of this lawsuit. As a result, with the relevant documents on this issue, plaintiff may have successfully obtained dismissal of the BOI for unlawful retaliation based upon his protected communication with Congressman King. Accordingly, the Court finds that the Navy's failure to comply with its discovery obligations was not a harmless regulatory infraction. *See Blassingame*, 866 F.2d at 560.

## IV. REMEDY

The APA provides that a "reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(B). Thus, where a court has found that an agency violated its own mandatory regulations, vacatur of the agency action with remand for reconsideration is appropriate. *See Harmon v. Brucker*, 355 U.S. 579, 583 (1958) (invalidating military discharges because government violated statute); *Blassingame*, 866 F.2d at 560 (vacating NDRB and BCNR determinations for regulatory infraction); *Dilley*, 603 F.2d at 925 (vacating separation decisions and remanding for new promotion selection board hearings because military violated statute and regulations); *Van Bourg v. Nitze*, 388 F.2d 557, 566-67 (D.C. Cir. 1967) (vacating NDRB decision due to regulatory infraction and remanding for further proceedings); *Lefrancois v. Mabus*, 910 F. Supp. 2d 12, 22 (D.D.C. 2012) (vacating NDRB and BCNR determinations for regulatory violation and remanding to Secretary of the Navy); *Seifert v. Winter*, 555 F. Supp. 2d 3, 15-16 (D.D.C. 2008) (setting aside BCNR's determinations because of regulatory violation and remanding); *Gastall v. Resor*, 334 F. Supp. 271, 273 (D. Mass. 1971) (vacating military discharge and remanding for reconsideration due to regulatory violation).

To the extent plaintiff suggests that the Court should permit discovery in the context of this lawsuit and then allow supplemental factual submissions, the Court declines to do so in its discretion. Specifically, plaintiff has not demonstrated that the Navy acted in bad faith in failing to comply with its discovery obligation, and the Court has no reason to believe that the Navy will not follow the Court's instruction to provide the relevant documents to plaintiff on remand,[19]

---

[18] In reaching this decision, the Court emphasizes that it is not holding, pursuant to this regulation, that documents that might be relevant to a retaliation claim must be produced at the outset of every BOI; instead, this holding is limited to situations where such a claim is raised and actively considered during a BOI and/or any subsequent review of a BOI determination. To hold otherwise would be to ignore the expansive plain language of the discovery regulation and expose any substantive review of a retaliation claim to potentially arbitrary and capricious decisionmaking due to a lack of relevant information.

[19] Obviously, if there are grounds for not producing relevant documents (such as national security

and then conduct a fair and impartial new BOI hearing during which the retaliation issue can be fully explored and the administrative record fully developed. This approach also avoids unwarranted intrusion into the military decision-making process before the military has had the opportunity to make a final decision after the administrative record has been fully developed. Following remand, plaintiff would be able to renew his challenge to any adverse final decision before this Court for review under the APA.

Accordingly, the Court will vacate the BOI's findings and recommendation and remand to the Secretary of the Navy for further proceedings consistent with this Memorandum and Order.[20]

## V.    CONCLUSION

For the reasons set forth above, defendants' motion to dismiss or for summary judgment (ECF No. 55) is

denied—except that the Court dismisses all claims against defendants Mills and the Marine Corps for lack of subject matter jurisdiction; and plaintiff's motion for summary judgment (ECF No. 58) is granted to the extent that the Court finds that the government violated SECNAVINST 1920.6C, Enclosure 8, ¶ 6(d) (2005) under the particular circumstances of this case. The Court vacates the BOI's findings and recommendation, and this case is remanded to the Secretary of the Navy for further proceedings consistent with this Memorandum and Order, including providing plaintiff with documents that are relevant to his retaliation claims and with a new BOI proceeding during which he can fully and fairly explore, *inter alia*, those issues and complete the administrative record.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated:  December 6, 2016
        Central Islip, NY

\* \* \*

Plaintiff is represented by Michael J. Bowe, Kasowitz, Benson, Torres & Friedman LLP, 1633 Broadway, New York, NY 10019; and Kevin Thomas Carroll, Quinn Emanuel Urquhart & Sullivan LLP, 777 6th Street, Washington, DC 20001.  The government is represented Leigh Aaron Wasserstrom, Assistant United States Attorney, on behalf of Preet Bharara, United States Attorney, Southern District of New York, 86 Chambers Street, New York, NY 10007.

---

concerns), the Navy is free to assert those claims in accordance with its applicable procedures.

[20] Plaintiff also requests that this Court restore him to his previous employment status and permanently enjoin the government from taking any adverse personnel action against him on the basis of his BOI proceeding, the show cause order, or the facts underlying the proceeding.  However, because the government agreed not to separate plaintiff during the pendency of this litigation, *see* ECF No. 76, there has been no change in the *status quo ante* with respect to his employment.  Further, "where a district court reviews agency action under the APA, it acts as an appellate tribunal, so the appropriate remedy for a violation is simply to identify a legal error and then remand to the agency."  *Hill Dermaceuticals, Inc. v. Food & Drug Admin.*, 709 F.3d 44, 46 n.1 (D.C. Cir. 2013).  The Court has not reached plaintiff's substantive claims concerning the charges that the Navy brought against him—namely, that there was insufficient evidence to support the BOI's separation recommendation—and accordingly, permanent injunctive relief would be inappropriate at this juncture.