UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

JASON BREZLER,

                         Plaintiff,

against

LIEUTENANT GENERAL RICHARD
MILLS, UNITED STATES MARINE
CORPS, AND UNITED STATES
DEPARTMENT OF THE NAVY,

                         Defendants.

2:14-CV-07424-JFB-GRB

## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFF JASON BREZLER'S MOTION FOR CONTEMPT AND SANCTIONS

## TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................................. i

PRELIMINARY STATEMENT ..................................................................................................... 1

FACTS ............................................................................................................................................ 2

A.      Relevant Procedural History ............................................................................................ 2

B.      The Government's Dilatory Conduct in Discovery .......................................................... 3

ARGUMENT ................................................................................................................................ 11

I.      CIVIL CONTEMPT IS WARRANTED ......................................................................... 11

      A.      The December 6, 2016 Order Is Clear and Unambiguous. ................................... 13

      B.      The Government's Violation of the Court's Order Is Clear and Convincing. ....... 13

      C.      The Government Has Failed to Diligently Comply with the Court's Order......... 15

II.     CIVIL SANCTIONS DISMISSING THE INTENDED BOI ARE WARRANTED ....... 22

CONCLUSION ............................................................................................................................. 26

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ACLI Gov't Sec., Inc. v. Rhoades*,
  989 F. Supp. 462 (S.D.N.Y. 1997),
  *aff'd*, 159 F.3d 1345 (2d Cir. 1998) ......................................................................13, 15

*Aspira of New York, Inc. v. Bd. of Ed. of City of New York*,
  423 F. Supp. 647 (S.D.N.Y. 1976) ...................................................................12, 17, 22

*Atwell v. Orr*,
  589 F. Supp. 511 (D.S.C. 1984) ....................................................................................25

*Casale v. Kelly*,
  710 F. Supp. 2d 347 (S.D.N.Y. 2010) ......................................................................16, 22

*Chaplaincy of Full Gospel Churches v. Johnson*,
  217 F.R.D. 250 (D.D.C. 2003) ......................................................................................20

*Cobell v. Babbitt*,
  37 F. Supp. 2d 6 (D.D.C. 1999) ....................................................................................12

*Convertino v. United States Dep't of Justice*,
  669 F. Supp. 2d 1 (D.D.C. 2009) ..................................................................................20

*Cordius Tr. v. Kummerfeld Assocs., Inc.*,
  658 F. Supp. 2d 512 (S.D.N.Y. 2009) ...........................................................................23

*EEOC v. Moore Group, Inc.*,
  416 F. Supp. 1002 (N.D. Ga. 1976) ..............................................................................24

*Ensco Offshore Co. v. Salazar*,
  781 F. Supp. 2d 332 (E.D. La. 2011) ............................................................................23

*Granados v. Gold Coast Tennis, Inc.*,
  No. 12-CV-4016 JFB WDW, 2013 WL 3766582
  (E.D.N.Y. July 16, 2013) (Bianco, J.) ..........................................................................16

*Houseton v. Nimmo*,
  670 F.2d 1375 (9th Cir. 1982) .................................................................................22, 23

*John B. Hull, Inc. v. Waterbury Petroleum Prod., Inc.*,
  845 F.2d 1172 (2d Cir. 1988) .......................................................................................25

*Johnson v. Comm'r of Soc. Sec.*,
  64 F. Supp. 2d 55 (D. Conn. 1999) ...............................................................................21

*Jones v. Niagara Frontier Transp. Auth. (NFTA)*,
   836 F.2d 731 (2d Cir. 1987)....................................................................24

*Levin v. Tiber Holding Corp.*,
   277 F.3d 243 (2d Cir. 2002)....................................................................13

*In re Lindsey*,
   158 F.3d 1263 (D.C. Cir. 1998) ..............................................................20

*In re Marc Rich & Co., A.G.*,
   736 F.2d 864 (2d Cir. 1984)....................................................................15

*McComb v. Jacksonville Paper Co.*,
   336 U.S. 187 (1949)................................................................................12

*Muwekma Tribe v. Babbitt*,
   133 F. Supp. 2d 30 (D.D.C. 2000) .........................................................23

*New York Nat'l Org. for Women v. Terry*,
   886 F.2d 1339 (2d Cir. 1989)..................................................................12

*New York v. U.S. Capital Funding*,
   LLC, No. 09-CV-0004 JFB ETB, 2011 WL 3489914
   (E.D.N.Y. Aug. 9, 2011) (Bianco, J.) ..................................12, 13, 15, 16

*Queenan v. Heckler*,
   581 F. Supp. 1216 (S.D.N.Y. 1984)........................................................25

*In re United Mine Workers of Am. Int'l Union*,
   190 F.3d 545 (D.C. Cir. 1999) ..........................................................15, 21

*United States v. Asero*,
   No. 07-MC-334, 2009 WL 580428 (E.D.N.Y. Mar. 5, 2009) ...........15, 21

*Yash Raj Films (USA), Inc. v. Bobby Music Co. & Sporting Goods*,
   No. 01 CV 8378 JFB CLP, 2006 WL 2792756
   (E.D.N.Y. Sept. 27, 2006) (Bianco, J.) ..................................................12

**Statutes, Rules and Regulations**

10 U.S.C. § 1034.......................................................................................20

5 U.S.C. § 701, *et seq.*..........................................................................22, 24

Fed. R. Civ. P. 37................................................................................24, 25

SECNAVINST 1920.6C, Encl. 4, at 8........................................................23

Plaintiff Jason Brezler ("Plaintiff" or "Major Brezler") respectfully submits this memorandum of law in support of his motion for civil contempt and sanctions against the United States Department of the Navy ("Defendant" or the "government").[1]

## PRELIMINARY STATEMENT

On December 6, 2016, this Court issued an Order, which vacated Major Brezler's separation from the Marine Corps, remanded the case to the Secretary of the Navy, and imposed a clear mandate on the government:  produce documents relevant to Major Brezler's retaliation claims so that he can "fully and fairly explore" those issues at a new board of inquiry ("BOI") hearing.  Twenty-one months have passed since.  Despite having ample time and every opportunity to comply with the Court's directive, the government has utterly failed to do so.  The government's piecemeal, perfunctory, and gap-ridden discovery demonstrates that it has made no meaningful effort to secure documents germane to Major Brezler's retaliation claims.  Indeed, the thousands of pages of largely worthless and irrelevant or redundant documents produced – among them, wholly irrelevant emails covering holiday greetings, leadership and employment updates on unrelated personnel, and previous FOIA productions with the FOIA redactions still in place – appear nothing more than a feint to bolster a perception that the government is complying.

