**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

JASON BREZLER,

               Plaintiff,

      v.

LIEUTENANT GENERAL RICHARD MILLS,
UNITED STATES MARINE CORPS, AND
UNITED STATES DEPARTMENT OF THE
NAVY,

               Defendants.

No. 14 Civ. 7424 (JFB) (GRB)


**MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF JASON BREZLER'S**
**MOTION FOR CONTEMPT AND SANCTIONS**

JEFFERSON B. SESSIONS III
United States Attorney General

RICHARD P. DONOGHUE
United States Attorney for the
Eastern District of New York

*Of Counsel:*
TALIA KRAEMER
Special Assistant United States Attorney
86 Chambers Street, 3rd Floor
New York, New York 10007
Telephone:  (212) 637-2822
Facsimile:  (212) 637-2702

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ......................................................................................1

BACKGROUND ........................................................................................................2

I.      Administrative Separation of Naval Officers ...................................................2

II.     Procedural History .........................................................................................3

        a.      Plaintiff's First BOI Proceedings............................................................3

        b.      Plaintiff's District Court Action............................................................4

III.    The Navy's Production of Records for Plaintiff's Second BOI .........................5

ARGUMENT ............................................................................................................8

I.      Legal Standards.............................................................................................8

II.     Plaintiff's Motion for Contempt Should Be Denied ........................................9

        a.      Because the BOI Process Is Ongoing, Plaintiff's Motion Is Premature .................9

        b.      Plaintiff Has Not Met His Burden of Showing Noncompliance with
                the Court's Remand Order by Clear and Convincing Evidence ...........................12

        c.      The Navy Is Diligently Attempting To Comply with the Remand Order .............18

III     Plaintiff's Request for Sanctions Should Be Denied .......................................22

CONCLUSION..........................................................................................................25

# TABLE OF AUTHORITIES

**CASES**                                                                                            **PAGE**

*A.V. by Versace, Inc. v. Gianni Versace, S.p.A.*,
    87 F. Supp. 2d 281 (S.D.N.Y. 2000)..........................................................................22

*Banco Del Atlantico, S.A. v. Woods Indus. Inc.*,
    519 F.3d 350 (7th Cir. 2008) .................................................................................23

*Beard v. Stahr*,
    370 U.S. 41 (1962)....................................................................................................11

*Brezler v. Mills*,
    86 F. Supp. 3d 208 (E.D.N.Y. 2015) ..............................................................*passim*

*Brezler v. Mills*,
    220 F. Supp. 3d 303 (E.D.N.Y. 2016) ............................................................*passim*

*Casale v. Kelly*,
    710 F. Supp. 2d 347 (S.D.N.Y. 2010).....................................................................18

*CBS Broad. Inc. v. FilmOn.com, Inc.*,
    814 F.3d 91 (2d Cir. 2016)...................................................................................9, 23

*Convertino v. U.S. Dep't of Justice*,
    669 F. Supp. 2d 1 (D.D.C. 2009) ............................................................................14

*Granados v. Gold Coast Tennis, Inc.*,
    No. 12 Civ. 4016 (JFB) (WDW), 2013 WL 3766582 (E.D.N.Y. July 16, 2013)............18

*Houseton v. Nimmo*,
    670 F.2d 1375 (9th Cir. 1982) ................................................................................25

*In re Delphi Corp.*,
    276 F.R.D. 81 (S.D.N.Y. 2011) ..............................................................................14

*Latino Officers Ass'n City of New York, Inc. v. City of New York*,
    558 F.3d 159 (2d Cir. 2009)............................................................................8, 9, 17, 18

*Margel v. E.G.L. Gem Lab Ltd.*,
    No. 04 Civ. 1514 (PAC) (HBP), 2008 WL 2224288 (S.D.N.Y. May 29, 2008).............15

*Mason Tenders Dist. Council of Greater N.Y. v. Phase Constr. Servs., Inc.*,
    318 F.R.D. 28 (S.D.N.Y. 2016) .........................................................................14, 15

*New York v. U.S. Capital Funding*,
  No. 09 Civ. 0004 (JFB) (ETB), 2011 WL 3489914 (E.D.N.Y. Aug. 9, 2011) ................ 18

*Norton v. S. Utah Wilderness Alliance*,
  542 U.S. 55 (2004) ......................................................................................................... 24

*Schustack v. Herren*,
  136 F. Supp. 850 (S.D.N.Y. 1955), *aff'd*, 234 F.2d 134 (2d Cir. 1956) .......................... 11

*Shawnee Trail Conservancy v. Nicholas*,
  343 F. Supp. 2d 687 (S.D. Ill. 2004) .............................................................................. 24

*Spallone v. United States*,
  493 U.S. 265 (1990) ................................................................................................... 9, 23

*United States v. Asero*,
  No. 07-MC-334, 2009 WL 580428 (E.D.N.Y. Mar. 5, 2009) ......................................... 19

*Winfield v. City of New York*,
  No. 15 Civ. 05236 (LTS) (KHP), 2018 WL 716013 (S.D.N.Y. Feb. 1, 2018) ................ 14

*Wright v. Ernst & Young LLP*,
  152 F.3d 169 (2d Cir. 1998) ........................................................................................... 24

*Yash Raj Films (USA), Inc. v. Bobby Music Co. & Sporting Goods*,
  No. 01 Civ. 8378 (JFB) (CLP), 2006 WL 2792756 (E.D.N.Y. Sept. 27, 2006) .......... 9, 22

**STATUTES**

5 U.S.C. § 706 ...................................................................................................................... 24

10 U.S.C. § 7861 .................................................................................................................. 11

**RULES**

Fed. R. Civ. P. 37 ................................................................................................................. 23

**OTHER**

SECNAVINST 1920.6C ................................................................................................. *passim*

Defendant the United States Department of the Navy (the "Navy" or "the government"),[1] by its attorney, Richard Donoghue, United States Attorney for the Eastern District of New York, respectfully submits this memorandum of law in opposition to Plaintiff Major Jason Brezler's ("Plaintiff") motion for contempt and sanctions.

## PRELIMINARY STATEMENT

Since Plaintiff served the government with extensive record requests for his Board of Inquiry ("BOI") proceedings, the Navy has been working diligently to respond to those requests and comply with the Court's 2016 remand order. The Marine Corps personnel responsible for initially responding to Plaintiff's requests, the Recorders for Major Brezler's BOI, have produced thousands of pages of records. They have provided itemized responses to Plaintiff's requests, service logs identifying document productions by category, and detailed privilege logs explaining the grounds for any withholdings. They have collected and searched emails for over 20 custodians. Along the way, the Recorders have repeatedly sought to confer with Plaintiff in good faith and have followed up the parties' conferences with additional productions.