The government's enduring and intractable failure to meet basic discovery obligations not only directly defies this Court's Order, but also moots its very purpose.  Accordingly, to protect his rights, Major Brezler has no other option than to seek the instant relief of civil contempt and sanctions dismissing the intended BOI hearing in its entirety and with prejudice.

---

[1]  Citations to "Ex." refer to the exhibits attached to the September 13, 2018 Declaration of Michael J. Bowe ("Bowe Decl.").  Citations to "¶" refer to paragraph numbers of the Bowe Decl.

# FACTS

**A.      Relevant Procedural History**

This Court issued an Order on December 6, 2016 that granted summary judgment for

Major Brezler, vacated the BOI's recommendation to separate, and mandated, in no uncertain

terms, that defendant "provid[e] plaintiff with documents that are relevant to his retaliation

claims and with a new BOI proceeding during which he can fully and fairly explore, *inter alia*,

those issues and complete the administrative record." Ex. 1 at 30.[2]  In so ruling, the Court found

that "although the government argues that the Navy scrupulously considered and rejected

plaintiff's retaliation claims during the administrative process, it is abundantly clear to this Court

that the administrative record was not fully developed on this critical issue because of the Navy's

failure to provide relevant documents, as mandated by its own discovery provision." *Id.* at 28-

29.  The Court further reasoned that "with the relevant documents on this issue, plaintiff may

have successfully obtained dismissal of the BOI for unlawful retaliation based upon his protected

communication with Congressman King." *Id.* at 29.

In spite of this Court's firm mandate and findings, the Marine Corps' highest show cause

authority, Deputy Commandant for Manpower and Reserve Affairs ("M&RA") Lieutenant

General Brilakis, directed the Commander of the Marine Forces Reserve ("MARFORRES") to

convene a BOI, while averring that "with respect to Major Brezler's allegation of unlawful

reprisal, the Department of Defense Inspector General did not substantiate the allegation, and, in

my view, ***there is no credible evidence*** that Major Brezler was originally directed to show cause

---

[2]  The body of the Court's opinion confirms the purpose of remand, stating that "the Court will
remand this matter . . . so that, consistent with the Navy's discovery rule, Major Brezler can
obtain ***all relevant documents on his retaliation claims*** and have a full and fair opportunity,
after receiving those materials, to present the evidence supporting his claim of retaliation . . . ."
*Id.* at 21 n.13 (emphasis added).

for any improper reason." Ex. 2 at 1 (emphasis added). The Deputy Commandant for M&RA reached his swift and peremptory predetermination without *any* additional facts or evidence that are now at the focus of Major Brezler's protracted discovery process. Subsequently on September 1, 2017, nearly nine months after the Court's decision, the Commander of MARFORRES notified Major Brezler that he intends to convene a BOI. Ex. 3 at 1.

**B.    The Government's Dilatory Conduct in Discovery**

Counsel for Major Brezler served discovery requests on October 19, 2017. Ex. 4. Those requests, tailored to this Court's findings and Order, enumerate a range of topics bearing on Major Brezler's retaliation claims, including as follows:

> A.   Documents concerning Major Brezler from July 1, 2012 to the present, including: the Department of Defense Inspector General ("DOD IG") and other investigations or disciplinary measures against Major Brezler; the preparation, approval or correction of Major Brezler's fitreps; personnel entries; Major Brezler's security clearance; Major Brezler's transfer to the IRR; Major Brezler's attachment to CBIRF; ODN entries; congressional inquiries ("CONGRINT"); the imposition of a legal hold on Major Brezler; the decision to order Major Brezler to the prior BOI; communications about the prior BOI; the preparation and approval of the transcripts by the stenographers and Recorder; the process and timing of reviewing, endorsing, and forwarding the prior BOI record and recommendation; the instant civil action; Colonel Kleis' November 8, 2016 declaration; the decision to order Major Brezler to a second BOI; and media inquiries;

> B.   Documents related to or responding to FOIA requests;

> C.   Documents and evidence to be presented at a second BOI;

D.  Documents related to the FOB Delhi attacks, Sarwar Jan or sexual abuse by Afghan forces;

E.  Documents concerning Major Brezler's laptop, including data, analysis and reports concerning the same;

F.  All orders, directives and regulations in effect from 2012 to 2013 concerning the possession, storage, handling, and deletion of classified materials on computers;

G.  All spillage reports since 2012 and the treatment and resolution of those matters by the Marine Corps and Navy;

H.  Documents sufficient to show all Marine Corps and Naval personnel subjected to a BOI since 2012, the misconduct alleged, and the dispositions of those matters;

I.  Documents (with identities redacted) sufficient to show all field grade or General officers for which a report of potential misconduct was made since 2012, the nature of the misconduct alleged, and the dispositions of those matters; and

J.  Documents consisting of, or referring to, studies, surveys, statistics, or summaries of matters involving the mishandling of classified materials, and the treatment and resolution of those matters by the Marine Corps and Navy.

*See id.* at 1-3.

For over five months after Major Brezler's counsel served the requests, the government failed to produce a single document in response. The parties held two meet and confer calls, first on February 20, 2018 and then May 4, 2018. Exs. 5-6. During those calls, Major Brezler's counsel explained the inadequacy of the government's response; underscored the incredulity of the government's insistence that they have met their discovery obligations; and reiterated their requests for documents concerning the key "inflection points" in this case. Ex. 5, at 40:5-11; *see*

*also* Ex. 6.  In discussing the requests, Major Brezler's counsel went through each request one by one, clarified substantive categories of documents that remain missing, stressed why the documents should exist, and explained why they are critical to ensure that Major Brezler has a "full and fair" opportunity to explore his retaliation and bad-faith claims at the intended BOI.[3]

The government often made no objection when counsel clarified and reiterated the requests, instead intimating that it would comply.  For instance, the Recorder conveyed that he understood Major Brezler's position as to Requests F to J and had "sufficient information . . . to formulate a more specific response and address it by the end of the week."  Ex. 5 at 104:2-7. These promises to follow up (and others like it) were not borne out.  The government further conceded that it had not taken integral steps to collect and review documents that could be relevant.  On February 20, for example, it admitted that "the recorders have not made any request independently to search e-mails to facilitate the BOI."  *Id.* at 33:16-20.  The government has not amended that assertion, and it is believed nothing more than incomplete and poorly maintained databases were searched.  Bowe Decl. ¶ 6.  In fact, the government even went so far as to ask Major Brezler's counsel where to look for discovery.  *See* Ex. 6 at 3:19-21 ("If it's in existence, let us know where you think we can find it and we'll go from there.").