In the meantime, Plaintiff has chosen to abandon the ongoing administrative proceedings and file a motion in this Court for contempt. But because the BOI process is ongoing, Plaintiff's motion is premature. The Recorders and Plaintiff are still exchanging records requests and responses. Moreover, once the Recorders have completed their productions, Plaintiff's records requests will be further considered by additional Navy personnel. Until the Secretary of the Navy's delegate takes action with respect to Major Brezler's case, the Secretary, to whom the Court's remand order was directed, will not have taken final action in response to the 2016 order.

---

[1] While still reflected in the case caption, defendants Lt. Gen. Richard Mills and the United States Marine Corps have been dismissed as defendants from this action. *See Brezler v. Mills*, 220 F. Supp. 3d 303, 306 n.1 (E.D.N.Y. 2016).

Even if Plaintiff's motion were ripe, Plaintiff has not borne his burden of proving by clear and convincing evidence that the Navy is noncompliant with the 2016 remand order. Nor has Plaintiff shown that the Navy has not been diligent in its attempts to comply with the remand order in a reasonable manner. As described above, the government's record search and disclosure efforts for the BOI proceeding have been substantial, and the Recorders have engaged Plaintiff in the administrative process in good faith. They continue to do so on an ongoing basis. Finally, even if some form of judicial relief were warranted at this stage—which it is not—the drastic remedy Plaintiff requests is unjustified. Plaintiff has cited no authority that supports his request for this Court to, as a preliminary remedy, permanently enjoin an ongoing military personnel proceeding. Accordingly, Plaintiff's motion should be denied.

## BACKGROUND

### I.     Administrative Separation of Naval Officers

The Navy has established procedures for the administrative separation of officer personnel, in order to "promote the readiness of the Naval Service . . . by maintaining the highest standards of conduct and performance." SECNAVINST 1920.6C ¶ 7; *see* Declaration of Lieutenant Colonel Adam M. King ("King Decl."), Ex. T. An officer may be separated for cause based, for example, on an officer's "[f]ailure to demonstrate acceptable qualities of leadership," "[c]ommission of a military or civilian offense" meeting certain criteria, or even a "[f]ailure to conform to prescribed standards of . . . personal appearance." *Id.* Encl. (3) ¶ 1(a)-(b).

The Deputy Chief of Staff for Manpower and Reserve Affairs ("DC (M&RA)") has the authority to direct that a BOI be convened to assist the Secretary of the Navy in determining whether an officer should be separated for cause or retained in the Marine Corps. *Id.* ¶ 13(d). At the BOI, a board of officers hears evidence and makes recommendations as to whether the

respondent officer should be separated and, if so, with what characterization of service. *Id.* Encl. (1) ¶ 7, Encl. (8) ¶ 11. If the board recommends separation, that recommendation is forwarded first to the "Convening Authority," the Commander of the Marine Forces Reserve, and then to the "Show Cause Authority," DC (M&RA), for review. *Id.* Encl. (8) ¶¶ 11, 13. If DC (M&RA) agrees that separation is warranted, DC (M&RA) forwards an endorsement to the Secretary of the Navy. *Id.* Encl. (8) ¶ 13. DC (M&RA) also has the power to terminate the proceedings. *Id.* The Secretary's delegate, the Assistant Secretary of the Navy for Manpower and Reserve Affairs ("Assistant Secretary"), makes a final decision on separation. *Id.* ¶ 13, Encl. (8) ¶ 14.

For a BOI, the respondent has the right to "[f]ull access to, and copies of, records relevant to the case." *Id.* Encl. (8) ¶ 6(d). If a legal advisor is appointed for the BOI, the legal advisor "shall rule finally on all matters of procedure, evidence and challenges except challenges to themselves." *Id.* Encl. (8) ¶ 4(i). If no legal advisor is appointed, such rulings are made by the board's senior member. *Id.* After the BOI, the respondent may submit written comments, via the respondent's chain of command, to DC (M&RA) for consideration. *Id.* Encl. (8) ¶ 12(e).

## II. Procedural History

### a. Plaintiff's First BOI Proceedings

In 2013, Major Brezler was directed to show cause at a BOI after an investigation by the Naval Criminal Investigative Service ("NCIS") concluded that he had "maintained and disseminated classified information on an unsecure system." *See Brezler v. Mills*, 220 F. Supp. 3d 303, 311 (E.D.N.Y. 2016) ("*Brezler II*"). At the BOI, Major Brezler "admitted to mishandling classified information." *Id.* at 312. He also argued that the Navy was retaliating against him for communicating with Congressman Peter King. *Id.* at 328-29. The board recommended that Major Brezler be honorably separated from the Marine Corps. *Id.* at 312.

After the BOI, Plaintiff submitted a "letter of deficiencies" challenging the BOI on procedural and substantive grounds. *Id.* at 313. Among other arguments, Plaintiff alleged that he was denied access to relevant records. *See* Administrative Record ("A.R.") 1319-22.[2] Plaintiff later submitted a supplemental letter asserting further substantive and procedural objections. A.R. 2279-86. Navy personnel considered and rejected Plaintiff's objections at each level of review. *Brezler II*, 220 F. Supp. 3d at 313-14. Ultimately, the Assistant Secretary issued a final decision approving Major Brezler's separation. *Id.* at 314.

### b. Plaintiff's District Court Action

After the BOI issued its recommendation, but before the Navy made a final decision on Major Brezler's case, Plaintiff filed suit in this Court and moved for a temporary restraining order. *Brezler v. Mills*, 86 F. Supp. 3d 208, 211-13 (E.D.N.Y. 2015) ("*Brezler I*"). The Court rejected Plaintiff's motion on the grounds that the Navy had not taken final action. *Id.* at 211-12. The Court observed that the BOI's recommendation was just that—a recommendation—and that it was subject to multiple rounds of administrative review. *Id.* Until the Secretary of the Navy, via the Assistant Secretary, issued a final decision on Major Brezler's separation, "the Navy's decision-making process ha[d] not yet been consummated." *Id.* at 216-17.

After the Assistant Secretary approved Plaintiff's separation, Plaintiff filed an amended complaint, and the parties cross-moved for summary judgment. *Brezler II*, 220 F. Supp. 3d at 319. The Court granted Plaintiff's motion on the basis that the Navy had not provided Plaintiff with "full access to, and copies of, records relevant to the BOI proceeding" in keeping with the Navy's regulations. *Id.* at 307 (internal quotation marks omitted). Specifically, before the BOI, Plaintiff had requested copies of, *inter alia*, "all correspondence concerning plaintiff from July 1,

---

[2] Administrative Record citations refer to the record submitted during the previous litigation.