Spurred by repeated demands and prodding from Major Brezler's counsel, discovery gradually trickled in via ad-hoc, rolling productions made at sporadic points in time starting in

---

[3]  The categories of documents discussed included those concerning the preliminary investigation (Ex. 5 at 38:3-20); the inconsistent responses to the King CONGRINT (43:23-44:20); the decision to impose a legal hold on Major Brezler (44:21-45:3); the DONCAF review and Major Brezler's security clearance (46:23-48:3); ODN drafts and metadata (48:9-17); the DoD IG investigation (50:9-25); communications stemming from the late-August 2013 "Ground Truth" email chains (45:4-46:5); Colonel Kleis' warning to Major Brezler's military counsel to "take it easy" at the first BOI (74:23-75:16); the BOI transcripts (78:7-10); and any decision to order Major Brezler to a second BOI (83:9-10).

late-March and continuing every few weeks until late-August 2018. *Id.* ¶ 8. The scattershot, piecemeal discovery from the government contains a litany of gaps and deficiencies.

To date, the government has produced virtually no documents that bear on the issue of retaliation. *Id.* ¶ 9. For instance, only a couple of documents produced, in total, concern critical issues and events that unfolded prior to the King CONGRINT – namely, Major Brezler's attachment to Chemical Biological Incident Response Force ("CBIRF"); his transfer to the Individual Ready Reserve ("IRR"); drafts of the U.S. Marine Corps Forces Reserves ("MARFORRES") Officer Disciplinary Notebook ("ODN") entries and their underlying metadata; Department of the Navy Central Adjudication Facility ("DONCAF") review, and Major Brezler's security clearance. *Id.* ¶ 10.

The government also has failed to produce documents that elucidate the Marine Corps' responses to Congressman Peter King's inquiry ("King CONGRINT"). *Id.* ¶ 11. For instance, the record shows that the government prepared two, inconsistent responses to the King CONGRINT. The first draft, prepared by Colonel Whisnant on July 27, opined that Colonel LeSavage's adverse fitness report ("FITREP") was improper, while the final draft, prepared by Major Burns on August 12, outright abandoned that assessment. The government had decided to scrap Colonel Whisnant's response and order Major Burns to prepare an alternate response, yet has produced virtually nothing to clarify including who spearheaded those decisions and the bases for such determinations.

The government has similarly failed to produce documents that clarify key events that transpired from August 25, 2013, the day the *Marine Corps Times* story on Major Brezler broke, to August 30, 2013, the day General Mills ordered Major Brezler to show cause before a BOI. *Id.* ¶ 12. Major Brezler's counsel explained on both meet and confer calls that years ago they

6

obtained, through FOIA, a handful of "Ground Truth" email chains among senior commanders of the Marine Corps.  Those previously obtained emails establish that follow-up communications between the senior commanders and their staff should exist.  For instance, on August 26, 2013, General Hartsell emailed Colonel Smith, the commanding officer of the 25th Marines, assuring him that "FYI - Everyone's tracking.  MFR CoS is working. PAO's working, Mike LeSavage has spoke to Gen Neller. Attached is the 12 Aug OLA response to Rep King's CONGRINT. MFR is forwarding this to MarCent as well…"  Ex. 7 (BS51-00000087) (reproducing MARFORRES 2014000001 000082).  Yet the discovery is devoid of such communications.

Indeed, it appears that emails were not even collected from General Hartsell.  Bowe Decl. ¶ 13.  Similarly, emails collected from Commandant Amos total approximately 30 pages.  *Id.* ¶ 14.  None of those emails relate to the "Ground Truth" email chains from late-August 2013. Likewise, emails culled from General Mills span approximately 70 pages total.  *Id.* ¶ 15.  Not a single one is from the critical late-August 2013 time period, when he assumed command of MARFORRES on August 28, 2013 and ordered Major Brezler to a BOI two days later.  The discovery does not include a paper trail documenting the purported BOI "package" supposedly waiting for General Mills when he assumed command; or Colonel Kleis' decision to present Major Brezler's "package" to General Mills.  *Id.* ¶ 16.

The defects to the government's discovery do not end there.  The productions are also missing documents that clarify key events that occurred after Major Brezler was ordered to a BOI.  *Id.* ¶ 17.  To illustrate, in late-October 2013, Colonel Kleis had *ex parte* warned Major Amelia Kays, Major Brezler's military counsel for the first BOI, that she should "take it easy" or "things might not go well" for Major Brezler.  (Dkt. No. 60-28 (8/29/16 Declaration of Kevin Carroll), ¶ 7.)  The government has produced no documents on Colonel Kleis' warning.  Bowe

Decl. ¶ 17.  Moreover, the Marine Corps had prepared two transcripts of the first BOI that had to be "verbatim" under Marine Corps regulations, and yet were anything but.  Both transcripts contained hundreds of "inaudible" portions and were strikingly different from each other in all other respects.  The government has produced nothing that clarifies the preparation of these two transcripts, and in particular, that explains why two certified transcripts based on the same audio recording of the same hearing could differ to such a large degree.  *Id.* ¶ 18.

Moreover, the government has produced virtually nothing on its stated intent to convene another BOI, even though documents concerning the same should exist.  *Id.* ¶ 19.  For instance, in a September 24, 2017 email, the Secretary of the Navy's Deputy Chief of Staff, Emily Grace Mate, sent an email to General Glenn Walters titled "Item of Interest" and apprises him that "I sent a message yesterday and just wanted to quickly provide a heads up of what seems a sensitive item of interest for your SA since it falls in your/CMC's AO.  I am sure you are tracking but there is a very recent interest in the Maj Brezler case.  I would assume this is due to the timing of where his case/process is at the moment."  Ex. 8 (BS36-0094); *see also* Ex. 2.  The government has likewise produced nothing to pinpoint what documents and evidence it plans to present at the intended BOI.  Bowe Decl. ¶ 20.