2012 to the date of the request." *Id.* at 325. The Court found that the Navy had "summarily denied" that request on the grounds that it was duplicative of pending FOIA applications, "the information requested was not determined to be relevant," and Plaintiff already had access to the materials the government planned to use during the BOI proceeding. *Id.* (internal quotation marks and alterations omitted). Navy personnel had similarly rejected Plaintiff's requests at subsequent levels of review. *Id.* at 326. The Court concluded that the Navy had not complied with its disclosure rule, because the rule did not except from disclosure materials covered by pending FOIA requests. *Id.* at 327. The Court also rejected as unsupported by the record the Navy's generalized conclusion that the documents Plaintiff sought were irrelevant. *Id.* at 328.

The Court remanded the case "to the Secretary of the Navy for further proceedings consistent with th[e] Memorandum and Order, including providing plaintiff with documents that are relevant to his retaliation claims and with a new BOI proceeding during which he can fully and fairly explore those issues and complete the administrative record." *Id.* at 307.

### III.    The Navy's Production of Records for Plaintiff's Second BOI

In October 2017, Plaintiff served the Navy with expansive document requests. King Decl. ¶ 2 & Ex. A. Plaintiff submitted ten requests, one of which has sixteen subparts, including a request for "[a]ll documents . . . concerning Major Brezler from July 1, 2012 to the present." *Id.* Ex. A. Since then, the Navy has been working diligently to provide Plaintiff with "access to, and copies of, records relevant to [his] case." SECNAVINST 1920.6C, Encl. (8) ¶ 6(d).

First, approximately one month later, the Marines assigned to represent the government in Major Brezler's upcoming BOI (the "Recorders") responded in writing detailing whether the government intended to grant or deny each request, describing sources from which the government would obtain documents, and objecting to certain requests as overbroad or vague, or

because they sought privileged or irrelevant documents.  King Decl., Ex. B.  Contrary to Plaintiff's claim that the government "failed to produce a single document" for "over five months," Mot. at 4, the Recorders began producing documents the following month, making several productions in December 2017 and January 2018.  *See* King Decl., Ex. C.  In February 2018, the parties held a conference call to discuss logistics for the BOI and the status of Plaintiff's requests.  *See* Bowe Decl., Ex. 5 at 4-5.  Three days later, the Recorders provided a supplemental written response, which specifically addressed issues Plaintiff raised during the conference call and provided further detail on the government's ongoing document collection efforts.  *See* King Decl., Ex. D.

The Recorders continued to produce documents through March 2018.  *See* King Decl., Ex. C.  The Recorders provided Plaintiff with a second supplemental written response on March 2, 2018, which contained additional updates on the government's searches and productions.  *See* King Decl., Ex. E.  On March 20, 2018, Plaintiff's counsel sent the Recorders a two-line email asserting that the "productions to date [we]re still materially deficient," but providing no detail on the alleged deficiencies.  *See* King Decl., Ex. F.

On April 26, 2018, the Recorders provided a detailed consolidated response that walked through each of Plaintiff's requests, subpart by subpart, and explained whether records had been produced, which searches were ongoing, whether the government's searches had not turned up any records, and the Recorders' grounds for denying any requests that were denied.  *See* King Decl., Ex. G.  At the end, the Recorders asked Plaintiff to "specify what, if any, disagreements" Plaintiff had with the response and to "please identify items requested that the Government believes has been provided to the defense but of which the defense is not in possession, or items provided that defense believes insufficiently address its requests."  *Id.* at 7.

In May 2018, the parties held a second conference call, during which the Recorders repeatedly sought to engage Plaintiff in a concrete discussion on what Plaintiff believed to be missing. *See, e.g.*, Bowe Decl., Ex. 6 at 3:9-13, 17:21-24. More than once, Plaintiff declined. For example, after Plaintiff asserted that he had received emails through FOIA that the Recorders had not produced, the Recorders asked Plaintiff to send copies of those emails so they could try to address Plaintiff's concern. *See id.* at 7:21-24, 8:12-24, 12:6-10. Plaintiff refused, saying that Plaintiff "can't do the document search for [the government]." *Id.* at 8:25-9:5. At the end of the parties' conference, Plaintiff's counsel explained that his goal had been "just to get a very general understanding of what has been done." *Id.* at 50:19-21. Plaintiff represented that once the Recorders notified Plaintiff that they believed the productions were complete, Plaintiff would "sit down and give [the Recorders] a detailed list of what [Plaintiff] think[s] are deficiencies and challenges as to how could this be," which "was not [Plaintiff's] goal today." *Id.* at 50:15-19.

In the months after the May 2018 call, during which the parties primarily discussed email records, the Recorders produced email records from over a dozen custodians. King Decl., Ex. H. Along with the email productions, the Recorders provided information on how the searches were conducted, including details about the search terms used and electronic repositories searched, as well as privilege logs explaining the basis for any redactions. *See, e.g.*, King Decl., Ex. I.

On August 17, 2018, the Recorders emailed Plaintiff's counsel and asked to arrange a call. *See* King Decl., Ex. J. The Recorders explained that they believed they had complied with Plaintiff's requests, and they "welcome[d] any questions/concerns specific to [Plaintiff's] previous requests that [they] may be able to address." *Id.* As of August 2018, the government had produced multiple thousands of pages of records. *See* King Decl., Exs. C, H.

Instead of responding to the Recorders' request or providing the "detailed list" of deficiencies previously contemplated, Plaintiff sent a letter to the U.S. Attorney's Office, broadly asserting that the government's productions were "devoid of documents concerning the key issues." Bowe Decl., Ex. 13 at 2. The letter also identified alleged deficiencies that Plaintiff never raised with the Recorders on their telephone conferences. *Compare id.* (alleging that the government's redactions are "spurious" and the government produced emails with missing attachments) *with id.* Exs. 5, 6. Plaintiff stated that if "the missing documents" were not produced within one week, Plaintiff would move for contempt. *Id.* Ex. 13 at 3. In response, the government explained that the administrative process was still ongoing and reiterated the Recorders' offer to discuss Plaintiff's outstanding concerns. *Id.* Ex. 14 at 2. Plaintiff then filed the pending motion to hold the Navy in contempt. Dkt. Nos. 87-89.