In addition, the government has produced no documents in response to requests G-J.  *Id.* ¶ 21.  But, as Major Brezler's counsel explained in careful detail on the parties' first meet and confer call, each of those requests go to a core aspect of Major Brezler's retaliation claims:  that his spillage case was treated more harshly than other spillage cases that arose in similar, or more serious, contexts around the same time.  *See, e.g.*, Ex. 5 at 94:7-96:13; *see also* Ex. 1 at 20 n.13 & 25-26 n.6 (recognizing that Major Brezler argues "the separation decision was arbitrary and capricious because the government treated similar security lapses with greater leniency," but

declining to reach this issue because Defendant's failure to produce relevant documents alone justified remand).

Compounding these discovery defects, more than half of the documents produced are non-responsive. Bowe Decl. ¶ 22. Many, in fact, have nothing to do with Major Brezler. Countless emails are "junk mail." *See, e.g.*, Ex. 9 (BS25-0071 (7/2/2015 email titled, "Chaos after dolphin leaps onto boat, breaks woman's ankles")). Bowe Decl. ¶ 22. A number of emails appear to have been produced simply because they contain the phrase "ground truth," even though they do not remotely relate to Commandant Amos' August 26, 2013 email using the same phrase. *See, e.g.*, Ex. 10 (BS21-0004 (10/17/2006 email from Lieutenant General James Mattis to Newt Gingrich titled, "Ground Truth in Iraq")). Bowe Decl. ¶ 23.

The "responsive" documents, in turn, are replete with problems. Over half contain plain defects or are redundant. *Id.* ¶¶ 24-25. For instance, over 100 documents are almost fully redacted, with spurious bases for the redactions. *Id.* ¶ 26. Numerous emails are missing attachments. *Id.* ¶ 27. *See, e.g.*, Ex. 11 (BS36-0100 (9/25/2017 email from Major General Ewers to General Neller, which outright withholds an attachment titled "Info Paper SecNav Brief 20170926" designated simply as "redacted" in a privilege log). And over 250 documents are exact copies of documents already produced – whether through FOIA, as part of the Administrative Record, or as part of the piecemeal discovery made this year, Bowe Decl. ¶ 28 – and thus do nothing to rectify the factual record that this Court deemed incomplete. Ex. 1 at 30.

Moreover, the government has failed to produce even basic investigation documents which both parties agree should be produced. Bowe Decl. ¶ 29. For example, Major Jason Wareham, USMC, Individual Military Counsel detailed to represent Major Brezler at the intended BOI hearing, has not yet received the NCIS Reports of Investigations ("ROIs")

underpinning the hearing. *Id.*; Ex. 12. Major Wareham is currently serving as detailed defense counsel representing Guantanamo detainees on capital trial for the Military Commissions Defense Organization in the Washington, DC area. Bowe Decl. ¶ 29. In this position, Major Wareham is cleared to access classified material at the Top Secret/Sensitive Compartmented Information/Special Access Program level – the highest clearance available to Department of Defense personnel. *Id.* Commensurate with his representation there, Major Wareham's own office is entirely encased in a secured space which allows for him to access SECRET materials on classified computer systems from his desk. *Id.*

Under these conditions, Major Wareham requested transfer of the SECRET classified NCIS Report of Investigation (similar to F.B.I. 302 reports) via SIPR (classified internet) so that he might review and work with the material. Ex. 12 at 2. In agreement, Major Hodge, a Recorder for the government, forwarded a request for transfer of the material on May 10, 2018. *Id.* at 1. To date, there has been no production of these basic investigation materials even without objection.[4] *Id.* ¶ 31. In addition to the retaliation issues at play, the hearing cannot go forward if Major Brezler's counsel cannot fully analyze and investigate the government's case.

Major Brezler's counsel set forth the myriad deficiencies to the government's discovery in a letter to the government dated August 28, 2018 and gave notice that it will move for contempt and other relief if the missing documents are not produced by September 4, 2018. Ex. 13. On September 4, 2018, the government responded by letter and yet again attempted to proffer excuses for its noncompliance. Ex. 14. For instance, it conceded that it failed to respond

---

[4] The government, prior to Major Wareham's production request, arranged for physical visits to NCISHQ in Quantico, Virginia to review the ROIs. *Id.* ¶ 29. But given the voluminous documents and names, internally conflicting classification markings, and standard practice of producing these documents to respondent's counsel, Major Wareham requested transfer via his SIPR email. *Id.* ¶ 30. Though government counsel agreed to do so, they have yet to act. *Id.*

to at least four of the ten document requests that Major Brezler propounded, yet tried to explain away its failure by pointing to the government's responses and objections.  This excuse, however, ignores the government's own representations on the parties' subsequent meet and confer call that it "understood" the scope and purpose of the request, and its nexus to Major Brezler's theory of retaliation.  Ex. 5 at 103:16-104:7.  The government also claimed to have responded to Major Brezler's request for documents and evidence it plans to present at the intended BOI because it reproduced the entire record for the first BOI; posited that the remaining "steps" in the "standard" BOI process bar a Court from taking remedial action for a violation of its own Order; and essentially passed the buck to Major Brezler's counsel to tell it where to look within its own system and files, in order to produce its own documents and comply with the Court's Order dated 21 months prior.  Ex. 14.

The government's continuing failure to produce requisite documents has frustrated Major Brezler's ability to prepare his defense at the intended BOI hearing, stagnated the adjudication of his case, and put his career on hold.  Bowe Decl. ¶ 33.  To illustrate, Major Brezler received a notification of change in reserve status on June 13, 2018, which transferred him to the standby reserve-inactive status list ("ISL") for his "failure" to meet minimum ready reserve participation requirements.  Ex. 15.  Later, on August 31, 2018, Major Brezler's request for reserve billet status was denied expressly due to his "open BOI."  Ex. 16.  Thus, Major Brezler has suffered and continues to suffer incurable prejudice as a result of the government's delays.  Bowe Decl. ¶ 33.

## ARGUMENT

## I.    CIVIL CONTEMPT IS WARRANTED

The government's direct violation of the Court's December 6, 2016 Order warrants a finding of contempt against it.  As this Court has counseled, judges possess "inherent power to

enforce compliance with their lawful orders through contempt proceedings." *New York v. U.S. Capital Funding*, LLC, No. 09-CV-0004 JFB ETB, 2011 WL 3489914, at *5 (E.D.N.Y. Aug. 9, 2011) (Bianco, J.) (citing *Shillitani v. United States*, 384 U.S. 364, 369-70 (1966)).  Civil contempt, while a "potent" remedy, "is not a discretionary matter; if a court order has been violated, the court must make the injured party whole." *Yash Raj Films (USA), Inc. v. Bobby Music Co. & Sporting Goods*, No. 01 CV 8378 JFB CLP, 2006 WL 2792756, at *7 (E.D.N.Y. Sept. 27, 2006) (Bianco, J.) (adopting Report and Recommendation of Magistrate Judge Pollak, which granted the plaintiff's motion for contempt and sanctions against the defendants); *see also Aspira of New York, Inc. v. Bd. of Ed. of City of New York*, 423 F. Supp. 647, 649 (S.D.N.Y. 1976) (court has "duty to declare" contempt against the defendants in view of their "failures in meaningful respects to achieve substantial and diligent compliance" with orders); *Cobell v. Babbitt*, 37 F. Supp. 2d 6, 39 (D.D.C. 1999) (holding cabinet secretaries and assistant secretary of the Treasury and Interior departments in civil contempt for their failure to comply with discovery orders dictating the production of documents).