Since filing his motion, Plaintiff has continued to serve the government with new document requests. *See* King Decl., Exs. K, L. On October 17, 2018, the Navy issued an order appointing the board members and legal advisor for Major Brezler's BOI, who will play a pivotal role in considering Plaintiff's records requests for the BOI, and setting a date for the BOI. King Decl., Ex. M. Though the BOI was initially scheduled to take place the last week in November, the Navy has granted Plaintiff a continuance to January 15, 2019. King Decl., Exs. M, N.

## ARGUMENT

### I. Legal Standards

A party moving for contempt has the burden of establishing three elements. *Latino Officers Ass'n City of New York, Inc. v. City of New York*, 558 F.3d 159, 164 (2d Cir. 2009). First, the moving party must show that the order at issue was clear and unambiguous, in that it "must leave no uncertainty in the minds of those to whom it is addressed, and the party enjoined

must be able to ascertain from the four corners of the order precisely what acts are forbidden." *Yash Raj Films (USA), Inc. v. Bobby Music Co. & Sporting Goods*, No. 01 Civ. 8378 (JFB) (CLP), 2006 WL 2792756, at *6 (E.D.N.Y. Sept. 27, 2006) (internal quotation marks and citations omitted). Second, the moving party must prove by "clear and convincing evidence" that the opposing party has not complied with the court's order. *Latino Officers Ass'n*, 558 F.3d at 164. Finally, the moving party must show that the opposing party did not "diligently attempt to comply with the order in a reasonable manner." *Id.*

The purpose of civil sanctions is coercive, not punitive. *CBS Broad. Inc. v. FilmOn.com, Inc.*, 814 F.3d 91, 101 (2d Cir. 2016). The "hallmark of coercive sanctions [i]s that the contemnor is able to purge the contempt . . . by committing an affirmative act." *Id.* (internal quotation marks omitted). In choosing sanctions, "a court is obliged to use the least possible power adequate to the end proposed." *Spallone v. United States*, 493 U.S. 265, 276 (1990).

## II. Plaintiff's Motion for Contempt Should Be Denied

### a. Because the BOI Process Is Ongoing, Plaintiff's Motion Is Premature

Plaintiff has shown neither noncompliance nor a lack of diligent effort to reasonably comply, because the Navy is still in the middle of carrying out the Court's remand order, which directed the Secretary of the Navy to "provid[e] plaintiff with documents that are relevant to his retaliation claims and with a new BOI proceeding during which he can fully and fairly explore those issues and complete the administrative record." *Brezler II*, 220 F. Supp. 3d at 307. At this time, the administrative record is hardly complete. No BOI has taken place, and the Secretary of the Navy has not taken action with respect to Plaintiff's case. Nor has the Navy refused to provide Plaintiff with documents relevant to his retaliation claims. To the contrary, the Navy affirmatively invited Plaintiff to raise any concerns directly with them, but, rather than engage in

good faith, Plaintiff filed his contempt motion here—thus seeking to bypass numerous layers of available and necessary Navy consideration.  The motion thus is both baseless and premature.

First, the initial pre-BOI process through which Plaintiff can seek records from the Recorders is not yet complete.  Though the Recorders notified Plaintiff in August 2018 that they believed they had satisfied their record disclosure obligations, they also asked Plaintiff at that time to identify any outstanding concerns.  King Decl., Ex. J.  The government has continued its efforts to confer with Plaintiff and, since Plaintiff identified certain record gaps in his motion, is continuing to produce records.  *See* Bowe Decl., Ex. 14; King Decl., Ex. O.  Indeed, that the exchange between the Recorders and Plaintiff is ongoing is clear from the fact that Plaintiff has continued to serve the Recorders with additional records requests since filing for contempt, to which the Recorders are currently responding.  *See* King Decl., Exs. K, L, & O.

Once this process is complete, the BOI's senior member and, when required, the legal advisor will consider Plaintiff's challenges to the Recorders' productions.  *See* SECNAVINST 1920.6C, Encl. (8) ¶ 4(i).  The parties have already begun preliminary discussions with the legal advisor about anticipated document disputes.  *See* King Decl., Ex. P.  The government anticipates Plaintiff may argue that seeking relief from the legal advisor would be futile, because the legal advisor does not have the power to compel production like a court does.  But at this stage, any suggestion that Navy officials would refuse to comply with the legal advisor's rulings is sheer speculation.  Further, in the face of such a refusal, the board members would always have the power to grant relief by concluding that separation was therefore unsupported, resolving the BOI proceedings in Plaintiff's favor.  *See* SECNAVINST 1920.6C, Encl. (8) ¶ 11(a)(2).

After the BOI, Plaintiff will have the right to submit written comments, *id.* ¶ 12(e), which may include objections to the government's document disclosures.  Indeed, after Major Brezler's

first BOI, he raised precisely this type of objection as a basis for the Navy to reject the board's separation recommendation. A.R. 1319-22. Plaintiff's objections would be submitted via the Convening Authority to the Show Cause Authority, who would have the power to, *inter alia*, terminate the proceedings or remand for further factual development or a new BOI, including further action on Plaintiff's records requests. *See* SECNAVINST 1920.6C, Encl. (8) ¶¶ 6(d), 13; *Brezler I*, 86 F. Supp. 3d at 211, 218. The Assistant Secretary, the Secretary's designee for purposes of the BOI, could make similar determinations at the next and final level of review. *Brezler I*, 86 F. Supp. 3d at 218; *see also* 10 U.S.C. § 7861 (the Secretary of the Navy has control over the Navy executive part's "books, records, [and] papers"). Until the Assistant Secretary takes action, the Navy is still carrying out the Court's order, and Plaintiff's motion is premature.

This conclusion is supported by the principles underlying the finality requirement of the Administrative Procedure Act ("APA"), the statute based on which the Court issued its remand order. Indeed, while Plaintiff has sought to avoid the strictures of APA review by styling his request as one for contempt, the remedy Plaintiff seeks in his motion is actually based on the APA. *See* Mot. at 22-24; *infra* Section III. The APA's finality requirement bars judicial review of non-final agency action. *Brezler I*, 86 F. Supp. 3d at 216. As this Court has observed, "[t]he purpose of the finality requirement is to accord the agency an opportunity to apply its expertise and correct its mistakes, as well as to avoid disrupting the agency's processes and to relieve the courts from piecemeal (and possibly unnecessary) review." *Id.* (internal quotation marks omitted). Outside the APA context, courts have similarly declined to intervene in ongoing military disciplinary proceedings, emphasizing that judicial review would be premature before the senior military decision-maker takes official action. *See Beard v. Stahr*, 370 U.S. 41 (1962); *Schustack v. Herren*, 136 F. Supp. 850, 853 (S.D.N.Y. 1955), *aff'd*, 234 F.2d 134 (2d Cir. 1956).