Courts assess three elements in the light most favorable to the moving party to decide whether civil contempt is proper:  (1) the order the contemnor failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the contemnor has not diligently attempted to comply in a reasonable manner.  *See New York Nat'l Org. for Women v. Terry*, 886 F.2d 1339, 1351 (2d Cir. 1989).  The contemnor's violation need not be willful or in bad faith.  *See U.S. Capital Funding*, 2011 WL 3489914, at *5; *see also McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191 (1949) ("An act does not cease to be a violation of a law and of a decree merely because it may have been done innocently.").  All three elements are present here.

**A.    The December 6, 2016 Order Is Clear and Unambiguous.**

There can be no dispute that the Court's December 6, 2016 Order is "clear and unambiguous."  The Order dictates, in "specific and definite" terms, that the government must produce "documents that are relevant to his retaliation claims and with a new BOI proceeding during which he can fully and fairly explore, *inter alia*, those issues and complete the administrative record."  Ex. 1 at 30; *New York State Nat'l Org. for Women*, 886 F.2d at 1352 (holding that order is "clear and unambiguous" where it is "specific and definite enough to apprise those within its scope of the conduct that is being proscribed" or required).  It is further "clear that the government was aware of the Order and what it required."  *See U.S. Capital Funding*, 2011 WL 3489914, at *5 (finding it "clear that defendant understood its obligations under the Orders because defendant's attorneys were in contact with [plaintiff] regarding payments under the Orders and production of the required reporting and documents under the Consent Decree).

**B.    The Government's Violation of the Court's Order Is Clear and Convincing.**

The record furnishes clear and convincing proof that the government has violated the Court's December 6, 2016 Order.  "[T]he clear and convincing standard requires a quantum of proof adequate to demonstrate a 'reasonable certainty' that a violation occurred."  *Levin v. Tiber Holding Corp.*, 277 F.3d 243, 250 (2d Cir. 2002) (internal citation omitted).  That threshold is met here, as "[t]he affidavit and exhibits submitted by plaintiff" on Major Brezler's motion "overwhelmingly demonstrate" the government's failure to comply with the December 6, 2016 Order.  *ACLI Gov't Sec., Inc. v. Rhoades*, 989 F. Supp. 462, 466 (S.D.N.Y. 1997), *aff'd*, 159 F.3d 1345 (2d Cir. 1998).

The government has produced virtually nothing bearing on Major Brezler's retaliation claims.  The discovery is devoid of documents concerning the critical "inflection points" in this

case.  For instance, only a couple of documents, *in total*, concern the critical "inflection points" leading up to the decision to order Major Brezler to a BOI – namely, Major Brezler's attachment to CBIRF; his transfer to the IRR; drafts of MARFORRES' ODN entries and their underlying metadata; DONCAF review and Major Brezler's security clearance; the decision to abandon Colonel Whisnant's response to the CONGRIT in favor of Major Burns'; and the imposition of a legal hold on Major Brezler.

Inexplicably, the government failed to produce documents that shed light on the decision to order Major Brezler to the prior BOI.  The discovery is devoid of emails between the senior commanders on the "Ground Truth" email chains and their staff.  The government has also failed to produce the paper trail concerning the purported BOI "package" waiting for General Mills when he assumed command of MARFORRES on August 28, 2013; or Colonel Kleis' decision to present Major Brezler's "package" to General Mills after he assumed command.

Further, there is a dearth of documents concerning key "inflection points" that postdate Major Brezler's BOI order.  The government has not produced a single document on the puzzling creation of two strikingly distinct BOI transcripts, each defective in its own way, based on the same audio recording for the same hearing in the same case.  Communications supplying context for Colonel Kleis' threat to Major Kays to "take it easy" are nowhere to be found.  The government has also produced virtually nothing concerning its stated intent to convene another BOI.  Nor has the government has produced anything to indicate what documents and evidence it plans to present at the intended BOI.  Finally, as even the government conceded, it has produced not a single document responsive to requests G to J.

This litany of document categories that remain missing – and the government's own admissions that its counsel does not even know where to look – establishes with not just

14

reasonable, but "overwhelming," certainty that the government has not complied with the Court's December 6, 2016 Order.  *Rhoades*, 989 F. Supp. at 466.[5]

**C.**   **The Government Has Failed to Diligently Comply with the Court's Order.**

The record reveals compelling evidence that the government failed to undertake diligent efforts to comply with the Court's December 6, 2016 Order.  This Court's decision in *New York v. U.S. Capital Funding*, *supra*, is instructive.  2011 WL 3489914 (Bianco, J.).  There, the Court held that the defendant contemnor did not diligently comply with the Court's Orders, including to produce documents that bear on the plaintiff's claim of discrimination and the defendant's departure from the standard brokerage fees it used in the same time period.  *Id.* at *7.  The Court found that even though the defendant "has been afforded every opportunity" to comply, and plaintiff "engaged in time-consuming and resource intensive efforts to get defendant to comply," the defendant continued to "evade[] its obligations" to produce requisite documents.  *Id.*

Likewise, in *United States v. Asero*, No. 07-MC-334, 2009 WL 580428 (E.D.N.Y. Mar. 5, 2009), the Court issued an Order directing the defendant to produce tax returns for seven tax years.  *Id.* at *3.  Over one year later, and "after repeated delays," the defendant produced returns for 2001 and 2002.  Then, "after additional delays," he produced returns for 2003 and 2004.  The Court held that the defendant failed to make diligent efforts to produce documents required by the Order, reasoning that the "defendant responded with piecemeal disclosure of the required documents" despite having adequate time to produce.  *Id.*  The Court also rejected the defendant's belated claim that returns for 1997 and 1998 did not exist, finding that this "late

---

[5]  The government has proffered no credible claim of non-existence or privilege that shields these missing documents from disclosure.  Under Second Circuit law, the government shoulders the burden of "proving 'plainly and unmistakably' that compliance is impossible."  *In re Marc Rich & Co., A.G.*, 736 F.2d 864, 866 (2d Cir. 1984).  Here, based on the parties' negotiations, the government has not come close to overcoming such burden.

claim . . . shows a striking disregard for the seriousness of these proceedings." *Id.*; *see also Casale v. Kelly*, 710 F. Supp. 2d 347, 360-61 (S.D.N.Y. 2010) (holding that City's lack of diligence justified a finding of contempt, and noting that the City's "catalog of the actions taken by [it] masks and obscures the City's generally lethargic approach to compliance with the Orders," as "[n]early every measure that the City has undertaken has been at the direction of the Court, the prodding of plaintiffs, and/or under the threat of sanctions").