Allowing the BOI process to run its course would give the Navy the opportunity to ensure its personnel's compliance with the Navy's disclosure obligations in accordance with standard Navy review procedures, complete any gaps in the government's productions, and develop a complete record for any subsequent judicial review. By contrast, Plaintiff's motion seeks to entangle this Court in micromanaging ongoing document disclosure efforts, including questions about file locations, email custodians, search terms, and how to narrow overbroad requests. *See infra* Section II.b. Plaintiff's motion should thus be denied as premature.

### b. Plaintiff Has Not Met His Burden of Showing Noncompliance with the Court's Remand Order by Clear and Convincing Evidence

Plaintiff's motion should also be denied because he has not proven by clear and convincing evidence that the Navy has failed to comply with the Court's remand order, even setting aside the prematurity of his motion. First, many of the supposed deficiencies Plaintiff purports to identify are simply wrong. For example, Plaintiff claims that the Recorders have never "amended their assertion" from February 2018 that the government had not conducted email searches specifically for the BOI. Mot. at 5; Bowe Decl. ¶ 6. That is false. During the parties' May 2018 call, the Recorders described their efforts to obtain emails from multiple sources. *See* Bowe Decl., Ex. 6 at 4:5-6:23. The Recorders further detailed their email collection efforts in each supplemental written response to Plaintiff's requests and in privilege logs. *See* King Decl., Exs. E at 2-3, G at 3-4, & I. Plaintiff's specific claim that the Recorders never collected emails from General Hartsell is similarly baseless. Mot. at 7, 17; Bowe Decl. ¶ 13. The Recorders did collect emails from General Hartsell. *See* King Decl., Exs. C, G at 3.

Plaintiff's claim that the government has not identified the evidence it intends to present at Major Brezler's second BOI is also untrue. *See* Mot. at 14; Bowe Decl. ¶ 20. During the parties' February 2018 conference call, the Recorders identified the witnesses they intend to call

at the second BOI and explained that the government would be using the same exhibits as in the first BOI proceedings.  *See* Bowe Decl., Ex. 5 at 9:12-12:8, 111:23-112:20.  Those exhibits have been produced to Plaintiff with the complete record of the first BOI.  King Decl., Ex. C.  The Recorders reiterated and supplemented this information in their April 26th written response.  *See* King Decl., Ex. G at 6.  Because these claims are untrue, they do not support a contempt finding.

Second, Plaintiff cannot meet his burden of proving noncompliance by making vague allegations about the government's productions without pointing to specific evidence in the record.  For example, Plaintiff insists that "numerous" emails produced are "missing attachments."  Mot. at 9; *see also id.* at 19.  But as evidence, Plaintiff cites a single email for which the attachment was not "missing"; it was withheld on grounds of privilege.  *Id.* at 9.

Similarly, Plaintiff claims that "over 100 documents are almost fully redacted, with spurious bases for the redactions."  *Id.*  But Plaintiff does not identify the documents to which Plaintiff refers, which redactions are allegedly spurious, or why Plaintiff believes those redactions to be unjustified.  *See* Mot. at 9, 20; Bowe Decl. ¶ 26.  Instead, he makes the sweeping assertion that neither the attorney-client privilege nor the deliberative process privilege applies to any of the government's productions.  Mot. at 20.

Plaintiff cites no authority for his blanket assertion that the attorney-client privilege is inapplicable to his case.  Instead, Plaintiff claims—without pointing to any particular document—that "many" of the communications over which the government asserted the privilege "include multiple officers likely outside the privilege or appear facially to be discussing [matters other than] legal analysis or advice."  Mot. at 20.  Because Plaintiff has not bothered to identify a single example, and the government has produced detailed privilege logs, Plaintiff has

not come close to proving by clear and convincing evidence that the government's assertions of attorney-client privilege constitute noncompliance with the Court's remand order.

Plaintiff's attacks on the government's assertion of the deliberative process privilege also fall short, because Plaintiff again fails to identify any particular document over which the privilege was erroneously asserted. *See* Mot. at 20. Certainly, there are cases in which courts conclude that deliberative material should be disclosed because the "decisionmaking process is the 'central issue' in the case." *In re Delphi Corp.*, 276 F.R.D. 81, 85 (S.D.N.Y. 2011). But before a party can overcome the privilege, the court either balances the parties' interests with respect to the deliberative material for which disclosure is sought or, at a minimum, requires a sufficiently close nexus between the allegations of bad faith and the deliberative material at issue. *See, e.g.*, *Winfield v. City of New York*, No. 15 Civ. 05236 (LTS) (KHP), 2018 WL 716013, at *5 (S.D.N.Y. Feb. 1, 2018) (balancing approach); *Convertino v. U.S. Dep't of Justice*, 669 F. Supp. 2d 1, 4-5 (D.D.C. 2009) (privilege is not overcome if the deliberations do not reveal the motivation of the person whose intent is at issue). Here, for example, the privilege logs include assertions of the deliberative process privilege over material unrelated to Major Brezler. *See* King Decl., Ex. I at 1. Plaintiff cannot show that the Navy's privilege assertions are unsupported without identifying the records for which he believes the privilege does not apply.

Third, Plaintiff cannot show noncompliance with the Court's remand order simply because the volume of documents produced on various topics is lower than Plaintiff would like. The government cannot produce documents that do not exist or cannot be located after a diligent search. Unless Plaintiff cites specific evidence supporting the existence of additional records, or identifies shortcomings in the government's search tactics, Plaintiff's insistence that additional records exist is simply speculative. *Cf. Mason Tenders Dist. Council of Greater N.Y. v. Phase*

*Constr. Servs., Inc.*, 318 F.R.D. 28, 42 (S.D.N.Y. 2016) ("Generally, a party's good faith averment that the items sought simply do not exist, or are not in his possession, custody, or control, should resolve the issue of failure of production since one cannot be required to produce the impossible. . . . Plaintiffs must cite to specific evidence to challenge Defendants' assertions that no additional responsive documents exist." (internal quotation marks omitted)); *see also Margel v. E.G.L. Gem Lab Ltd.*, No. 04 Civ. 1514 (PAC) (HBP), 2008 WL 2224288, at *3 (S.D.N.Y. May 29, 2008) ("Since defendants do not cite any specific evidence impugning plaintiffs' assertions that their production is complete, there is no basis for a finding of misconduct on the part of the plaintiffs or an award of sanctions.").[3]

For each of the record requests described below, Plaintiff complains that only a small number of documents were produced, and therefore the government must have failed to produce responsive material. However, the Recorders produced material in response to each of these requests, as described below, in addition to searching the emails of numerous Navy personnel in positions of leadership during the relevant time period, *see* Bowe Decl., Ex. 6, 4:5-6:18; King Decl., Exs. C, G, & H:

1.     *Major Brezler's attachment to the Chemical Biological Incident Response Force and transfer to the Individual Ready Reserve* (Mot. at 6): The Recorders produced Major Brezler's personnel file in response to these requests. King Decl., Ex. G at 2-3.