The Court's well-reasoned decisions in these analogous cases compel the identical result here for a host of reasons. ***First***, the government has had ample time and every opportunity to complete its production and satisfy this Court's December 6, 2016 Order. *See Capital Funding*, 2011 WL 3489914, at *7. The Court's Order, issued 21 months ago, put the government on notice of the discrete subject matters and issue areas subject to discovery on remand. Major Brezler's highly detailed document requests, served 11 months ago, confirmed for the government the key "inflection points" that he is interested in exploring at the intended BOI hearing. *See Granados v. Gold Coast Tennis, Inc.*, No. 12-CV-4016 JFB WDW, 2013 WL 3766582, at *2 (E.D.N.Y. July 16, 2013) (Bianco, J.) (defendants' noncompliance with discovery demands for four months qualifies as an amount of time sufficient to warrant contempt and sanctions).

***Second***, Major Brezler's counsel has made assiduous efforts to nudge the government toward compliance. *See Casale*, 710 F. Supp. 2d at 360-61. On the parties' meet and confer discussions, Major Brezler's counsel carefully explained each request, one by one, to clarify any ambiguities, resolve any confusion and attempt to reach a mutual understanding of what Major Brezler needs for his retaliation claim – and of what the government must produce in accordance with the Court's Order. Despite all of Major Brezler's efforts, prodding and patience, the

government has plodded through the discovery process with lethargy, half-hearted promises and gap-ridden productions.  *See id.*

*Third*, the innumerable gaps and deficiencies that permeate the government's piecemeal productions speak for themselves and belie any contention that the government made diligent efforts to meet its discovery obligations under the December 6, 2016 Order.  *See Aspira*, 423 F. Supp. at 649 (defendants' "failures in *meaningful* respects to achieve substantial and diligent compliance" warranted finding of contempt).  For instance, it defies common sense that emails collected from Commandant Amos total a paltry 30 pages, none of which relate to the "Ground Truth" email chains from late-August 2013.  Similarly, emails culled from General Mills span about 70 pages total, and not a single one is from the critical late-August 2013 time period, when he assumed command and ordered Major Brezler to a BOI just two days later.  In fact, the one responsive, non-redundant document collected from General Mills that is dated anywhere close to that time period is from late-October 2013, nearly two months after the BOI was ordered; and, despite it being unclassified, that lone document is inexplicably contained within the SIPR classified system, heavily restricting its dissemination and use.  Bowe Decl. ¶ 15.  Even worse, it appears that the government has not even bothered to collect documents from General Hartsell. For a hearing with such publicity, an investigation spanning several theaters of operations, attention and interest from the highest levels of leadership, the meager communications produced defies common military administrative understanding.  There should exist communications, at a minimum, at each command or administrative level (*e.g.*, Commandant's staff, Office of the Staff Judge Advocate to the Commandant, Manpower and Reserve Affairs, Marine Forces Reserves, 25th Regiment, among other divisions, all with judge advocates, administrators, commanders, and officers-in-charge likely creating some record or communication related to the

17

investigation and the two hearings).  It is mystifying that, so far, there has been mostly silence from each of those subordinate units and their personnel.[6]

The fragments of evidence Plaintiff had secured through FOIA further expose the disparities in the government's discovery.  For instance, on August 26, 2013, hours after the *Marine Corps Times* story broke, Commandant Amos demanded the "Ground Truth" on Major Brezler, which sparked a flurry of emails among numerous senior commanders.  The "Ground Truth" email chains had spurred follow-up communications between the senior commanders and their staff, and this is clear from General Hartsell's contemporaneous statement that "[e]veryone's tracking. MFR CoS is working. PAO's working, Mike LeSavage has spoke to Gen Neller. Attached is the 12 Aug OLA response to Rep King's CONGRINT. MFR is forwarding this to MarCent as well…"  Ex. 7 (BS51-00000087) (reproducing MARFORRES 2014000001 000082).  The government, however, has failed to produce evidence of those follow-up communications.  The most plausible reason for this glaring gap is the government's lack of diligence in conducting reasonable searches for the information requested.

Similarly, the government has insisted that there is no formal BOI "package" available from Major Brezler's first BOI and has not produced any such package.  But other portions of the record, including General Mills' own account, contradict that claim.  In an interview with the Inspector General, General Mills referred to a "package" multiple times and purported that a package was prepared before he assumed command.  *See* Ex. 17 (BS 32-0001-70 at 9:3-8, 33:1-4

---

[6]  The government insisted both on the meet and confer calls, as well as its letter in response to Major Brezler's contempt letter, that their search of automated systems or archives satisfied its burden.  Major Brezler intends to present evidence that these systems are wholly inadequate as record keeping requirements and management programs have been so poorly integrated and maintained that these electronic systems lack any meaningful collection of records.

(averring that BOI package was "pre-prepared before" General Mills assumed command, and "was not saved" for the General, but rather, "was just stacking up")).

Likewise, the government produced virtually nothing concerning its stated intent to convene another BOI, despite that documentation, including a lengthy paper trail leading up to the government's September 1, 2017 correspondence (Ex. 3), should exist.  For instance, an email from the Secretary of the Navy's Deputy Chief of Staff dated that same month evinces this discrepancy by underscoring the "very recent interest" in Major Brezler's case.  Ex. 8 (36-0094).