2.     *DONCAF and security clearance review* (Mot. at 6): The Recorders noted in their April 26th response that they visited the offices of DODCAF (formerly DONCAF) in person. The Recorders detailed the information they learned, explained that they were unable to

---

[3] Plaintiff cannot overcome his burden by pointing to the principle that a party claiming inability to comply with a court order must prove "plainly and unmistakably" that compliance is impossible. *See* Mot. at 15 n.5. The government is not asserting that compliance is impossible; rather, Plaintiff has not made the preliminary showing that these theorized records exist.

locate additional records, and indicated that they hoped to receive further information from DODCAF. King Decl., Ex. G at 2.

3. *Response to Congressman King's inquiry* (Mot. at 6): The Recorders produced the hard copy file from the Office of Legislative Affairs related to Major Brezler, the office responsible for responding to Congressional inquiries. King Decl., Ex. G at 2, 4. The Recorders also searched the emails of Colonel Whisnant, who Plaintiff alleges drafted an alternate response to that provided by the Office of Legislative Affairs, and produced emails from Colonel Whisnant on this topic previously released through FOIA. King Decl., Exs. H, Q.

4. *Major Kays discussion with Colonel Kleis* (Mot. at 7-8): In a declaration submitted during the previous court proceedings, one of Major Brezler's attorneys asserted that Major Amelia Kays informed him, by telephone, that Colonel Kleis told her, in person, that she should "take it easy" in representing Major Brezler at his first BOI. Dkt. No. 60-28, Decl. of Kevin Carroll ¶ 7. The declaration describes only oral communications. The Recorders produced emails involving Major Kays and Colonel Kleis and informed Plaintiff that, upon information and belief, Major Kays denies these allegations. King Decl., Exs. C, G at 5.

5. *Decision to convene a second BOI* (Mot. at 8, 19): Plaintiff claims that a "lengthy paper trail" should exist regarding the Navy's decision to convene a second BOI. Mot. at 19. On this topic, the Recorders have directed Plaintiff to the letter and notice convening the new BOI, as well as the Court's remand order, which specifically instructed the Navy to "provid[e] plaintiff . . . with a new BOI proceeding." *See* King Decl., Ex. G at 5; *Brezler II*, 220 F. Supp. 3d at 307. The Recorders also searched and provided responsive emails from the Show Cause Authority who directed that Major Brezler's new BOI be convened. *See* King Decl., Ex. H (identifying production of Brilakis emails).

6.      *Colonel Kleis's presentation of the BOI "package" to Lt. General Mills* (Mot. at

14, 18):  In their April 26th response, the Recorders detailed their efforts to obtain and search

email files for Colonel Kleis and Lieutenant General Mills, and the Recorders have produced

emails obtained from both custodians responsive to those searches.  *See* King Decl., Exs. C, G at

4, & H.  They also pointed Plaintiff to Colonel Kleis's declaration, in which he explained that he

did not retain a copy of the assembled "package" because the supporting documents are

maintained in individual files.  Dkt. No. 78, Declaration of Colonel Eric Kleis ¶ 20.

For each of the above categories, Plaintiff has not identified what other types of records

Plaintiff believes should exist, nor has Plaintiff conferred with the Recorders to try to identify

what other searches might be conducted to seek out such records.  Thus, Plaintiff has not shown

that the quantity of records indicates noncompliance with the Court's remand order.  *See Latino*

*Officers Ass'n*, 558 F.3d at 164 (explaining that "the relevant inquiry is not whether defendants

adequately rebutted plaintiff's evidence, but rather, whether plaintiff's evidence alone was

adequate to establish" the elements of contempt).

Finally, the Navy's production of records that are not actually relevant to Major Brezler

or are duplicative of records Plaintiff has already received, for example through FOIA, do not

provide clear and convincing evidence of noncompliance.  *See* Mot. at 9.  The government

acknowledges that its electronic searches caught irrelevant records, some of which were included

in the Recorders' productions.  But over-inclusiveness is not noncompliance.  Moreover,

Plaintiff's latter objection is particularly puzzling, since the Court's remand order held that the

Navy erred by *not* producing documents duplicative of Plaintiff's FOIA requests.[4]  *Brezler II*,

---

[4] Plaintiff's claim that the reproduction of FOIA documents is a "problem" with the production is
especially nonsensical given that one of Plaintiff's record requests sought "[a]ll documents,
including records, emails, text messages, notes, or communications, related or responding to
FOIA requests submitted by counsel for Major Brezler . . . ."  King Decl., Ex. A ¶ 2.

220 F. Supp. 3d at 327.  In sum, none of the above alleged deficiencies provide clear and convincing evidence of noncompliance with the Court's remand order.

### c.   The Navy Is Diligently Attempting To Comply with the Remand Order

Plaintiff's motion should also be denied because Plaintiff has failed to demonstrate that the government has not diligently attempted to comply with the Court's order in a reasonable manner.  *See Latino Officers Ass'n*, 558 F.3d at 164.  During the prior litigation, the Court concluded that the Navy did not comply with its disclosure rule because it summarily denied Plaintiff's record requests as irrelevant or duplicative of the FOIA process.  *Brezler II*, 220 F. Supp. 3d at 325-27.  This time, on remand, the Recorders have responded item by item to Plaintiff's requests, identified what sources were searched, and produced itemized service logs and detailed privilege logs.  *See* King Decl., Exs. B-E, G-I.  They have collected emails from over 20 custodians and produced thousands of pages of records.  *See* King Decl. ¶ 10 & Exs. C, H.  Moreover, at the time Plaintiff filed this motion, the Recorders had made a request to confer over outstanding concerns, which Plaintiff ignored.  *See* King Decl., Ex. J.  The Navy's diligent efforts are entirely unlike those described in the cases on which Plaintiff relies, which therefore do not support a contempt finding here.  *See Granados v. Gold Coast Tennis, Inc.*, No. 12 Civ. 4016 (JFB) (WDW), 2013 WL 3766582 (E.D.N.Y. July 16, 2013) (affirming discovery sanctions where defendants failed to communicate with plaintiffs or appear for court hearings); *New York v. U.S. Capital Funding*, No. 09 Civ. 0004 (JFB) (ETB), 2011 WL 3489914 (E.D.N.Y. Aug. 9, 2011) (defendant repeatedly failed to make mandated monthly installment payment or provide monitoring reports, failed to appear for court-scheduled conferences, and failed to respond to contempt motion); *Casale v. Kelly*, 710 F. Supp. 2d 347, 350 (S.D.N.Y. 2010) (holding city in contempt where it had "continuously enforced three unconstitutional loitering statutes for

decades following judicial invalidation of those laws and despite numerous court orders to the contrary"); *United States v. Asero*, No. 07-MC-334, 2009 WL 580428, at *1 (E.D.N.Y. Mar. 5, 2009) (holding taxpayer in contempt when court ordered the taxpayer to produce documents for seven specific tax years, and taxpayer produced returns for only four of those years).