***Fourth***, what the government ***did*** produce is just as indicative of its dilatory conduct in discovery as what it did not produce.  More than half of the documents produced are non-responsive.  Many, in fact, have nothing to do with Major Brezler.  Countless documents are blatantly non-responsive junk mail.  *See, e.g.*, Ex. 9 (BS25-0071 (7/2/2015 email titled, "Chaos after dolphin leaps onto boat, breaks woman's ankles")).  A number of emails appear to have been produced simply because they happened to contain the term "ground truth" even though they are not at all related to Commandant Amos' August 26, 2013 email employing the same term, such as an October 2006 email from former Marine Corps General James Mattis to former House Speaker Newt Gingrich concerning the Iraq War.  Ex. 10 (BS21-0004).

The bulk of the remaining, broadly "responsive" documents are replete with problems.  A host of "responsive" emails are missing attachments.  *E.g.*, Ex. 11.  The government does not, nor can it, provide any credible reason for why attachments are missing from parent emails.  In addition, a random subset of the "responsive" documents are exact duplicates of documents already produced – whether as part of the scattered discovery made this year, as part of the Administrative Record, or through FOIA – and thus do nothing to rectify the record that this Court has deemed to be incomplete.  Ex. 1 at 30.

Further, heavy-handed and questionable redactions appear throughout the government's piecemeal discovery.  In fact, over 100 documents are fully or almost fully redacted.  The government's erroneous assertions of deliberative process or attorney-client privilege over those documents do not shield them from disclosure.  Neither privilege has application where, as here, government misconduct and bad faith are at issue or many of the claimed attorney-client communications include multiple officers likely outside the privilege or appear facially to be discussing aspects of case facts, leadership, or policy, not legal analysis or advice.  *See Convertino v. United States Dep't of Justice*, 669 F. Supp. 2d 1, 5 (D.D.C. 2009) (deliberative process privilege "routinely denied" where documents may uncover government misconduct, because society has interest in honest government); *Chaplaincy of Full Gospel Churches v. Johnson*, 217 F.R.D. 250, 257 (D.D.C. 2003) (under government misconduct exception to deliberative process privilege, court does not engage in usual balancing test, and instead concludes that privilege does not "enter the picture at all"); *In re Lindsey*, 158 F.3d 1263, 1282, 1285 (D.C. Cir. 1998) ("the [government] attorney-client privilege does not protect general policy or political advice – even when given by lawyers – but only communications with lawyers for the purpose of obtaining legal assistance").

Additionally, it defies common sense that either of those privileges could be asserted when the issue Plaintiff seeks discovery on *is* the deliberative process because that deliberation may have been unlawful retaliation in violation of 10 U.S.C. § 1034.  Neither government officers nor their counsel should be able to avoid disclosure of materials relevant to unlawful retaliation by citing any privilege.  Such an application of privilege would swallow the retaliation rule whole so long as that retaliation was done at a high enough level of an agency that the government could claim the privilege.

**Finally**, the government has made perfunctory excuses for its failure to produce, which "show a striking disregard for the seriousness" of the discovery process and its duty to "meaningfully" comply with the Court's Order. *Asero*, 2009 WL 580428, at \*3. For instance, the government's response to Major Brezler's observation that it has not disclosed the evidence it plans to present at the intended BOI is that it did in fact comply with this request, because it reproduced "the complete record from [the] first BOI." Ex. 14 at 1. Such an excuse is superficial on its face. That record includes exculpatory evidence that Major Brezler himself had sought to admit, such as letters from dozens of character witnesses.

The government has also brushed aside its conceded failure to produce a single document in response to requests G to J, citing its position from November 2017 that those requests were overbroad. But what the government seemed to have neglected in its brusque dismissal of the requests is that the "overbreadth" objection is moot. On the parties' subsequent meet and confer call, Major Brezler had clarified the significance of those requests. The government did not reiterate its overbreadth objection or otherwise refuse to produce such documents, but rather, it intimated that it "understood" Major Brezler's position and will follow up with a more specific response (which never bore out). Ex. 5 at 103:16-104:7.

In addition, the government has insisted that the "steps" that remain in the "standard" BOI process bar a Court from taking remedial action for a violation of its own Order. Ex. 14 at 2. The government is wrong. The procedural hurdles it attempts to invoke arise in the context where a case pending before an agency should never have reached the court in the first place. The principle does not apply where, as here, a federal agency directly violates an Order this Court issued in a case over which it has jurisdictional authority. *See Johnson v. Comm'r of Soc. Sec.*, 64 F. Supp. 2d 55, 57 (D. Conn. 1999) (district court retained continuing jurisdiction of

case it remanded to the SSA "for further proceedings and consideration of new evidence"); *see also In re United Mine Workers of Am. Int'l Union*, 190 F.3d 545, 556 (D.C. Cir. 1999) (court of appeals will retain jurisdiction over case until the agency's actions have been completed).

Therefore, the record on this motion is abundantly clear that the government's lethargic and cursory approach to discovery falls short of the legal standard for diligence. *See Aspira*, 423 F. Supp. at 654 (holding defendants in contempt, as they "have borne with seeming equanimity long periods of nonperformance, inadequate performance, . . . tolerated slipshod procedures[,] . . . failed to enlist or order the placement of needed and available personnel [and] have displayed an evident sense of nonurgency bordering on indifference"). The government's conduct to date chronicles its lack of diligence, contradicting what it has promised to do and how it self-characterizes its actions. *See Casale*, 710 F. Supp. 2d at 360-61 (the City's own "catalog of the actions taken by [it] masks and obscures the City's generally lethargic approach to compliance with the Orders"). In sum, the government's sheer failure to comply with the Court's Order compels a finding of contempt in this case.

## II.    CIVIL SANCTIONS DISMISSING THE INTENDED BOI ARE WARRANTED

The protracted delay, incurable prejudice and futility due to the government's flagrant failure to comply with this Court's clear Order to produce warrants dismissal of the intended BOI proceeding in its entirety and with prejudice. Under the APA, "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702. It is settled that 5 U.S.C. § 706(1) empowers a court to deem agency inaction as "equivalent to dismissal" where such inaction or delay is "unreasonable" and inflicts "serious prejudice" on a party. *Houseton v. Nimmo*, 670 F.2d 1375, 1378 (9th Cir. 1982). This case meets both prongs.