With respect to the government's email productions, the government does not dispute that the productions resulting from its recent targeted searches of Commandant Amos's and General Mills's email accounts totaled roughly 30 and 70 pages respectively, *see* Mot. at 17, though the government also produced emails from these custodians, including emails from the August 2013 time period, that were collected in response to Plaintiff's FOIA requests and email searches of other custodians, including the Marine Corps Inspector General. *See* King Decl., Exs. R, S. Plaintiff theorizes that "the most plausible reason" for the low volume of emails produced for certain custodians or from key time periods "is the government's lack of diligence in conducting reasonable searches." Mot. at 17-18. However, the Recorders provided Plaintiff with details about the custodians whose emails were searched, how the email records were collected, and the search terms used. *See, e.g.*, King Decl., Exs. G at 3-4, I. The Recorders collected emails from the Marine Corps Enterprise Network, from the Headquarters Marine Corps records branch, and from individuals directly. Bowe Decl., Ex. 6 at 4:5-6:18. They searched for responsive emails dating back to 2012 using, *inter alia*, the search term "Brezler." *See* King Decl., Exs. G at 3-4, I. Of the more than 20 custodians whose emails were searched, at least half a dozen were individuals whose names appeared on the so-called "ground truth" emails of interest to Plaintiff.[5] *Compare* King Decl., Ex. H *with* Bowe Decl., Ex. 7.

---

[5] In response to Plaintiff's request for documents related to the "ground truth" email, the Recorders also searched the electronic shared folders of the Commandant's Staff Group and found no responsive records. *See* King Decl., Ex. D at 3.

In his motion, Plaintiff does not explain how the government's search efforts were unreasonable, what additional custodians or email repositories should have been searched, or what additional date ranges or search terms should have been used. In a footnote, Plaintiff states that he "intends to present evidence"—presumably at the upcoming BOI—that the automated systems and archives the Recorders searched were incomplete. Mot. at 18 n.6; *see* Bowe Decl., Ex. 6 at 41-42 (identifying during the BOI parties' meet-and-confer call a point of contact for Major Brezler's counsel at the Navy's records branch). The government agrees that the upcoming BOI and ongoing administrative proceedings are the appropriate forum for exploring the Navy's record retention policies and practices, which were not at issue in the previous litigation and were not addressed in the Court's remand order. But for purposes of his contempt motion, Plaintiff has not established a lack of diligence in the government's email searches.

To the extent Plaintiff identifies isolated gaps in the rest of the productions, those do not show a lack of diligence within the context of the government's overall disclosure efforts. And as Plaintiff has identified such gaps, the Recorders have continued to respond accordingly. For example, the Recorders recently contacted Plaintiff to revisit the issues of metadata for the Officer Disciplinary Notebook and communications surrounding the preparation of the first BOI's transcripts, matters the parties had not discussed since their February 2018 call. *See* King Decl., Ex. O; Bowe Decl., Exs. 5, 6. Further, while the Recorders have been working on transmitting copies of the classified NCIS Reports of Investigation to Major Brezler's counsel, the Recorders have committed to producing those records and, in the interim, made the records available in person, as Plaintiff acknowledges. King Decl., Exs. G at 6, O at 5; Mot. at 10 n.4.

Nor is the Recorders' denial of four requests for records that are unrelated to Major Brezler a basis for holding the Navy in contempt. In their initial written response, the Recorders

denied as overbroad, vague, and/or seeking irrelevant or privileged material Plaintiff's requests

for: (1) all documents sufficient to show certain information about alleged spillage or

mishandling of classified information by any person since 2012; (2) all documents sufficient to

show certain information about all Naval personnel subject to a BOI for any reason since 2012,

with identities redacted; (3) all documents sufficient to show certain information about reports of

any kind of potential misconduct by any field grade or general officers since 2012, with identities

redacted; and (4) all documents reflecting statistics or studies of the Navy's treatment of

instances of mishandling of classified materials.  King Decl., Exs. A ¶¶ 7-10, B at 8.  However,

the Recorders offered to confer further on these requests.  *See* King Decl., Ex. B at 8.

As the transcript attached to Plaintiff's motion demonstrates, Plaintiff did raise these

requests during the parties' February 2018 telephone call, though the Recorder kept losing his

telephone connection during the parties' discussion.  *See* Bowe Decl., Ex. 5 at 94:7-104:7.  The

parties did not address these requests during their May 2018 call, at which time Plaintiff's

counsel stated that he was trying "just to get a very general understanding of what has been

done," instead of "giv[ing] [the Recorders] a detailed list of what [Plaintiff] think[s] are

deficiencies."  *Id.* Ex. 6 at 50:15-21.  Since receiving the transcript from the February 2018 call,

the Recorders have reached out to Plaintiff to revisit how the parties might narrow Plaintiff's two

requests for documents related to other spillage incidents.  *See* King Decl., Ex. O at 3-4.  These

ongoing efforts to confer underscore the extent to which the administrative process is ongoing

and Plaintiff's motion is premature.

While the Recorders have denied Plaintiff's requests for documents concerning BOIs and

reports of misconduct that do not concern the handling of classified information, the Recorders'

denial of those requests is not a basis for holding the Navy in contempt.  *See* King Decl., Exs. A

¶¶ 7-8, G at 7, O at 3. The Recorders have reasonably concluded that these requests are not relevant to Major Brezler's case, a determination that may be further considered by the BOI's legal advisor and will ultimately be subject to multiple levels of administrative review. As the Recorders have made a reasonable determination on a disputable claim of relevance, their actions do not evidence a lack of diligence in attempting to comply with the Court's remand order.