First, the government's protracted delay in achieving even a modicum of meaningful compliance with the Court's Order is unreasonable.  Its delay has persisted for over 21 months since the Court issued its Order and over 11 months since Plaintiff's counsel served detailed document demands that enumerated, with specificity, the precise disclosures Major Brezler must obtain to explore his retaliation claim at the intended BOI hearing.  Despite the long passage of time and ample opportunities to locate, search, review and produce relevant documents, the Government has failed to do so in accordance with this Court's mandate.  Thus, the government's delay, which cannot be excused, is plainly unreasonable.  *See Muwekma Tribe v. Babbitt*, 133 F. Supp. 2d 30, 37 (D.D.C. 2000) (delay of approximately two years "unreasonable"); *Houseton*, 670 F.2d at  1378 (sixteen month delay "unreasonable"); *see also Ensco Offshore Co. v. Salazar*, 781 F. Supp. 2d 332, 338 (E.D. La. 2011) (four-month delay "unreasonable" in light of statute requiring expeditious review).  *Cf. Cordius Tr. v. Kummerfeld Assocs., Inc.*, 658 F. Supp. 2d 512, 526 (S.D.N.Y. 2009) (issuing order granting relief of contempt and sanctions sought ***less than three months*** after the court had ordered defendants to comply with post-judgment document production requests, and defendants failed to produce the vast majority of required documents).[7]

Further, the government's failure to produce relevant documents has and will continue to inflict incurable prejudice on Major Brezler.  Its contumacy has frustrated Major Brezler's ability to prepare his defense before the intended BOI, stagnated the adjudication of his case and impaired his career and ability to train.  As the record on this motion reflects, Major Brezler

---

[7]  Indeed, Department of the Navy regulations state that the guideline for processing a separation proceeding is five years, as a matter of equity.  *See* SECNAVINST 1920.6C, Encl. 4, at 8 ("Performance or conduct identified more than 5 years prior to the initiation of processing for separation under paragraph 3 of this enclosure shall not form the basis for processing under this enclosure.").  Here, the BOI against Major Brezler was first initiated over six years ago.

received a notification of change in reserve status on June 13, 2018, which transferred him to the

standby reserve-ISL for his "failure" to meet minimum ready reserve participation requirements.

Ex. 15.  Crucially, however, Major Brezler cannot meet such requirements and reverse his

demoted reserve status because he "still has an open BOI."  Ex. 16.  Major Brezler's demoted

reserve status evinces the incurable prejudice that the government's delay has inflicted on him.

*See Houseton*, 670 F.2d at 1378 (Veteran Administration's "failure . . . to act . . . causes plaintiff

irreparable injury since she is not receiving the training to which she is entitled"); *see also EEOC*

*v. Moore Group, Inc.*, 416 F. Supp. 1002, 1004 (N.D. Ga. 1976) (EEOC's delay seriously

prejudiced respondent by hampering its ability to prepare its defense against the agency's

investigation).  The government's unreasonable and prejudicial delay in producing documents

merits dismissal of the BOI proceeding.[8]

Reinforcing the need, and this Court's authority, to dismiss the BOI is Rule 37(b) of the

Federal Rules of Civil Procedure, which allows a court to "dismiss[] the action or proceeding in

whole or in part" if a contemnor "fails to obey an order to provide . . . discovery," Fed. R. Civ. P.

37(b)(2)(A)(v); *see also Jones v. Niagara Frontier Transp. Auth. (NFTA)*, 836 F.2d 731, 735 (2d

Cir. 1987) (affirming dismissal of action under Rule 37, and reasoning that "in this day of

burgeoning, costly and protracted litigation courts should not shrink from imposing harsh

sanctions where . . . they are clearly warranted") (internal citation omitted), *cert. denied*, 499

---

[8]  Moreover, 5 U.S.C. § 706(2) provides additional grounds for dismissing this action.  Under
that provision, the Court is empowered to "hold unlawful and set aside" agency action, findings,
and conclusions found to be, *inter alia*, "arbitrary, capricious, an abuse of discretion, or
otherwise not in accordance with law," "in excess of statutory jurisdiction, authority, or
limitations, or short of statutory right" or "without observance of procedure required by law."
Here, the government's defiance of the Court's order to produce requisite documents (Ex. 1 at
30) is plainly "not in accordance with law"; "in excess of statutory . . . authority" under the
Court's prior interpretation of the APA; and "without observance of procedure required by law."
Thus, this Court is empowered to set aside and dismiss the BOI proceeding.

U.S. 943 (1991); *see also John B. Hull, Inc. v. Waterbury Petroleum Prod., Inc.*, 845 F.2d 1172,

1177 (2d Cir. 1988) (affirming dismissal plus award of $27,500 in fees under Rule 37(b), where

defendant "failed to provide any meaningful discovery concerning a core trial issue despite three

clear court orders" directing that it do so). The discovery abuses that Rule 37(b) sanctions seek

to rectify are closely analogous to Defendant's flagrant violations here. Thus, the same relief

should issue in our case.

Finally, the need for dismissing the intended BOI hearing at this particular juncture is

acute. In vacating the Secretary of the Navy's separation decision, the Court remanded the case

***on the express condition*** that the government produce the requisite documents to enable Major

Brezler to fully and fairly explore that claim at a new BOI hearing. The government's utter

failure to satisfy that condition, by providing the most basic discovery on a critical underlying

topic, vitiates and moots the whole purpose of holding another BOI hearing and of this Court's

decision to remand. It would be futile and wasteful for all parties and witnesses involved, and

unduly prejudicial for Major Brezler, to go through the motions and re-litigate the case before a

second BOI based on the same, corrupted evidentiary record that was before the first BOI. *Cf.*

*Queenan v. Heckler*, 581 F. Supp. 1216, 1218 (S.D.N.Y. 1984) (holding that "if there is no

[judicial] intervention at this point any remedy provided through proceedings on remand will,

realistically, be meaningless"); *see also Atwell v. Orr*, 589 F. Supp. 511, 517 (D.S.C. 1984)

(holding that plaintiff, an Air Force Sergeant fighting discharge, "has once completed the long,

arduous administrative process," and thus "[i]t would only encourage future defiance for this

court to require [plaintiff] to resort again to the administrative process"). Thus, the futility and

prejudice of holding a "new" BOI hearing based on the same, corrupted record that this Court

has found to be deficient as a matter of law warrants the dismissal of the intended BOI.

## CONCLUSION

For the reasons stated, Major Brezler respectfully requests that this Court grant his

motion for civil contempt and for sanctions against the United States Department of the Navy.

Dated:      New York, New York
            September 13, 2018

                              Respectfully submitted,

                              KASOWITZ BENSON TORRES LLP

                              By:   /s/ *Michael J. Bowe*
                                    Michael J. Bowe

                              1633 Broadway
                              New York, New York 10019
                              Tel: (212) 506-1700

                              *Pro bono counsel for Plaintiff Jason Brezler*