The Recorders' denial of these two requests also does not support a contempt finding because the remand order did not "clearly and unambiguously" address whether the Navy was obligated to disclose records about the misconduct of officers other than Major Brezler. A party's conduct can only expose that party to contempt if there is "no uncertainty in the minds of those to whom [the court order] is addressed" that the party's conduct contravenes the court's order. *Yash Raj Films*, 2006 WL 2792756, at *6 (internal quotation marks omitted). To the extent there are ambiguities in the reach of the order, they are resolved "to the benefit of the person charged with contempt." *A.V. by Versace, Inc. v. Gianni Versace, S.p.A.*, 87 F. Supp. 2d 281, 291 (S.D.N.Y. 2000). Here, the Court's remand order directed the Navy to "provide plaintiff with documents that are relevant to his retaliation claims," but it did not address whether records about the generalized misconduct of other officers were relevant to Plaintiff's claims, let alone specifically direct the Navy to produce such records. The Recorders' denial of these requests thus does not support a contempt finding.

### III.     Plaintiff's Request for Sanctions Should Be Denied

Because the Navy is in the process of diligently complying with the Court's remand order, Plaintiff has not met his burden of showing that the Navy should be held in contempt. However, even if the Court were to determine that judicial action were warranted, the Court should deny Plaintiff's request for the Court to "dismiss[] the intended BOI proceeding in its

entirety and with prejudice." Mot. at 22. "[I]n selecting contempt sanctions, a court is obliged to use the least possible power adequate to the end proposed." *Spallone*, 493 U.S. at 276. Moreover, the purpose of civil contempt sanctions is generally not to punish but to compel compliance, *see FilmOn.com, Inc*., 814 F.3d at 101, and compliance in this case would be foreclosed by "dismissal" of the BOI. While courts do dismiss court proceedings in limited circumstances, dismissal is "a draconian remedy, which should be applied only in extreme situations, when there is a clear record of delay or contumacious conduct, or when other less drastic sanctions have proven unavailing." *Banco Del Atlantico, S.A. v. Woods Indus. Inc.*, 519 F.3d 350, 354 (7th Cir. 2008) (internal quotation marks and citations omitted).

The remedy Plaintiff seeks would be entirely unjustified in this case. First, while Plaintiff describes the remedy he seeks as "dismissal," the BOI proceeding is not a pending court action. What Plaintiff is actually asking is for the Court to enjoin the Navy from continuing an ongoing administrative personnel proceeding. Plaintiff has not come close to showing that such extraordinary intervention in military disciplinary matters is supported on this record, in light of the Navy's ongoing, diligent attempts to comply with the Court's remand order. And while Plaintiff claims that Federal Rule of Civil Procedure 37 "reinforces" the Court's authority to enjoin the BOI, *see* Mot. at 24, Rule 37 applies to civil discovery proceedings, not the Marine Corps' BOI process, and is irrelevant here.

Perhaps recognizing that enjoining the BOI is unjustified as a contempt sanction, Plaintiff bases his request for relief not on the Court's inherent contempt power, but on the APA. *See* Mot. at 22-24. Plaintiff's requests for APA relief should be denied. As an initial matter, Plaintiff has not filed any complaint properly asserting an APA claim based on the Navy's post-remand actions. *See Brezler I*, 86 F. Supp. 3d at 217 n.7 (rejecting APA unreasonable delay

claim raised in post-argument submissions but absent from complaint); *cf. Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998) (plaintiff may not amend pleading through arguments in motion papers).  But even if he had, those claims would fail.  Any claim under 5 U.S.C. § 706(2) for the Court to "hold unlawful and set aside" the Navy's actions would be unripe, because the Secretary of the Navy has not taken final agency action following the Court's remand order.  *See Brezler I*, 86 F. Supp. 3d at 216.

Plaintiff also cannot prevail on an "unreasonable delay" claim under 5 U.S.C. § 706(1). Section 706(1) only applies where an agency has failed to "take a discrete agency action that it was required to take."  *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 64 (2004); *see id.* ("[Section] 706(1) empowers a court only to compel an agency to perform a ministerial or non-discretionary act, or to take action upon a matter, without directing *how* it shall act." (internal quotation marks omitted)).  Here, Plaintiff has not shown such a failure, even assuming that a judicial order can create the kind of obligation that would sustain an unreasonable delay claim. *But see Shawnee Trail Conservancy v. Nicholas*, 343 F. Supp. 2d 687, 702 (S.D. Ill. 2004) ("Because the APA does not waive the defendants' sovereign immunity for cases asserting a violation of judicial mandates, the Court does not have jurisdiction to hear this claim.").  The Court's remand order required the Navy to provide Plaintiff with documents relevant to his retaliation claims.  The Navy has done so.  While Plaintiff may question how the Navy has gone about that task and whether additional responsive records exist, Plaintiff has not established that the Navy failed to take any discrete mandated action.  Nor has the government engaged in delay: the Recorders have made regular productions in response to Plaintiff's extensive record requests.

Finally, the standard remedy for unreasonable delay under the APA is for the court to compel agency action, not to enjoin further agency action.  *See* 5 U.S.C. § 706(1) (court may

"compel" agency action unreasonably withheld or delayed).  The Ninth Circuit's decision in *Houseton v. Nimmo* does not support the remedy Plaintiff seeks here.  In *Houseton*, the plaintiff filed an administrative discrimination complaint, and the Civil Service Commission Review Board issued a finding of discrimination and remedial order.  670 F.2d 1375, 1376-77 (9th Cir. 1982).  The employer filed a request for reconsideration, and the board failed to issue a ruling on the reconsideration request for 16 months.  *Id.* at 1377.  Finding the delay unreasonable and seriously prejudicial to the plaintiff, since the pending request was delaying enforcement of the remedial order, the Ninth Circuit approved the district court's decision to deem the pending reconsideration request to be dismissed.  *Id.* at 1378.  Here, however, the Navy has not failed to take action on a pending BOI recommendation that could be deemed "dismissed" after a proper showing of prejudice and delay.  Accordingly, *Houseton* provides no support for Plaintiff's requested relief.  Plaintiff's request for the BOI process to be enjoined should be denied.

## CONCLUSION

For the reasons set forth above, the Court should deny Plaintiff's motion.

Dated:  New York, New York
      October 31, 2018

                                Respectfully submitted,

                                JEFFERSON B. SESSIONS III
                                United States Attorney General

                                RICHARD P. DONOGHUE
                                United States Attorney for the
                                Eastern District of New York

                    By:  *s/ Talia Kraemer*
                                  TALIA KRAEMER
                                  Special Assistant United States Attorney
                                86 Chambers Street, 3rd Floor
                                New York, New York 10007
                                Telephone:  (212) 637-2822
                                Facsimile:  (212) 637-2702
                                E-mail:  talia.kraemer@usdoj.gov